FINAL 03/31/21

## Plaintiff Litigation Funding Agreement

This Litigation Funding Agreement ("<u>Agreement</u>") is made and entered into as of March 31, 2021 (the "<u>Effective Date</u>") by and among LEGALIST FUND II, L.P. (the "<u>Funder</u>"), SEVEN STARS ON THE HUDSON CORP. (the "<u>Plaintiff</u>"), and LAW OFFICE OF KATHLEEN A. DALY, P.A. (the "<u>Counsel</u>").

*<u>For the avoidance of doubt and notwithstanding the execution hereof, each party's obligations hereunder shall be subject to prior entry by the Bankruptcy Court of an order (in form and substance acceptable to Funder) approving this Agreement.</u>*

### Recitals

A.   Plaintiff has filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and its bankruptcy case is pending before the United States Bankruptcy Court for the Southern District of Florida (the "<u>Bankruptcy Court</u>").

B.   Plaintiff has commenced an adversary proceeding against MDG Powerline Holdings, LLC and XBK Management, LLC (together, the "<u>Defendant</u>") in connection with the Claim(s) (as defined below) Plaintiff has against Defendant.

C.   Plaintiff is being advised on and/or represented in connection with the Claim(s) by Counsel.

D.   Plaintiff and Funder have agreed that Funder will provide certain funding to facilitate the prosecution of the Claim(s) in exchange for certain payments if any recovery is awarded to Plaintiff in connection with the Claim(s).

### Agreement

Plaintiff, Counsel, and Funder, in consideration of the foregoing recitals, the mutual covenants, promises, and agreements hereinafter set forth, the mutual benefits to be gained by the performance thereof, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and accepted, intend to be legally bound by the terms and conditions of this Agreement, subject to entry of a Bankruptcy Court order (in form and substance acceptable to Funder) approving the same.

**1.0  Definitions**

"<u>Agreement</u>" has the meaning set forth in the introductory paragraph.

"<u>Budget</u>" means Counsel's reasonable estimate of the funding required to prosecute the Claim(s) to conclusion (including, as necessary, through trial and enforcement/collection), which is attached as <u>Exhibit A</u> and which may be amended only with Funder's prior written consent pursuant to Section 2.3.

"<u>Claim(s)</u>" means the affirmative claims and causes of action of Plaintiff asserted in *Seven Stars on the Hudson Corp. v. MDG Powerline Holdings, LLC et al.*, A.P. No. 19-01230, pending in the Bankruptcy Court, and in each and every other Proceeding(s) (as defined below), as the same may be amended from time to time, whether now existing or hereafter arising, in any way arising out of, related to, or in connection with any such claims, causes of action, or Proceeding(s).

"<u>Claim Proceeds</u>" means any and all value due to and/or received by, on behalf of, or in lieu of payment to, Plaintiff arising out of or in connection with the Claim(s) as a result of any judgment, award, order, settlement arrangement, and/or compromise (including payment of any damages (whether treble, compensatory, punitive, or special), compensation, interest, restitution, recovery, judgment sum, arbitral award, settlement sum, compensation payment, costs, and interest on costs), whether in monetary or non-monetary form, whether actual or contingent, gross of any offset or setoff, and before deduction of any taxes that Plaintiff may be liable to pay in connection with such value due to and/or received by Plaintiff; provided that Claim Proceeds shall not include awards of specific performance by Defendant relating to signage, access, or marketing of Plaintiff's business, in an aggregate amount of $25,000 or less (subject to the valuation provisions of Section 2.3).

"<u>Committed Funds</u>" means $105,000.

"<u>Common Interest Material</u>" means any discussion, evaluation, negotiation, or any other communication or exchange of information relating to the Claim(s) in any way, whether written or oral, between or among Plaintiff, Counsel, Funder, and/or Funder's legal counsel, provided that such communication or exchange of information would be protected by attorney–client privilege between Counsel and Plaintiff, the attorney work-product doctrine, or some other privilege or discovery protection if not disclosed to a third party lacking a common legal interest.

"<u>Confidential Information</u>" means the Common Interest Material and, if not already covered as Common Interest Material, any communication or exchange of information relating to the Claim(s), including: (a) information, of any type, relevant to understanding the Claim(s); (b) Counsel's or Funder's counsel's strategies, tactics, analyses, or expectations of the parties to the Proceeding(s), regarding the Claim(s) or Claim Proceeds; and (c) any professional work product relating to the Claim(s) or Claim Proceeds, whether prepared for Plaintiff, Counsel, Funder, or Funder's counsel. Notwithstanding the foregoing, Confidential Information does not include information that: (i) was or becomes generally available to the public other than by breach of this Agreement; (ii) was, as documented by the written records of the receiving party, known by the receiving party at the time of disclosure to it or was developed by the receiving party or its representatives without using Confidential Information or information derived from it; or (iii) was disclosed to the receiving party in good faith by a third party who has an independent right to such subject matter and information.

"<u>Costs and Disbursements</u>" means the legal fees, court costs, and other miscellaneous expenses specified in the Budget or approved by Counsel.

"<u>Counsel</u>" has the meaning set forth in the introductory paragraph.

"<u>Defendant</u>" has the meaning set forth in the recitals.

"<u>Effective Date</u>" has the meaning set forth in the introductory paragraph.

"<u>Funder</u>" has the meaning set forth in the introductory paragraph.

"<u>Funder Costs Amount</u>" means the reimbursement of 1.25% of the Committed Funds to Funder for its diligence and underwriting costs plus the total of all Costs and Disbursements actually paid or otherwise funded by Funder pursuant to this Agreement, whether or not those Costs or Disbursements were (i) reasonably incurred by Plaintiff in accordance with this Agreement or (ii) specified in the Budget then in effect.

"Funder Recovery Amount"[1] means:

(i) (a) 1.397x the Committed Funds, if repayment in full occurs within 12 months of the Effective Date and prior to the beginning of Defendant's case at trial;

(b) 2.439x the Committed Funds, if repayment in full occurs after 12 months but within 18 months of the Effective Date and prior to the first beginning of Defendant's case at trial; and

(c) 3.472x the Committed Funds, if repayment in full occurs thereafter; plus

(ii) 15% of all remaining Claim Proceeds.

"Non-Monetary Claim Proceeds Fair Market Valuation" means Plaintiff's good faith determination of the fair market value of any and all non-monetary Claim Proceeds.

"Plaintiff" has the meaning set forth in the introductory paragraph.

"Proceeding(s)" means each and every litigation or alternative dispute resolution proceeding arising out of, related to, or connected with the Claim(s), including any settlement negotiation, arbitration, mediation or appeal, as well as any other proceedings that Funder and Plaintiff agree in writing shall be the subject of this Agreement.[2] For the avoidance of doubt, Proceeding(s) shall not include any proceedings governed by Section 9.5.

"Secured Obligations" means: (a) the obligation of Plaintiff to pay the Funder Costs Amount and Funder Recovery Amount to Funder; (b) all other debts, liabilities, obligations, covenants and duties of Plaintiff to Funder now or hereafter existing, whether joint or several, direct or indirect, absolute or contingent, or due or to become due, arising under or in connection with this Agreement, or any of the transactions contemplated hereby and including any interest due thereon and all fees, costs, and expenses incurred by Funder in connection therewith; (c) all debts, liabilities, obligations, covenants and duties of Plaintiff to pay or reimburse Funder for all expenses, including attorneys' fees, incurred by Funder in connection with the enforcement, attempted enforcement, or preservation of any rights or remedies under this Agreement, including all such costs and expenses incurred during any legal proceeding; and (d) all interest and fees on any of the foregoing. All Secured Obligations shall constitute "superpriority" administrative-expense claims with priority over (i) all other administrative-expense claims, expenses, and costs permitted by, described in, or entitled to priority under the Bankruptcy Code (expressly including claims of Counsel, trial counsel, or any other estate professional) and (ii) all other unsecured claims against the Plaintiff.

**2.0 Funding Terms**

2.1 Agreement to Fund Plaintiff. In return for Plaintiff's agreement to pay from any Claim Proceeds recovered the Funder Costs Amount, the Funder Recovery Amount, and any other Secured Obligation to Funder in accordance with the terms of this Agreement, Funder agrees to pay reasonable Costs and Disbursements in accordance with the terms of this Agreement.

2.2 Reasonable Costs and Disbursements Only. Unless otherwise agreed by Funder, Funder will not pay, and will not be liable under this Agreement, for any unreasonable Costs and Disbursements, including without limitation the following costs, disbursements, or liabilities that may be incurred by Plaintiff:

(a) costs and/or other sums incurred as a result of Plaintiff's failure (on any one or more occasions) to cooperate with or to follow the advice of Counsel;

(b) costs and/or other sums incurred as a result of any default by Plaintiff;

(c) any liability for payment of Defendant's costs or Plaintiff's liability for fines or penalties;

(d) costs and/or other sums incurred as a result of any unreasonable failure by Plaintiff or Counsel to comply with applicable law, an order or procedural rule of the applicable court during the Proceeding(s), or any discovery or other related obligations;

(e) costs and/or other sums incurred as a result of any sanctions ordered against Plaintiff or Counsel;

(f) costs and/or other sums incurred prior to the Effective Date or after the term of this Agreement;

(g) costs and/or other sums incurred over 30 days prior to the date the invoice is submitted to Funder;

(h) costs and/or other sums incurred in connection with Plaintiff's defense against any claim or counterclaim (whether as defendant, counter-defendant, or otherwise); or

(i) any Costs or Disbursements in excess of the Committed Funds.

2.3 Payment Terms; Disputed Amounts. Plaintiff shall instruct Counsel and any other service providers provided for in the Budget to address invoices relating to the work described in the Budget to Plaintiff but mark such invoices payable by Funder, and to deliver such invoices to Plaintiff (with a copy to Funder simultaneously) for payment. After Plaintiff and/or any other party who has authority to approve such invoices does so and Funder agrees that the Costs and Disbursements on an invoice are reasonable, it shall pay the applicable amount when due; provided that Plaintiff and Counsel shall jointly address an Affirmation and Request for Disbursement to Funder with such applicable amount stated in the form attached as Exhibit B and incorporated by reference.

If Funder, in its reasonable opinion, believes that some or all of the Costs and Disbursements on an invoice are unreasonable and are not required to be paid by Funder hereunder, Funder shall provide a written notice setting out the reasons for its belief to Plaintiff (with a copy to the relevant billing party simultaneously) within 30 days of receipt of the invoice. If Funder provides such notice, Funder and Plaintiff agree to work together with the relevant billing party to resolve the disputed amounts. Pending resolution of such disputed amounts, Funder shall pay any Costs and Disbursements that are not subject to dispute. If Funder and Plaintiff are unable to resolve the disputed amounts within 30

---

[1] Note that in all cases, this is the premium amount paid in addition to the repayment of Funder Costs Amount.

[2] Any reference herein to "commencement of trial" or words of similar import shall, in the context of an arbitration, be a reference to the earlier to occur of (x) submission of terms of reference to the arbitral body and (y) commencement of the arbitration hearing.

days, Funder and Plaintiff shall rely on the arbitration procedure set out in Section 9.5 for resolution.

Plaintiff and Counsel represent and warrant that the Budget (as in effect on the Effective Date), including the specific line items therein, is a reasonable estimate of the investment required to prosecute the Claim(s) to conclusion (including, as necessary, through trial and enforcement/collection). If Plaintiff and Counsel intend to seek reimbursement of fees, costs, or expenses in any way not in compliance with the Budget then in effect, they shall (prior to delivery of the applicable Affirmation and Request for Disbursement) submit to Funder a revised Budget for its approval. If such revised Budget is (in form and substance) acceptable to Funder, it shall (upon Funder's written confirmation) become the Budget then in effect for all purposes hereunder (notwithstanding the provisions of Section 9.8). Plaintiff and Counsel shall not submit for reimbursement of fees, costs, or expenses not in compliance with the Budget then in effect.

2.4 Change to Counsel Agreement. Plaintiff and Counsel verify that Plaintiff and Counsel have modified their fee agreement for advice and/or representation in connection with the Claim(s) to convert 100% of Counsel's fees under that agreement to contingency fees (33%), which (together with any other amount owed to Counsel or trial counsel from the Claim Proceeds) Counsel agrees shall be subordinate to (i) Funder's lien on and security interest in such Claim Proceeds and (ii) Funder's right hereunder to priority of payment of the Funder Costs Amount, the Funder Recovery Amount, and all other Secured Obligations.

Notwithstanding anything herein to the contrary, with respect to any Claim Proceeds awarded as statutory attorney's fees, up to $125,000 of such Claim Proceeds shall be available first to pay amounts owing to trial counsel retained by Plaintiff.

2.5 Other Conditions Precedent. Funder's execution hereof shall be subject to the prior approval of this Agreement by its Investment Committee. Funder's obligations under Section 2.1 shall be subject to Funder's completion of due diligence and, if applicable, favorable resolution of any pending dispositive motion.

**3.0 Recovery Terms**

3.1 Agreement to Pay Funder.[3] The Funder Costs Amount and Funder Recovery Amount shall become payable only if Plaintiff recovers Claim Proceeds. In return for Funder's agreement to pay Plaintiff's reasonable Costs and Disbursements incurred in accordance with this Agreement, Plaintiff agrees to pay Funder, upon recovery of Claim Proceeds, the Funder Costs Amount and Funder Recovery Amount. Plaintiff acknowledges and agrees that Funder's entitlement to the Funder Costs Amount and Funder Recovery Amount shall begin upon the Effective Date and continue to accrue with Funder's payment of any portion of the Committed Funds, whether or not Funder provides the entirety of the Committed Funds, subject to Section 8.3. If the Claim Proceeds are insufficient to pay in full both the Funder Costs Amount and Funder Recovery Amount, then the Claim Proceeds shall be applied exclusively and entirely to paying these amounts to Funder, after which no further sum shall be payable hereunder.

3.2 Payment of Claim Proceeds; Non-Monetary Claim Proceeds. Plaintiff and Counsel agree that Counsel will hold any Claim Proceeds received by it, or by Counsel on its behalf, in trust for Funder, on terms that shall entitle Funder to receive such part of the Claim Proceeds as equals the total of the Funder Costs Amount and Funder Recovery Amount. Plaintiff shall, in good faith, use best efforts to release Claim Proceeds to Funder to pay the Funder Costs Amount and Funder Recovery Amount pursuant to this Agreement as promptly as possible, pursuant to the following wire instructions:

LEGALIST FUND II, L.P.
Bank: Silicon Valley Bank
ABA Number: 121140399
Account Number: 3302704543

All Claim Proceeds received in monetary form shall be paid into Counsel's escrow account immediately upon receipt, for further payment to Funder. In the case of Claim Proceeds received in non-monetary form, unless otherwise agreed by Funder and Plaintiff in writing, Plaintiff shall, as promptly as possible, pay into Counsel's escrow account an amount equal to the Non-Monetary Claim Proceeds Fair Market Valuation and simultaneously provide to Funder in writing (with a copy to Counsel simultaneously) a statement of the details of the Non-Monetary Claim Proceeds Fair Market Valuation. If Funder, in its reasonable opinion, disagrees with the Non-Monetary Claim Proceeds Fair Market Valuation, Funder shall provide a written notice setting out the reasons for its belief to Plaintiff (with a copy to Counsel simultaneously) within 30 days of receipt of the Non-Monetary Claim Proceeds Fair Market Valuation statement. If Funder provides such notice, Funder and Plaintiff agree to work together to resolve the disputed fair market value determination of the non-monetary Claim Proceeds. If Funder and Plaintiff are unable to resolve such dispute within 30 days, Funder and Plaintiff shall rely on the arbitration procedure described in Section 9.5 for resolution.

**4.0 Plaintiff's Representations and Warranties**

Plaintiff represents and warrants to Funder as follows:

4.1 Full Disclosure. Plaintiff and Counsel have provided Funder with all material information relating to the Claim(s), excluding information protected solely by the attorney–client privilege. All material information Plaintiff or Counsel has provided to Funder and/or filed on the docket in the Proceeding(s) (expressly including all allegations contained in Plaintiff's pleadings) is true and correct.

4.2 No Impairment. Other than as already disclosed to Funder, Plaintiff has not taken any action (including executing documents) or failed to take any action that (a) would materially and adversely affect the Claim(s), or (b) would give any person or entity (other than Funder and Plaintiff) an interest in the Claim Proceeds other than as set forth in Section 2.4.

4.3 Omitted.

4.4 Authority. Plaintiff (if an entity) is duly organized, validly existing, and in good standing under the laws of its jurisdiction of organization. Plaintiff has the power and authority to execute and deliver this Agreement and to consummate the transactions

---

[3] For the avoidance of doubt, Plaintiff's various representations, warranties, covenants, agreements, and other obligations hereunder shall be joint and several obligations of each individual plaintiff.

contemplated hereby. The execution and delivery of this Agreement and the consummation of the transactions contemplated hereby have been duly authorized by all necessary corporate (or, if applicable, other entity) action by Plaintiff and no further corporate (or, if applicable, other entity) action is required by Plaintiff to authorize this Agreement and the transactions contemplated hereby. This Agreement has been duly executed and delivered by Plaintiff and constitutes the valid and binding obligations of Plaintiff, enforceable in accordance with its terms, subject to (a) laws of general application relating to bankruptcy, insolvency, and relief of debtors and (b) rules of law governing specific performance, injunctive relief, and other equitable remedies.

4.5 Common Interest. Plaintiff has received the advice of Counsel, or of another duly qualified law firm or attorney, regarding the common interest doctrine.

**5.0 Funder's Representations and Warranties**

Funder represents and warrants to Plaintiff as follows:

5.1 Committed Funds. Funder has sufficient funds available to fulfill its obligations hereunder.

5.2 No Conflicts. Other than as already disclosed to Plaintiff, Funder has not, as of the Effective Date: (a) paid a referral fee to Counsel in connection with the Claim(s), Plaintiff, or this Agreement; (b) entered into any transaction with Counsel that has or would make Counsel a part owner of Funder; (c) contracted with any other party or potential party to the Claim(s); (d) engaged in negotiations with any other party or potential party to the Claim(s); or (e) entered into any relationship with Counsel that conflicts with Plaintiff's interests regarding the Claim(s). Funder does not have a duty, contractual obligation, or other requirement to monetize its interest in the Claim(s) within any particular timeframe or which would require Funder to cease funding the Claim(s). For the avoidance of doubt, the preceding sentence does not include a fiduciary or other duty that would require Funder to cease funding the Claim(s) pursuant to Section 8.2 because of Funder's assessment of the viability of the Claim(s). In addition, Funder has not instituted any action, suit, or arbitration separate from the Claim(s) arising from the same facts, circumstances or law giving rise to the Claim(s), and has not granted (or purported to grant) any charge, lien, or other security interest with respect to the Claim(s) and the Claim Proceeds in any way, other than such payments that would become due after all payments due to Funder hereunder have been satisfied in full.

5.3 No Disclosure of Common Interest Material. Funder and its legal counsel have not disclosed any Common Interest Material to anyone without Plaintiff's and Counsel's prior written consent.

5.4 Authority. Funder is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization. Funder has the power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby. The execution and delivery of this Agreement and the consummation of the transactions contemplated hereby have been duly authorized by all necessary corporate action on the part of Funder and no further corporate action is required by Funder to authorize this Agreement and the transactions contemplated hereby, except as set forth in Section 2.5. This Agreement has been duly executed and delivered by Funder and constitutes the valid and binding obligation of Funder, enforceable in accordance with its terms, subject to (a) laws of general application relating to bankruptcy, insolvency, and relief of debtors and (b) rules of law governing specific performance, injunctive relief, and other equitable remedies.

**6.0 Additional Covenants**

6.1 Accuracy of Representations and Warranties. Each party covenants and agrees that all representations and warranties made by it pursuant to this Agreement shall continue to be true and correct throughout the term of this Agreement. Each party further agrees to promptly notify the other parties if a representation or warranty it made is no longer true and correct.

6.2 Duty to Cooperate. Plaintiff covenants to cooperate in the prosecution of the Claim(s), including without limitation, causing its officers, executives, and employees to promptly and fully assist Counsel as reasonably necessary to conduct and conclude the Claim(s). For the avoidance of doubt, such assistance includes all actions any plaintiff may reasonably expect undertaking, including, without limitation, submitting to examination, verifying statements under oath, and appearing at any Proceeding(s).

6.3 Duty to Conduct Claim(s). Plaintiff covenants to use best efforts to continue to conduct the Claim(s) until their settlement or final resolution as long as Counsel represents Plaintiff on a contingency basis or Funder continues to fund the Claim(s) in accordance herewith. Counsel covenants that it will not voluntarily withdraw (*i.e.*, other than as required under its ethical obligations, as confirmed by Section 6.5) from representation of Plaintiff or prosecution of the Claim(s) to conclusion (including, as necessary, through trial and enforcement/collection), expressly including in the event of Budget overruns. Both Plaintiff and Counsel covenant that the Claim(s) shall be prosecuted in accordance with the Budget.

6.4 Control of Claim(s). Plaintiff shall retain control over the conduct of the Claim(s) and in particular over settlement of the Claim(s) with the Defendant. Without limiting the previous sentence, Plaintiff agrees to take and follow the legal advice of Counsel at all appropriate junctures.

6.5 No Interference. The parties recognize that Counsel must at all times comply with its ethical duties to act in the best interests of Plaintiff and in accordance with its other professional responsibilities and duties. Nothing in this Agreement entitles Funder to interfere in the conduct of the Claim(s) and/or the Proceeding(s).

6.6 Duty to Inform. Plaintiff agrees and undertakes to keep Funder fully informed about the progress of the Claim(s) insofar as is proportionate, reasonably practicable, and consistent with maintaining applicable privileges. Plaintiff hereby irrevocably instructs Counsel to provide written status reports to Funder, in form and detail reasonably acceptable to Funder, at least once each calendar quarter during the pendency of the Claim(s); upon the occurrence of any material event in the Claim(s); and from time to time upon Funder's reasonable request.

In addition, Plaintiff hereby irrevocably instructs Counsel, and if further instructions are needed, undertakes to instruct Counsel, to provide Funder within three business days following receipt a copy of any material document or filing made or obtained in the Proceeding(s) by any lawful means, including without limitation: (1) all material, non-privileged information, regardless of the

information's source, confidentiality, or form, unless Funder already possesses or controls such information; (2) acknowledging that this Agreement contains provisions requiring the parties to protect the confidentiality of any Confidential Information disclosed, all attorney work product relating to the Claim(s) as soon as practicable; and (3) communicating attorney–client privileged information to Funder (as permitted under the law) in the furtherance of that interest does not waive the privilege, all such information on a topic-by-topic basis, provided that neither Plaintiff nor Counsel shall disclose attorney–client protected information to Funder unless (i) Plaintiff has discussed with Counsel the information to be shared, the reason for the sharing, and the probable consequences if the sharing is ultimately held to waive the privilege and (ii) Plaintiff has given written consent to such information sharing.

All such and other written and/or oral communications between Funder and Counsel and/or Plaintiff shall be subject to the jurisdiction set forth in Section 9.4.

6.7 No Change in Counsel Without Funder Notice. Plaintiff agrees and undertakes that it will not engage a new attorney or law firm in connection with the Claim(s), either as a replacement or supplement to Counsel, without giving Funder 30 days' prior notice and giving good faith consideration to Funder's response, if any. This provision is subject and subordinate to Plaintiff's right to have counsel of its choosing.

6.8 Funder Notifications of Settlement. Plaintiff agrees that it will immediately notify Funder upon receiving a settlement offer and provide Funder with the complete details of (including copies of all documents evidencing or otherwise relating to) the offer in such notice. Plaintiff shall not make a settlement offer without first notifying Funder thereof, including the complete details of (including copies of all documents evidencing or otherwise relating to) the proposed offer. Plaintiff agrees that it will not respond to a settlement offer or make a settlement offer until after giving good faith consideration to Funder's analysis thereof; provided that Funder shall communicate such analysis within four business days of receiving such notice. The foregoing is a continuing obligation of Plaintiff, which shall provide Funder with the foregoing information and/or documents at each stage of settlement negotiations, up to and expressly including execution of a final settlement agreement (a copy of which shall be simultaneously delivered to Funder). For the avoidance of doubt, the parties acknowledge and agree that any decision regarding settlement of Claim(s), including the ultimate decision whether and for how much to settle any Claim(s), lies solely with Plaintiff.

6.9 Indemnification. Plaintiff agrees to cooperate with Funder in the pursuit of any suit filed against Counsel by either Plaintiff or Funder in connection with such loss or damage. The indemnity in this section is limited to the extent of any successful recovery of such loss or damage or costs in any such proceedings against Counsel.

6.10 Future Encumbrances. During the term hereof, Plaintiff shall not itself, or cause, permit, or allow, directly or indirectly, anyone else to (i) create, assume, incur, suffer, or permit to exist any pledge, encumbrance, security interest, assignment, lien, or charge of any kind or character on the Claim(s), Claim Proceeds, or other Collateral or (ii) sell, transfer, issue, reissue, exchange, or grant any option with respect to the Claim(s), Claim Proceeds or other Collateral, in each case, without Funder's written approval, which approval shall not be unreasonably withheld. If this Agreement is terminated, unless and until Funder has been repaid all amounts owing to it hereunder, Plaintiff shall not take any of the foregoing actions to the extent it would, in any way, prejudice, offset, or interfere with Funder's rights hereunder, including without limitation any accrued right or entitlement to the Funder Costs Amount, the Funder Recovery Amount, or any other Secured Obligation.

6.11 Foreseeable Circumstances. Plaintiff, Counsel, and Funder acknowledge that the (i) COVID-19 pandemic and/or other instances of pandemic or widespread virus or infection and (ii) ongoing riots, insurrections, terrorist acts, and/or other domestic unrest and uncertainty shall not be considered unforeseeable circumstances for purposes of this contract. Plaintiff, Counsel, and Funder agree that any claim of unenforceability, Force Majeure, or other claim and/or defense related to this and/or any pandemic, virus, civil unrest, and/or infection-related or other court closure arising from or related to or arising from the aforementioned circumstances are hereby waived.

6.12 Quarterly Affirmation. Within 10 business days of the end of each calendar quarter, Plaintiff and Counsel shall submit a completed Affirmation and Request for Disbursement to Funder.

**7.0 Common Interest and Confidentiality**

7.1 Common Interest. Plaintiff and Funder agree they share a common legal interest and, to the degree necessary to further their common legal interest, agree to share Common Interest Material in accordance with the terms hereof. Plaintiff and Funder agree the material would not be shared if the common legal interest did not exist and do not waive any legal professional privilege, common interest privilege, or other privilege or protection attaching to any documents and information disclosed to Funder. Any privileged information and documents disclosed at any time to Funder have been or will be disclosed on the additional basis that Funder has, or will have, a common interest in the pursuit and success of the Proceeding(s) and will at all times take all reasonable steps to maintain that privilege. The provision of privileged documents does not amount to any waiver of privilege, and Funder shall not use these for any purpose other than in respect of this Agreement, except a purpose to which the parties have consented or as required by law or regulation.

7.2 Non-Disclosure Generally. During the term of this Agreement and for three (3) years following its termination, the recipient of Confidential Information of another party shall not disclose, use, or make available, directly or indirectly, any such Confidential Information to anyone, except as needed to perform its obligations hereunder, as the disclosing party otherwise authorizes in writing, or as required by law. When disclosing, using, or making Confidential Information available in connection with such obligations or as permitted by the disclosing party, the recipient shall take reasonable steps to preserve the confidentiality of the Confidential Information on terms no less restrictive than as set forth herein. The parties agree that neither the execution of this Agreement nor the provision of Confidential Information enables any other party to use the Confidential Information for any purpose or in any way other than as specified herein.

7.3 Potentially Enforceable Disclosure Requests. If a party receiving Confidential Information receives a potentially enforceable request for the production thereof, including without limitation, a subpoena or other official process, that party will promptly notify the disclosing party in writing, unless such notice

is prohibited by law. If allowed, such notice shall be given before complying with the request and shall include a copy of the request. If the request is of the recipient of Confidential Information, and notice to the disclosing party is prohibited by law, the recipient must make a good faith effort to contest the disclosure, if appropriate. The recipient shall also make a good faith effort to obtain an agreement protecting the confidentiality of the Confidential Information prior to disclosing it. If a disclosing party elects to contest the request, the receiving party shall not make any disclosure until a final, non-appealable or non-stayed order has been entered compelling such disclosure. The contesting party shall pay its own expenses and control its contest, provided that, if the recipient contests a request when forbidden by law to give the disclosing party notice of the disclosure request, the disclosing party shall reimburse the recipient's reasonable expenses promptly after being notified of them.

## 8.0 Term

8.1 Term. The term of this Agreement shall commence on the Effective Date and terminate upon the earlier to occur of (a) the satisfaction in full of all payment obligations of Plaintiff to Funder hereunder and (b) termination hereof under Section 8.2.

8.2 Termination. This Agreement may be terminated upon (i) mutual written agreement of Plaintiff and Funder; (ii) a material breach by any party to this Agreement, which breach has not been cured within 15 days following written notice from a non-breaching party; provided that if such breach is impossible to cure, the term may be terminated immediately upon such notice; (iii) Plaintiff's or Counsel's misrepresentation or omission of a material fact that is relevant to the Claim(s); (iv) Funder's reasonable conclusion that, because of a change of factual circumstances, any of the Claim(s) is not commercially viable; or (v) the occurrence of: (a) default in payment when due of any Claim Proceeds; (b) default in the observance or performance of any provision of this Agreement not remedied within 30 days of notice thereof; (c) Plaintiff's termination of Counsel (not trial counsel), or Counsel's (not trial counsel) withdrawal from representing Plaintiff; (d) repayment in full has not occurred within 30 months of the Effective Date; or (e) the Agreement shall for any reason not be or cease to be in full force and effect or is declared to be null and void (each an "Event of Default").

Termination shall be set forth in writing by the terminating party to all other parties; provided that, without prior notice and in its sole and absolute discretion, Funder may elect (in lieu of termination hereof) to charge a penalty rate upon the occurrence of an Event of Default, equal to an additional 7.5% per annum to the Funder Costs Amount and Funder Recovery Amount and all amounts accrued thereon. Such penalty rate shall accrue and be compounded and capitalized on a monthly basis. Amounts owing under this Section 8.2 shall constitute additional Funder Recovery Amount for all purposes. Such election shall not prohibit subsequent termination by Funder hereunder.

8.3 Effect of Termination. If this Agreement is terminated under Section 8.2 (other than Section 8.2(v)(d)), Funder shall have no further obligation to pay reasonable Costs and Disbursements following the effective date of the termination. Any such termination shall not affect any accrued rights or entitlements of Funder to receive the Funder Costs Amount, Funder Recovery Amount, or any other Secured Obligation. In the event of termination under Section 8.2(iv), the Funder Recovery Amount shall be reduced in proportion to the Committed Funds actually paid by Funder prior to termination. In the event of termination by Funder under Section 8.2(ii) or (iii) and only to the extent that the Funder is a non-breaching party, any Committed Funds already paid shall be returned in full to Funder. Any termination shall not serve as a waiver of any party's right to seek damages at law or other remedy in equity including injunctive relief. Furthermore, in the event of termination, Plaintiff shall thereafter use best efforts to enter into alternative funding arrangements in connection with the Claim(s).

8.4 Survival. Sections 1, 2 (other than Section 2.1), 3, 4, 5, 6.10, 7, 8, and 9 shall survive any termination hereof.

8.5 Liquidated Damages. Because it would be impracticable or extremely difficult to fix the actual value of damages to Funder if Plaintiff or Counsel materially breaches any of the covenants contained in Sections 3.2, 6.8, 6.10, and/or 9.3, it has been agreed by the parties that liquidated damages of $10,000 represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained by Funder internally in connection therewith, in addition to any other external costs and/or attorney's fees, if Plaintiff or Counsel fails to materially perform any such covenant and, as such, this amount is not intended to be a penalty in any manner whatsoever.

## 9.0 Miscellaneous

9.1 Limitation of Funder's Liability. Except where directly and demonstrably caused by gross negligence or willful misconduct on the part of Funder, which may include claims of breach of the implied duty of good faith and fair dealing, under no circumstances shall Funder be liable for any outcome or disposition with respect to the Claim(s). IN NO EVENT SHALL FUNDER, ITS AFFILIATES (EXPRESSLY INCLUDING LEGALIST, INC.) OR ANY OF THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS, OR AGENTS BE LIABLE FOR ANY INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY, OR PUNITIVE DAMAGES ARISING FROM OR DIRECTLY OR INDIRECTLY RELATED TO THE AGREEMENT, INCLUDING, WITHOUT LIMITATION, LOSS OF REVENUE, ANTICIPATED PROFITS, OR LOST BUSINESS, DATA OR SALES, OR COST OF SUBSTITUTE SERVICES, EVEN IF FUNDER OR ITS REPRESENTATIVE OR SUCH INDIVIDUAL HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT SHALL THE TOTAL LIABILITY OF FUNDER FOR ALL DAMAGES, LOSSES, AND CAUSES OF ACTION (WHETHER IN CONTRACT OR TORT, INCLUDING, BUT NOT LIMITED TO, NEGLIGENCE OR OTHERWISE) ARISING FROM THE AGREEMENT EXCEED, IN THE AGGREGATE, THE UNSPENT COMMITTED FUNDS.

9.2 Survival of Warranties. Unless otherwise set forth in this Agreement, the representations and warranties of the parties contained herein shall survive the execution and delivery of this Agreement and shall in no way be affected by any investigation or knowledge of the subject matter thereof by or on behalf of the other parties.

9.3 Successors and Assigns.

(a) This Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the parties,

provided Plaintiff may not assign this Agreement without Funder's prior written consent.

(b) All individuals working on the prosecution of the Claim(s) for Counsel (each a "Key Person") shall execute this Agreement solely for purposes of this Section 9.3. If any Key Person ceases to be a partner in, employed by, or otherwise affiliated with Counsel, such individual shall promptly provide notice thereof to Funder and, within 5 business days thereof, execute or otherwise obtain a joinder hereto as Counsel by the new entity that he or she has joined (a "Joinder"); provided that execution of a Joinder shall not release Counsel of any obligation hereunder. Any default under this clause (b) shall constitute a material breach for purposes of Section 8.2(ii).

(c) Counsel and each Key Person agree that any litigation brought by Counsel either (1) involving claims substantially similar to the Claim(s) or (2) otherwise substantially similar to the Proceeding(s) shall (irrespective of the identity of the plaintiff therein) constitute Claim(s) hereunder.

9.4 Governing Law. This Agreement shall be governed by the internal laws of the State of Delaware without respect to any rules regarding choice of law.

9.5 Dispute Resolution. Any dispute, claim, or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation, or validity thereof, shall be brought in the Bankruptcy Court.

9.6 Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Counterparts may be delivered by electronic mail.

9.7 Notices. All notices and other communications hereunder shall be sent by electronic mail and deemed effectively given (i) when sent, if sent during normal business hours of the recipient or (ii) if not sent during normal business hours, then on the recipient's next business day. All communications shall be sent to the parties at the respective email addresses set forth on the signature page (or as subsequently modified by written notice given in accordance with this section).

9.8 Amendments and Waivers. Any term of this Agreement may be amended, terminated, or waived only with the written consent of the parties.

9.9 Severability. The invalidity or unenforceability of any provision hereof shall in no way affect the validity or enforceability of any other provision. If any provision of this Agreement is determined to be invalid or unenforceable under applicable law and regulations by a court of competent jurisdiction, that provision shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect and be enforceable.

9.10 Cumulative Remedies. No failure by any party to exercise any right under this Agreement shall operate as a waiver of such right; nor shall any single or partial exercise of any right preclude any other or further exercise of the right or the exercise of any other right. The rights and remedies hereunder of each party are cumulative to, and not exclusive of, any rights or remedies which such party would otherwise have.

9.11 Delays or Omissions. No delay or omission to exercise any right, power, or remedy accruing to any party under this Agreement, upon any breach or default of any other party under this Agreement, shall impair any such right, power, or remedy of such non-breaching or non-defaulting party nor shall it be construed to be a waiver of any such breach or default, or an acquiescence therein, or of or in any similar breach or default thereafter occurring; nor shall any waiver of any single breach or default be deemed a waiver of any other breach or default theretofore or thereafter occurring. Any waiver, permit, consent, or approval of any kind or character on the part of any party of any breach or default under this Agreement, or any waiver on the part of any party of any provisions or conditions of this Agreement must be in writing and shall be effective only to the extent specifically set forth in such writing.

9.12 Force Majeure. Subject to Section 6.11, if any party fails or is unable to perform any obligation under this Agreement due to any cause beyond its reasonable control, such party shall give the other parties prompt notice of such cause, and use its reasonable best efforts to promptly correct such failure or delay in performance.

9.13 Investments Not Loans. All references in this Agreement to funding the costs and expenses of pursuing the Claim(s), however described, shall be construed to be references to Funder's investment in the Claim(s) and associated right to share in the Claim Proceeds together with the other rights set out in this Agreement, in return for its associated obligations set out in this Agreement, and it shall not be construed as a loan from Funder to Plaintiff or giving rise to a lender-borrower arrangement and/or relationship.

9.14 Additional Savings Clause. The parties agree that this Agreement is not a loan and is not subject to any usury provision of any applicable state. All agreements between Plaintiff, Counsel, and/or Funder are hereby expressly limited so that in no contingency or event whatsoever shall the amount paid or agreed to be paid to Funder for the use, forbearance, or detention of the money to be funded in this Agreement exceed the maximum permissible under applicable law. If, from any circumstance whatsoever, fulfillment of any provision hereof, at the time performance of such provision shall be due, shall be prohibited by law, the obligation to be fulfilled shall be reduced to the maximum not so prohibited, and if from any circumstance Funder should ever receive as interest (although Funder denies any "interest" is due) hereunder an amount which would exceed the highest lawful rate, such amount as would be excessive interest shall be applied to the reduction of the principal of the Agreement (against installments of principal due hereunder in the inverse order of their maturity) and not to the payment of interest. This provision shall control every other provision of all agreements between and among Plaintiff, Counsel, and/or Funder.

9.15 Grant of Security Interest. As security for the payment and performance in full of the Secured Obligations, Plaintiff hereby grants, assigns, and pledges to Funder, its successors and assigns, a security interest in any and all right, title, or interest of Plaintiff in or to any and all of the following assets and properties now owned or at any time hereafter acquired by Plaintiff or in which Plaintiff now has or at any time in the future may acquire any right, title or interest (collectively, the "Collateral"): (a) the Claim(s) and any and all Proceeds arising therefrom; (b) the Claim Proceeds; and (c) to the extent not otherwise included, all

Proceeds of any and all of the foregoing. Capitalized terms used but not defined in this Section 9.15 have the meanings given to them in the Uniform Commercial Code.

(a) <u>Continuing Security Interest</u>. The security interest hereby granted by Plaintiff constitutes continuing collateral security for all Secured Obligations.

(b) <u>Priority of Funder's Claims and Liens</u>. The Funder Costs Amount, Funder Recovery Amount, and all other Secured Obligations shall constitute "superpriority" administrative-expense claims with priority over (i) all other administrative-expense claims, expenses, and costs permitted by, described in, or entitled to priority under the Bankruptcy Code (expressly including claims of Counsel, trial counsel, or any other estate professional) and (ii) all other unsecured claims against the Plaintiff.

Funder's liens on the Collateral shall, pursuant to Bankruptcy Code section 364(d), be senior liens with priority over any and all liens on, security interests in, and claims against the Collateral. Notwithstanding any requirement of non-bankruptcy law to the contrary, such senior liens shall automatically attach upon entry of a Bankruptcy Court order approving this Agreement, without further notice to or action by any party.

Plaintiff shall take all steps and any other action reasonably requested by Funder to perfect or maintain the security interest hereby granted.

(c) [<u>Omitted</u>].

(d) <u>Representations and Warranties</u>. Plaintiff represents and warrants to Funder that:

Plaintiff has provided, as applicable, Plaintiff's full legal name, fictional or assumed names, nicknames and aliases, and state of organization or primary residence.

Plaintiff (if an entity) has not changed its name or otherwise used another trade or other name, or been party to a merger, consolidation, or other change in structure or used any trade name, not disclosed in this section.

Plaintiff has not acquired any Claim(s) from any other person except as disclosed in this section.

Plaintiff has the right, power, and authority to grant Funder a senior security interest in the Collateral, subject only to entry of a Bankruptcy Court order approving this Agreement.

The security interest granted by Plaintiff herein constitutes (i) a legal and valid security interest which is enforceable against the Collateral in which Plaintiff now has rights or hereafter acquired rights; and (ii) the security interest shall constitute a perfected security interest in the Collateral, in which Plaintiff now has rights or hereafter acquired rights at the time Plaintiff acquires any such rights.

9.16 <u>Omitted</u>.

9.17 <u>Advice on this Agreement</u>. Each party represents to the other parties that it (a) has read this Agreement; (b) has been represented in the preparation, negotiation, and execution of this Agreement by legal counsel of the party's own choice or has voluntarily declined to seek such counsel; (c) understands the terms and consequences of this Agreement; and (d) is fully aware of the legal and binding effect of this Agreement.

9.18 <u>Entire Agreement</u>. This Agreement (including any exhibits or schedules hereto) constitutes the full and entire understanding and agreement between the parties with respect to the subject matter hereof, and any other written or oral agreements relating to the subject matter hereof existing between the parties are expressly canceled.

IN WITNESS WHEREOF, the parties hereto have executed this Litigation Funding Agreement as of the Effective Date, subject to entry of a Bankruptcy Court order (in form and substance acceptable to Funder) approving the same.

PLAINTIFF:

SEVEN STARS ON THE HUDSON CORP.

By _____
Name: Jens Berding
Title: CEO
Address: 2108 N.E. 63rd St.
Ft. Lauderdale, FL 33308
Email: jens_berding@yahoo.com

Jurisdiction of Organization:
_____FLORIDA_____

FUNDER:

LEGALIST FUND II, L.P.

By Legalist GP II, L.L.C., its General Partner

By _____
Name: Christian G.B. Haigh
Title: Managing Member
Address: 10120 W. Flamingo Rd., Ste. 4, No. 3015
Las Vegas, NV 89147
Email: info@legalist.com

COUNSEL:

LAW OFFICE OF KATHLEEN A. DALY, P.A.

By _*Kathleen A Daly*_
Name: Kathleen A. Daly
Title: Principal
Address: 515 N. Flagler Dr., Ste. P300
W. Palm Beach, FL 33401
Email: kdaly@kadalylaw.com

*Solely for purposes of Section 9.3:*
_*Kathleen A Daly*_____
Kathleen A. Daly

**Exhibit A**
**Budget**

| Budget Category | Amount Available for Counsel Fees for Budget Category | Amount Available for Other Costs and Expenses for Budget Category[1] | Total |
|---|---|---|---|
| Effectiveness of LFA | $50,000 | $5,000 (Fact Discovery) | $55,000 |
| Commencement of Expert Discovery | ----- | $20,000 (Expert Discovery) | $20,000 |
| End of Discovery | $10,000 | --- | $10,000 |
| Denial of Summary Judgment | $10,000 | --- | $10,000 |
| Commencement of Trial | $10,000 | --- | $10,000 |
| **Conclusion of Prosecution of Claim(s)** | **$80,000** | **$25,000** | **$105,000** |

---

[1] Amounts available for each of (i) Counsel Fees and (ii) Other Costs and Expenses shall not be applied to the other category without Funder's prior written consent.

**Exhibit B**
**Affirmation and**
**Request for Disbursement**

[Date]

Legalist Fund II, L.P.
c/o Legalist, Inc. (zofie@legalist.com)

Reference is made to the Litigation Funding Agreement (the "Agreement") dated as of March 31, 2021, between and among Law Office Of Kathleen A. Daly, P.A., as Counsel, and Seven Stars on the Hudson Corp., as Plaintiff, and Legalist Fund II, L.P., as Funder. Capitalized terms have the meanings assigned to them in the Agreement. The undersigned hereby confirm as follows:

1. This document is an "Affirmation and Request for Disbursement" as defined in the Agreement.

2. If applicable, the undersigned request disbursement of _____ (the "Funding Amount"), which both Counsel and Plaintiff represent is for reimbursement of fees, costs, and/or expenses incurred in the following amounts, after the occurrence of the following events set forth in the Budget, all in accordance with the Budget:

| Budget Category | Amount Payable for Counsel Fees for Budget Category | Amount Payable for Other Costs and Expenses for Budget Category | Total |
|---|---|---|---|
| Counsel Fees / Discovery | | | |
| Counsel Fees / SJ and Pretrial | | | |
| Counsel Fees / Trial | | | |
| Fact Discovery | | | |
| Expert Discovery | | | |

3. If applicable, please pay the Funding Amount to the following account (the "Account"):

   Account Name: _____
   Bank: _____
   ABA (for wires): _____
   Account Number: _____

4. Each of the undersigned certifies that (a) neither Funder nor it has defaulted on any of their respective obligations in the Agreement, and no other event has occurred or circumstance exists that would permit it or Funder to terminate the Agreement, both as of the date hereof, (b) all representations and warranties by it in the Agreement are true and correct as of the date hereof, (c) both Plaintiff and Counsel have fully complied with the Budget (as currently in effect) to date and will remain in the compliance following the disbursement hereby requested, and (d) Plaintiff and Counsel will use the funds associated with this Affirmation and Request for Disbursement solely in accordance with the permissible uses described in the Agreement (expressly including the Budget). Each of the undersigned furthermore affirms and ratifies the Agreement as of the date above, which remains in full force and effect.

5. By signing and submitting this Affirmation and Request for Disbursement, Plaintiff represents and warrants to Funder (if applicable) that it has approved the fees, costs, and/or expenses for which disbursement is sought and waives any right to dispute or challenge such disbursement by Funder.

6. Nothing herein shall supersede or change the Agreement, and both the Agreement and this Affirmation and Request for Disbursement shall be interpreted together as one document.

PLAINTIFF:                                    COUNSEL:

SEVEN STARS ON THE HUDSON CORP.               LAW OFFICE OF KATHLEEN A. DALY, P.A.

By _____                    By _____
Name: Jens Berding                            Name: Kathleen A. Daly
Title: CEO                                    Title: Principal
Address: 2108 N.E. 63rd St.                   Address: 515 N. Flagler Dr., Ste. P300
Ft. Lauderdale, FL 33308                      W. Palm Beach, FL 33401



## Audit Trail

| | |
|---|---|
| **TITLE** | 3425-P Seven Stars Litigation Funding Agreement |
| **FILE NAME** | 3425-P Seven Star... (2021.03.29).pdf |
| **DOCUMENT ID** | 156f952b42e387dcdc3a65f7a770775bf82e8e55 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

## Document History

**SENT** — 03 / 31 / 2021 16:58:21 UTC
Sent for signature to Christian Haigh (christian@legalist.com), Jens Berding (jens_berding@yahoo.com) and Kathleen A. Daly (kdaly@kadalylaw.com) from marie@legalist.com
IP: 180.191.203.246

**VIEWED** — 03 / 31 / 2021 20:11:51 UTC
Viewed by Kathleen A. Daly (kdaly@kadalylaw.com)
IP: 108.216.198.78

**VIEWED** — 03 / 31 / 2021 20:12:42 UTC
Viewed by Jens Berding (jens_berding@yahoo.com)
IP: 108.216.198.78

**SIGNED** — 03 / 31 / 2021 20:13:30 UTC
Signed by Jens Berding (jens_berding@yahoo.com)
IP: 108.216.198.78

**VIEWED** — 04 / 01 / 2021 00:28:37 UTC
Viewed by Christian Haigh (christian@legalist.com)
IP: 47.25.124.24



Audit Trail

| | |
|---|---|
| **TITLE** | 3425-P Seven Stars Litigation Funding Agreement |
| **FILE NAME** | 3425-P Seven Star... (2021.03.29).pdf |
| **DOCUMENT ID** | 156f952b42e387dcdc3a65f7a770775bf82e8e55 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

Document History

**04 / 02 / 2021**
20:09:32 UTC
Signed by Kathleen A. Daly (kdaly@kadalylaw.com)
IP: 71.196.124.221

**04 / 02 / 2021**
20:40:16 UTC
Signed by Christian Haigh (christian@legalist.com)
IP: 107.77.211.197

**04 / 02 / 2021**
20:40:16 UTC
The document has been completed.

Powered by HELLOSIGN