# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

_____

## CASE NO. 22-60299

_____

IN RE: SEVEN STARS ON THE HUDSON CORPORATION,
d/b/a ROCKIN' JUMP

**SEVEN STARS ON THE HUDSON
CORPORATION, d/b/a ROCKIN' JUMP**

*Appellants,*

vs.

**MDG POWERLINE HOLDINGS, LLC
AND XBK MANAGEMENT LLC,
d/b/a XTREME ACTION PARK**

*Appellees.*

_____

On appeal from the United States Bankruptcy Court for the Southern District of
Florida (Bankruptcy Court Docket No. Adv. Pro. 19-01230)

_____

## ANSWER BRIEF OF APPELLEE
## MDG POWERLINE HOLDINGS, LLC

Scott A. Hiaasen, Esq. (Fla. Bar No. 103318)
shiaasen@coffeyburlington.com
COFFEY BURLINGTON, P.L.
2601 South Bayshore Drive, Penthouse One
Miami, Florida 33133
Telephone: (305) 858-2900
Facsimile: (305) 858-5261
*Counsel for Appellee*

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Bankruptcy Procedure 8012, Appellee MDG Powerline Holdings, LLC, makes the following certifications and disclosures:

MDG Powerline Holdings, LLC, is a nongovernmental company which does not have a parent corporation, and in which no publicly held corporation owns 10 percent or more of its stock.

C-1

COFFEY │ BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Bankruptcy Procedure 8019, Appellee MDG Powerline Holdings, LLC, states that oral argument is not necessary in this matter. The dispositive issues in this matter were authoritatively decided in favor of the Defendants in a 44-page Memorandum Opinion, and Appellant's appeal does not challenge any of the substantive factual and legal conclusions in that Order. The facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT......................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ........................................... 1

TABLE OF CITATIONS .................................................................... 4

STATEMENT OF THE ISSUES PRESENTED .................................................. 4

STATEMENT OF THE CASE AND PROCEDURAL HISTORY..................... 11

    A.    The Bankruptcy Court's Scheduling Orders and Appellant's
           Pursuit of a 'Litigation Funding Agreement' in Its Chapter 11 Case....... 12

    B.    Appellant's Failure to Disclose Any Damages Computations
           or Evidence ................................................................... 15

    C.    Appellant's Untimely and Contradictory Declaration............................. 17

    D.    The Bankruptcy Court's Memorandum Opinion Granting Summary
           Judgment and Striking the Sham Declaration. ........................................ 19

SUMMARY OF THE ARGUMENT .................................................... 21

ARGUMENT ................................................................................ 23

    I.    Appellant Failed to Show Good Cause to Amend the Scheduling Order. 23

    II.    The 'Excusable Neglect' Standard Is Not Applicable – and It Was Not
          Raised Before the Bankruptcy Court..................................................... 30

        A.   'Excusable Neglect' Does Not Apply ................................................ 30

        B.   Appellant Failed to Raise This Argument Below................................. 32

        C.   Even If Appellant Had Preserved This Issue, It Cannot Demonstrate
            Excusable Neglect .............................................................. 33

    III.   The Bankruptcy Court Did Not Err in Finding That Appellant's
          Discovery Failures Violated Rule 37(c)(1)............................................ 38

    IV.   The Bankruptcy Court Did Not Abuse Its Discretion in Striking
          Appellant's Untimely and Inconsistent Sham Declaration...................... 48

V.    The Bankruptcy Court Correctly Granted Summary Judgment in
      Favor of MDG Powerline .......................................................... 56

CONCLUSION ................................................................................ 58

CERTIFICATE OF COMPLIANCE .................................................. 59

CERTIFICATE OF SERVICE ........................................................... 59

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

# TABLE OF CITATIONS

Page(s)

## **Cases**

*Access Now, Inc. v. Sw. Airlines Co.*,
  385 F.3d 1324 (11th Cir. 2004)...................................................................... 33

*Advanced Estimating Sys., Inc. v. Riney*,
  130 F.3d 996 (11th Cir. 1997).................................................................36, 37

*Allen Russell Pub., Inc. v. Levy*,
  109 F.R.D. 315 (N.D. Ill. 1985).................................................................. 27

*Bearint ex rel. Bearint v. Dorell Juvenile Grp., Inc.*,
  389 F.3d 1339 (11th Cir. 2004).........................................................24, 43, 47

*Bonilla v. Baker Concrete Const, Inc.*,
  487 F.3d 1340 (11th Cir. 2007)..................................................................... 32

*Bowe v. Pub. Storage*,
  106 F.Supp.3d 1252 (S.D. Fla. 2015).........................................................37, 45

*Cheney v. Anchor Glass Container Corp.*,
  71 F.3d 848 (11th Cir. 1996)........................................................................ 36

*Circuitronix, LLC v. Kinwong Elec. (Hong Kong) Co., Ltd.*,
  993 F.3d 1299 (11th Cir. 2021)..................................................................... 51

*City of Rome v. Hotels.com, L.P.*,
  549 Fed. Appx. 896 (11th Cir. 2013)............................................................ 54

*Collins v. United States*,
  2010 WL 4643279 (M.D. Fla. Nov. 9, 2010)................................................ 51

*Crawford v. ITW Food Equip. Grp., LLC*,
  977 F.3d 1331 (11th Cir. 2020)..................................................................... 47

*Del Monte Fresh Produce Co. v. Net Results, Inc.*,
  77 So. 3d 667 (Fla. 3d DCA 2011)............................................................... 40

*Destra v. Demings*,
  725 Fed. Appx. 855 (11th Cir. 2018)............................................................ 32

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

*Furcron v. Mail Ctrs. Plus, LLC,*
 843 F.3d 1295 (11th Cir. 2016) ....................................................................... 11

*Geiserman v. MacDonald,*
 893 F.2d 787 (5th Cir. 1990) ........................................................................... 47

*Gilmour v. Gates, McDonald & Co.,*
 382 F.3d 1312 (11th Cir. 2004) ....................................................................... 55

*Hamilton v. Southland Christian Sch., Inc.,*
 680 F.3d 1316 (11th Cir. 2012) ...................................................................33, 38

*In re ATM Fin. Services, LLC,*
 517 Fed. Appx. 840 (11th Cir. 2013) ............................................................... 33

*In re Complaint of C.F. Bean, L.L.C.,*
 841 F.3d 365 (5th Cir. 2016) ......................................................................47, 48

*In re Treco,*
 00-8137, 2001 WL 1566701 (Bankr. S.D.N.Y. Dec. 10, 2001) ....................... 28

*Izquierdo v. Certain Underwriters at Lloyd's London,*
 2021 WL 3197008 (11th Cir. July 29, 2021) ................................................... 43

*Jetport, Inc. v. Landmark Aviation Miami, LLC,*
 2017 WL 7732868 (S.D. Fla. July 11, 2017) ................................................... 47

*Josendis v. Wall to Wall Residence Repairs, Inc.,*
 662 F.3d 1292 (11th Cir. 2011) ............................................................24, 30, 50

*Kakawi Yachting, Inc. v. Marlow Marine Sales, Inc.,*
 2014 WL 12639973 (M.D. Fla. Oct. 28, 2014) ............................................... 47

*Liebman v. Metro. Life Ins. Co.,*
 708 Fed. Appx. 979 (11th Cir. 2017) ............................................................... 54

*Lindsey v. Ocwen Loan Servicing, LLC,*
 2011 WL 2550833 (N.D. Tex. June 27, 2011) ................................................. 28

*Malautea v. Suzuki Motor Co., Ltd.,*
 987 F.2d 1536 (11th Cir. 1993) ...................................................................51, 52

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

*Mars v. Macy's Fla. Stores, LLC*,
  2019 WL 9078707 (S.D. Fla. Oct. 2, 2019) ................................................... 45

*McCormick v. City of Fort Lauderdale*,
  333 F.3d 1234 (11th Cir. 2003) ..................................................................... 54

*Mee Indus. v. Dow Chemical Co.*,
  608 F.3d 1202 (11th Cir. 2010) ..................................................................... 54

*Miss. Chem. Corp. v. Dresser–Rand Co.*,
  287 F.3d 359 (5th Cir.2002) ......................................................................... 35

*Montage Grp., Ltd. v. Athle-Tech Comput. Sys., Inc.*,
  889 So.2d 180 (Fla. 2d DCA 2004) ............................................................... 50

*Moore v. Tractor Supply Co.*,
  352 F.Supp.2d 1268 (S.D. Fla. 2004) ............................................................ 53

*OFS Fitel, LLC v. Epstein, Becker and Green, P.C.*,
  549 F.3d 1344 (11th Cir. 2008) ..................................................................... 53

*Payne v. C.R. Bard, Inc.*,
  606 Fed. Appx. 940 (11th Cir. 2015) ............................................................ 32

*Pecarsky v. Galaxiworld.com Ltd.*,
  249 F.3d 167 (2d Cir. 2001) .......................................................................... 27

*Perez v. Wells Fargo N.A.*,
  774 F.3d 1329 (11th Cir. 2014) ..................................................................... 31

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
  507 U.S. 380 (1993) ................................................................... 31, 36, 38, 39

*Pleasant Valley Biofuels, LLC v. Sanchez-Medina, Gonzalez, Quesada, Lage,
  Crespo, Gomez & Machado LLP*,
  2014 WL 11881017 (S.D. Fla. June 26, 2014) .............................................. 35

*Polyglycoat Corp. v. Hirsch Distribs., Inc.*,
  442 So.2d 958 (Fla. 4th DCA 1983) ............................................................. 50

*Rigby v. Philip Morris USA, Inc.*,
  717 Fed. Appx. 834 (11th Cir. 2017) ............................................................ 45

6

*Rinieri v. News Syndicate Co.,*
      385 F.2d 818 (2d Cir.1967)............................................................................... 28

*Romero v. Drummond Co. Inc.,*
      552 F.3d 1303 (11th Cir. 2008)...................................................................... 43

*S.O.S. Res. Services, Inc. v. Bowers,*
      2015 WL 6735540 (S.D. Fla. Nov. 4, 2015)................................................. 45

*Sosa v. Airprint Sys., Inc.,*
      133 F.3d 1417 (11th Cir. 1998)....................................................10, 24, 28, 31

*St. Louis Condo. Ass'n, Inc. v. Rockhill Ins. Co.,*
      5 F.4th 1235 (11th Cir. 2021)........................................................24, 25, 30, 38

*Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., Ltd.,*
      320 F.3d 1213 (11th Cir. 2003)...................................................................... 35

*Taylor v. Mentor Worldwide LLC,*
      940 F.3d 582 (11th Cir. 2019)........................................................................ 10

*Thurmond v. Bayer Healthcare Pharm., Inc.,*
      649 Fed. Appx. 1003 (11th Cir. 2016)........................................................... 10

*U.S. v. Wright,*
      607 F.3d 708 (11th Cir. 2010).................................................................40, 50

*United States v. Certain Real Prop. Located at Route 1, Bryant, Ala.,*
      126 F.3d 1314 (11th Cir. 1997)...................................................................... 52

*Van T. Junkins & Assoc., Inc. v. U.S. Indus., Inc.,*
      736 F.2d  (11th Cir. 1984) ............................................................................. 54

*Wisconsin Carpenters Pension Fund, v. Jokipii Demolition LLC,*
      2007 WL 1308847 (E.D. Wis. May 2, 2007) ................................................ 27

*World Thrust Films Inc. v. Int'l Family Entm't, Inc.,*
      141 F.3d 1454  (11th Cir. 1995)..................................................................... 38

7

## Rules

Fed. R. Bankr. P. 7016(a) ................................................................ 23

Fed. R. Bankr. P. 8012 .................................................................... 1

Fed. R. Bankr. P. 8015(a)(7)(B)(i) .................................................. 59

Fed. R. Bankr. P. 8019 .................................................................... 1

Fed. R. Bankr. P. 9006(b) ........................................................... 31, 33

Fed. R. Civ. P. 6(b) ..................................................................... 31, 32

Fed. R. Civ. P. 16(b) ........................................ 14, 22, 23, 24, 26, 27, 31, 32

Fed. R. Civ. P. 26(a)(1) ..................................................................... 15

Fed. R. Civ. P. 37(c)(1) ............................................................. 20, 21, 22

Fed. R. Civ. P. 41 ............................................................................. 38

Fed. R. Civ. P. 55 ............................................................................. 27

Fed. R. Evid. 701 ........................................................................ 35, 36

COFFEY │ BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

## STATEMENT OF THE ISSUES PRESENTED AND
## APPLICABLE STANDARD OF REVIEW

In the underlying adversary proceeding, the Bankruptcy Court granted summary judgment in favor of Defendant-Appellee MDG Powerline Holdings, LLC ("MDG Powerline") after finding that Plaintiff-Appellant Seven Stars on the Hudson Corp. ("Appellant" or "Seven Stars") had failed to produce evidence to support the element of damages for any of its claims. *See* Appellant's Appendix ("SS App.") at 293-336 (the "Memorandum Opinion").[1]   In this appeal, Appellant pays little attention to the substance of the Bankruptcy Court's Memorandum Opinion – indeed, Appellant does not challenge any of the Court's substantive legal conclusions. Rather, Appellant's primary argument on appeal is that the Bankruptcy Court erred by denying Appellant's motion for an extension of the expert discovery deadlines (filed weeks after the expert disclosure deadline had already passed) contained in its Scheduling Order. Specifically, Appellant argues that the Bankruptcy Court's denial of its motion to extend the expert discovery deadline – after granting three prior extensions – was an abuse of discretion because, at the time that Appellant sought this relief, it was seeking "litigation funding" from a third

---

[1] For ease of reference, citations to Appellant's Appendix will be referred to throughout as "SS App. at ___" and Appellee's Supplemental Appendix will be referred to as "MDG App. at ___."

9

party to pay for an expert witness on damages. Appellant contends that, as a consequence of the Bankruptcy Court's order denying its request for an extension of the expert disclosure deadline, it was unable to prove its damages claims because it lacked a damages expert, resulting in the Bankruptcy Court's summary judgment ruling in favor of MDG Powerline.

While Appellant has raised other points of error in its Initial Brief (hereafter referred to as the "SS Brief"), all of its arguments ultimately concern the same issue: whether the Bankruptcy Court abused its discretion by declining to the extend the expert discovery deadlines in its Scheduling Order.

As the Eleventh Circuit has unambiguously held, a "district court's decision to enforce its pre-trial order will not be disturbed on appeal absent an abuse of discretion." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998). *See also Thurmond v. Bayer Healthcare Pharm., Inc.*, 649 Fed. Appx. 1003, 1004 (11th Cir. 2016) (denial of motion to extend discovery deadlines reviewed for abuse of discretion).

"A district court's evidentiary rulings…are reviewed only for a clear abuse of discretion and must be affirmed unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." *Taylor v. Mentor Worldwide LLC*, 940 F.3d 582, 591 (11th Cir. 2019). A district court's decision to strike or disregard a declaration under the sham affidavit rule is also

10

reviewed for an abuse of discretion. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1306 (11th Cir. 2016).

## STATEMENT OF THE CASE AND PROCEDURAL HISTORY

The relevant factual and procedural history was thoroughly described by the Bankruptcy Court in its Memorandum Opinion:

Appellant is a tenant operating a trampoline park within Xtreme Action Park, an entertainment facility in Fort Lauderdale owned by MDG Powerline.  SS App. at 294.   After filing a bankruptcy case under Chapter 11, Appellant brought an adversary proceeding on July 19, 2019, against MDG Powerline and co-Defendant XBK Management, LLC ("XBK"), alleging that the Landlord and XBK harmed Appellant's business, principally by removing signage and a registration desk from the lobby area of the facility.[2] *Id.* at 295-96.  In its Adversary Complaint (the "Complaint"), Appellant asserted claims for breach of the covenant of quiet enjoyment under its Lease with MDG Powerline, breach of the implied duty of good

_____

[2]  Appellant's Complaint contained numerous allegations against MDG Powerline that had nothing to do with the Lease and which could not give rise to any cause of action, such as complaints about food service (which was handled by XBK), complaints about the security cameras, complaints about the colors of the walls in the common areas and complaints about garbage pickup on the loading dock. SS App. at 296. However, Appellant's damages claims against MDG Powerline arose exclusively from the allegations that the Defendants improperly removed its signage and a registration desk in the lobby.

11

faith and fair dealing under the Lease, violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), and tortious interference. *Id.* at 300; *see also id.* at 29-42. MDG Powerline denied the claims in their entirety. *Id.* at 192-210.

**A. The Bankruptcy Court's Scheduling Orders and Appellant's Pursuit of a 'Litigation Funding Agreement' in Its Chapter 11 Case.**

On August 25, 2020, the Bankruptcy Court entered an Agreed Scheduling Order, under which the parties agreed to exchange expert witness summaries and reports (if any) by no later than February 5, 2021, and to complete expert discovery by March 15, 2021. *Id.* at 299; MDG App. at 1-4.

After Appellant amended its complaint, and after an unsuccessful mediation, the parties submitted an agreed proposed amended scheduling order, which the Bankruptcy Court adopted on March 17, 2021. SS App. at 301. Under this Amended Scheduling Order, the parties were required to submit their expert disclosures by April 6, 2021, and complete all expert discovery by May 14, 2021. MDG App. at 13-15.

Around the time that the parties submitted the proposed amendment to the Scheduling Order, Appellant sought approval in the Chapter 11 case of a proposed litigation funding agreement with a third party – funding which Appellant says was necessary to retain a damages expert. On January 28, 2021, Appellant filed a motion in the Chapter 11 case for approval of a term sheet with the litigation funder – a

motion which the Bankruptcy Court approved on February 26, 2021.  SS App. at 328.

On March 15, 2021, Appellant filed another motion in the adversary proceeding to modify *only* the fact discovery deadline in the Scheduling Order. *Id.* at 232-35. The Bankruptcy Court scheduled a hearing on Appellant's motion for April 7 – the day after the expert disclosure deadline had passed. MDG App. at 14.

On April 6 – the day when expert disclosures were due under the Scheduling Order in the adversary proceeding – Appellant filed another motion in the Chapter 11 case seeking court approval of the full litigation funding agreement.[3] SS App. at 328.

At the hearing on its March 15 motion, Appellant requested for the first time an extension of the expert deadlines in addition to the fact discovery deadline – a request opposed by MDG Powerline. *See* April 7, 2021, Hr'g Tr., MDG App. at 19-20. The Bankruptcy Court declined to modify the expert discovery deadlines because Appellant failed to raise the issue in its March 15 motion: "The motion before me today deals only with the fact discovery deadlines, so I am not going to entertain any request to extend any other deadlines at this point." *Id.* at 22.  Appellant's counsel

_____

[3] Appellant amended this motion on April 9, 2021.  SS App. at 328.

13

then told the Bankruptcy Court that Appellant would likely "make a further application for [extending] the expert discovery" – however, "if we can get the expert discovery done in the time frame set forth in the scheduling order, I have no problem with that." *Id.* at 23.  Following the hearing, the Bankruptcy Court entered an order extending only the fact discovery deadline through April 29, 2021.  *Id.* at 26-27.

On April 19, 2021, the Bankruptcy Court entered an order in the Chapter 11 case approving Appellant's litigation funding agreement. SS App. at 328.

Nine days later, on April 28, 2021, Appellant moved to modify the expert discovery deadlines in the adversary – but not the expert disclosure deadline, which had passed three weeks before.  MDG App. at 28-32. In this motion, Appellant stated that it had not yet retained an expert because it was "waiting for the approval of a litigation funding agreement that would give it the monetary resources to hire experts." *Id.*  However, Appellant's Motion did not expressly seek an extension of the expired deadline to exchange expert reports.  *Id.*  Nor did address the good cause standard for amending a scheduling order under Fed. R. Civ. P. 16(b). *Id.*

MDG Powerline opposed the motion on the grounds that Appellant had failed to establish (or even argue) that the inability to pay an expert (or the anticipation of future litigation funding) constituted good cause. *Id.* at 33-39.

At a hearing on Appellant's motion, Appellant asserted – for the first time – that its lack of funds to pay for an expert and its application for litigation funding constituted good cause to modify the scheduling order.  *See* SS App. at 269-70. As Appellant's counsel argued: "We cannot go forward and get an expert without funding. I mean, that is the bottom line." *Id.* at 269.  But when asked to identify any legal authority holding that a lack of funds for an expert constitutes good cause to modify a scheduling order, Appellant could identify none.  *Id.* at 276. Noting that Appellant provided "nothing" in the way of legal authority to support its position, the Bankruptcy Court correctly found that Appellant's inability to pay for an expert did not constitute good cause and denied the motion to extend the expert deadlines. *Id.* at 278; MDG App. at 60-61.

Ultimately, Appellant never identified any expert witness or provided an expert disclosure or report. SS App. at 326-29.

## B. Appellant's Failure to Disclose Any Damages Computations or Evidence

On July 4, 2020, Appellant served its first Initial Disclosures to Defendants pursuant to Fed. R. Civ. P. 26(a)(1).  With respect to damages, Appellant's disclosure did not provide a basis for damages or any calculations of damages, but instead stated: "See First Amended Complaint." SS App. at 302. On March 5, 2021, Appellant then served amended initial disclosures, which, in addressing damages, stated: "*See* Second Amended Complaint."  *Id.* On March 15, 2021, Appellant

15

further amended its initial disclosures, however its disclosures related to damages remained unchanged. *Id.* Then on April 9, 2021 – three days *after* the April 6, 2021, deadline for the parties to exchange expert witness summaries and reports – Appellant served yet another set of initial disclosures. But again, its damages disclosures stated only "*See* Second Amended Complaint." *Id.*; MDG App. at 88.

MDG Powerline served interrogatories requests seeking, among other things, Appellant's calculation of damages, as well as the methodology used to calculate damages and all evidence supporting damages. On March 25, 2021, Appellant served responses in which it complained that the discovery requests were "premature as it has not yet obtained an expert who will opine on the full spectrum of damages" – though expert disclosures were due two weeks later. MDG App. at 705-06. Appellant further asserted that it suffered a "loss of profits" but provided no calculation of damages. *Id.* at 706. The only specific evidence of damages cited by Appellant was its "profits and loss statements beginning in 2017."[4] *Id.*

---

[4] After the close of discovery, Appellant served two untimely (and contradictory) amended interrogatory responses that purportedly spoke to Appellant's damages claims. SS App. at 306. However, as the Bankruptcy Court noted, these amended responses contained "[n]o calculations, no mathematical formulas, no methods of computation, nor even any underlying factual basis for damages (other than pointing generally to its profit and loss statements." *Id.* at 306-07. The Bankruptcy Court's ultimate finding that these untimely interrogatory

On April 19, 2021, Defendants took the deposition of Appellant's corporate representative, Eddy Manzo-Berding. Though damages were designated as a deposition topic, Ms. Manzo-Berding could only testify that Appellant was seeking "lost profits" or "lost ticket sales," and she could not specifically testify as to what amount of damages Appellant was claiming to seek. SS App. at 307-08. Ms. Manzo-Berding also could not identify any out-of-pocket costs or other categories of damages. *Id.*

## C. Appellant's Untimely and Contradictory Declaration

Following the close of discovery, MDG Powerline filed a motion for summary judgment on all of Appellant's claims. MDG App. at 62-83. In the Motion, MDG Powerline argued that Appellant failed to put forward any admissible evidence in support of its claim for "lost profits" damages. *Id.* at 66-78. As demonstrated in the Motion, the only evidence of damages identified by Appellant was its profit and loss statements, but these reports failed to identify both revenue *and* expenses, as required to establish lost profits under Florida law, and thus failed to establish "lost profits" damages.[5] *Id.* at 67; *see also id.* at 666.

_____

responses failed to create a genuine issue of material fact related to damages has not been challenged in this appeal.

[5] As MDG Powerline argued below, the profit and loss statement also constituted inadmissible hearsay which could not be relied upon to defeat summary

17

In response to the Motion, Appellant attempted to assert a new theory of damages that was not pleaded in the Complaint – a new claim for "diminution of value" of Appellant's business. *Id.* at 642-661.  In support of this new argument, Appellant submitted a declaration from Ms. Manzo-Berding offering wholly conclusory evidence of these new damages.  *Id.* at 695-99.

MDG Powerline objected to Appellant's attempt to assert a new theory of recovery to avoid summary judgment, and it moved to strike Ms. Manzo-Berding's declaration as a sham, because it contradicted her prior deposition testimony, where Ms. Manzo-Berding was specifically asked to identify any other types of damages Appellant was seeking, and she identified none. *Id.* at 674-93; 662-69; *see also* SS App. at 307-08.

In its response to MDG Powerline's motion to strike, Appellant admitted that it only began investigating new "alternate" damages theories to avoid summary judgment: "[T]he information regarding valuation was determined ***after consultation with counsel and based on caselaw that referred to loss or diminution of business value as an alternate theory of damages***." MDG App. at 913 (emphasis added). Appellant further admitted that without its new "alternate" damages theories

judgment. MDG App. at 666.  However, the Bankruptcy Court did not reach this issue.

18

it could not survive summary judgment, because otherwise it would have no "ability to adequately prove its damages." *Id.* at 921. Appellant argued that its introduction of Ms. Manzo-Berding's untimely declaration was "substantially justified" because Appellant was seeking funding for an expert witness from a litigation funder, and that its late disclosure was "harmless." *Id.* at 919-22.

### D. The Bankruptcy Court's Memorandum Opinion Granting Summary Judgment and Striking the Sham Declaration.

On January 28, 2022, the Bankruptcy Court entered its Memorandum Opinion granting summary judgment in favor of MDG Powerline and co-Defendant XBK based on Appellant's failure to prove any damages for any of its claims, and striking Ms. Manzo-Berding's post-discovery declaration as a sham. SS App. at 293-336.

In its Opinion, the Bankruptcy Court specifically found that Appellant had presented no competent evidence of damages: The only evidence of damages cited by Appellant in response to the summary judgment motions was Ms. Manzo-Berding's declaration, which the Bankruptcy Court declined to consider, and which was only relevant to Appellant's newly asserted "diminution of value" theory – a damages theory foreclosed as a matter of law because Appellant's business was not completely destroyed. *Id.* at 319-20. As the Bankruptcy Court said: "[T]he Court cannot consider this new declaration, and there is no other competent evidence of

damages in the record to sustain Seven Stars' burden to show a genuine dispute of material fact." *Id*. at 322.

The Bankruptcy Court further held that Appellant was precluded from presenting any new damages calculations contained in Ms. Manzo-Berding's declaration as a sanction under Fed. R. Civ. P. 37(c)(1), because of its failure to provide any damages calculations in its initial disclosures or discovery responses, or in the deposition testimony of Ms. Manzo-Berding, its corporate representative. *Id*. at 322-26.

The Bankruptcy Court then addressed Appellant's failure to disclose a damages expert within the court-ordered deadlines and reiterated its finding that Appellant had failed to establish good cause to modify the Scheduling Order once more, as required under Rule 16(b). *Id*. at 328 n.176 & 333-34. The Bankruptcy Court summed up Appellant's position as follows: "Essentially Seven Stars argues that it should have been excused from compliance with the Court's scheduling order because it did not have the financial resources to hire an expert, and therefore it could just ignore the expert disclosure deadline until after it had its litigation financing lined up, even if that occurred (as it did here) after the expert disclosure deadline had passed." *Id*. at 332-33. The Bankruptcy Court rejected Appellant's arguments, holding: "Seven Stars' failure to timely disclose any experts – or to timely provide any computation of damages – was neither substantially justified nor harmless." *Id*.

at 329.  The Bankruptcy Court noted that "Seven Stars knew about the deadline and knew what it had to do to secure the funding and the timing of those efforts. All Seven Stars had to do was file a timely motion seeking to extend the expert disclosure deadline. It never did so." *Id.*

Finally, as discussed above, the Bankruptcy Court determined that the declaration of Ms. Manzo-Berding was a "sham declaration," because it attempted to advance damages that Appellant never disclosed in discovery and which Ms. Manzo-Berding failed to identify or disclose at deposition, despite specific questioning from Defendants. *Id.* at 330-35.  Accordingly, the Bankruptcy Court declined to consider the declaration at summary judgment. *Id.*

Based on its findings in the Memorandum Opinion, the Bankruptcy Court granted summary judgment and entered Final Judgment in favor of MDG Powerline and XBK. *Id.* at 289-90. This appeal followed. *Id.* at 281-84.

## SUMMARY OF THE ARGUMENT

The Bankruptcy Court's Final Judgment in favor of MDG Powerline should be affirmed in all respects.

The Bankruptcy Court correctly held that Appellant failed to put forward any competent evidence to support its claims for damages. Significantly, Appellant **does**

21

**not dispute** that the evidence considered by the Bankruptcy Court was insufficient to establish damages.  Rather, Appellant incorrectly argues that the Bankruptcy Court abused its discretion by declining to extend the expert disclosure deadline. However, as the Bankruptcy Court correctly held, Appellant did not even attempt to establish good cause to modify the scheduling order, as required under Fed. R. Civ. P. 16(b).  And to the extent that Appellant's request to extend the already-expired expert disclosure deadline may be allowed upon a showing of "excusable neglect" (a position rejected by the Eleventh Circuit), Appellant failed to raise this issue below, and it cannot show excusable neglect in any event.  Under any analysis, the Bankruptcy Court did not abuse its discretion by denying Appellant's motion to extend the expert discovery deadlines.  As the Eleventh Circuit has consistently held, it is not an abuse of discretion for a court to enforce its own scheduling order.

Appellant's contentions that the Bankruptcy Court improperly struck its expert or dismissed this action as a discovery sanction are entirely misplaced, and misstate the record. The Bankruptcy Court did not "strike" Appellant's expert, because Appellant never identified an expert in the first place.  And the Bankruptcy Court did not strike Appellant's claims under Rule 37 – it entered summary judgment against Appellant based on its failure to put forward competent evidence of damages.

Finally, the Bankruptcy Court did not abuse its discretion by excluding the sham declaration of Appellant's principal, filed in support of new, unpleaded damages theories that Appellant raised for the first time post-discovery in an effort to avoid summary judgment.

## ARGUMENT

### I.   Appellant Failed to Show Good Cause to Amend the Scheduling Order.

Appellant's principal argument on appeal is that the Bankruptcy Court abused its discretion in denying its *untimely* motion to extend the *already-expired* deadline for expert disclosures contained in the Bankruptcy Court's Scheduling Order.  SS Brief at 30-34.  The sole basis for this argument is Appellant's insistence that its failure to hire an expert in time to meet the Bankruptcy Court's deadline due to insufficient funds, and its pursuit of third-party litigation funding to pay for a damages, expert somehow constituted good cause to amend the scheduling order under Fed. R. Civ. P. 16(b).[6] *Id.* Notably, Appellant cited no authority to support this argument before the Bankruptcy Court – and the scant authority Appellant now cites in its Brief is far afield and obviously inapplicable.

_____

[6] Rule 16(b) applied in the adversary proceeding pursuant to Fed. R. of Bankr. P. 7016(a).

COFFEY │ BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

It is well established that a scheduling order "may be modified only upon a showing of good cause." *Sosa*, 133 F.3d at 1418 (citing Rule 16(b)). "This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension…If a party was not diligent, the good cause inquiry should end." *Id.* (internal citations omitted). As discussed below, Appellant failed to show good cause here.

However, even if Appellant had demonstrated good cause – which it plainly did not – the Bankruptcy Court still would have been within its discretion to deny the motion to extend the discovery deadlines. The Eleventh Circuit has "often held that a district court's decision to hold litigants to the clear terms of its scheduling orders is not an abuse of discretion." *St. Louis Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, 5 F.4th 1235, 1243 (11th Cir. 2021) (quoting *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1307 (11th Cir. 2011)). *See also Bearint ex rel. Bearint v. Dorell Juvenile Grp., Inc.*, 389 F.3d 1339, 1349 (11th Cir. 2004) ("Given the wide latitude the district court has to exclude untimely submissions, we cannot say that it abused its discretion to exclude this report"). Significantly, the Eleventh Circuit has expressly held that a court "is under no obligation" to grant an extension of a discovery deadline even where the moving party has shown good cause to do so. *Josendis*, 662 F.3d at 1307. And where the court has previously extended deadlines at a party's request (as here), the court's denial of a subsequent motion to extend

deadlines is particularly appropriate and is not an abuse of discretion. *St. Louis Condo. Ass'n*, 5 F.4th at 1244 (affirming trial court's striking of late-disclosed expert after magistrate previously extended discovery deadlines). Under any analysis, the Bankruptcy Court did not abuse its discretion in denying Appellant's untimely and unsupported motion to amend the Scheduling Order.

As discussed above, the Bankruptcy Court's Amended Scheduling Order required the parties to exchange expert disclosures by April 6, 2021. MDG App. at 13-15. On March 15, 2021, Appellant filed a motion to modify *only* the fact discovery deadline in the Scheduling Order. SS App. at 232-35. The Bankruptcy Court scheduled a hearing on Appellant's motion for April 7 (the day after the expert disclosure deadline had passed) where, for the first time, Appellant requested an extension of the expert discovery deadlines as well – a request opposed by MDG Powerline. MDG App. at 19-20. The Bankruptcy Court declined to modify the expert discovery deadlines because Appellant failed to raise the issue in its March 15 motion: "The motion before me today deals only with the fact discovery deadlines, so I am not going to entertain any request to extend any other deadlines at this point." *Id.* at 22. Appellant's counsel then told the Bankruptcy Court that Appellant would likely "make a further application for [extending] the expert discovery" – however, "if we can get the expert discovery done in the time frame set forth in the scheduling order, I have no problem with that." *Id.* at 23.

25

Appellant did not move to modify the expert discovery deadlines until April 28, 2021 – three weeks *after* the April 6 expert disclosure deadline had passed. *Id.* at 28-32.   Notably, the motion makes no reference to the expired deadline to exchange expert reports. *Id.* More significantly, Appellant's motion did not even discuss the good cause standard under Rule 16(b), or attempt to argue how Appellant had met it.[7] *Id.* Appellant's only substantive argument was that it had been "waiting for the approval of a litigation funding agreement that would give it the monetary resources to hire experts." *Id.*

MDG Powerline opposed the motion on the grounds that Appellant had failed to establish (or even argue) that the inability to pay an expert (or the anticipation of future litigation funding) constituted good cause to modify a scheduling order under Rule 16(b). *Id.* at 33-39.   Appellant then submitted a reply that, like its motion, simply ignored the good cause standard under Rule 16(b). *Id.* at 51-54.

At a hearing on Appellant's motion on May 12, 2021, Appellant asserted – for the first time – that its lack of funds to pay for an expert and its application for

---

[7] As the Bankruptcy Court noted in its Memorandum Opinion, Appellant did not assert "good cause" to extend the expert discovery deadline; rather "**it simply ignored this scheduling order deadline altogether**."   SS App. at 328 n.176 (emphasis added).   Surely the Bankruptcy Court did not abuse its discretion by declining to extend the discovery deadlines under these circumstances.

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

litigation funding constituted good cause to modify the scheduling order.  SS App. at 269-70. As Appellant's counsel argued: "We cannot go forward and get an expert without funding. I mean, that is the bottom line." *Id.* at 269.  But when asked to identify any legal authority holding that a lack of funds for an expert constitutes good cause to modify a scheduling order, Appellant could identify none.  *Id.* at 276. Noting that Appellant provided "nothing" in the way of legal authority to support its position, the Bankruptcy Court correctly found that Appellant's inability to pay for an expert did not constitute good cause to extend the expert discovery deadlines in the Scheduling Order. *Id.* at 278; MDG App. at 60-61.

On appeal, Appellant simply makes the same excuses that it raised unsuccessfully before the Bankruptcy Court, and again fails to identify any applicable legal authority to support its position.  Instead, Appellant cites three inapposite out-of-circuit cases, all of which merely hold that the failure to obtain *counsel* because of lack of funds may be good cause to vacate a ***default judgment*** against a ***defendant*** under Fed. R. Civ. P. 55.  *See* SS Brief at 33 (citing *Allen Russell Pub., Inc. v. Levy*, 109 F.R.D. 315 (N.D. Ill. 1985), *Wisconsin Carpenters Pension Fund, v. Jokipii Demolition LLC*, 2007 WL 1308847 (E.D. Wis. May 2, 2007) and *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167 (2d Cir. 2001)).  None of these cases holds that a ***plaintiff's*** lack of funds to hire an expert may constitute good cause to modify a scheduling order under Rule 16(b).  To the contrary, "[t]he desire

27

to limit litigation expenses and conserve resources ***does not*** justify a delay." *In re Treco*, 00-8137, 2001 WL 1566701, at *9 (Bankr. S.D.N.Y. Dec. 10, 2001) (entering default against defendant that failed to file a timely answer to complaint because it was in liquidation and sought to avoid "piecemeal litigation") (emphasis added); *see also Rinieri v. News Syndicate Co.,* 385 F.2d 818, 823 (2d Cir.1967) ("Lack of funding does not permit a party to decide *ex parte* that [it] is justified in not prosecuting [the] suit and is free to ignore the rules of the court") (internal citation omitted). Similarly, in *Lindsey v. Ocwen Loan Servicing, LLC*, 2011 WL 2550833 (N.D. Tex. June 27, 2011), the court held that a plaintiff's inability to pay *its counsel* did not constitute "good cause" to modify a scheduling order. *Id.* at *4. If a plaintiff's inability to pay its own counsel is not good cause, then surely the inability to pay an expert is not.

Appellant's claim on appeal that it "acted diligently" to meet the Bankruptcy Court's deadlines is belied by the record – and misunderstands Rule 16. As evidence of its purported diligence, Appellant highlights that it first moved to extend the discovery deadline – *only* the fact discovery deadline – on March 15, 2021, before the discovery deadlines had lapsed, and again on April 7 and April 28. SS Brief at 31. This misses the point. The issue is not whether Appellant was diligent in *filing its motions*, but whether Appellant was diligent in attempting to actually meet the deadlines in the Scheduling Order. *Sosa*, 133 F.3d at 1418. Appellant has not – and

cannot – argued that it diligently attempted to meet the expert disclosure deadline;

to the contrary, Appellant has conceded throughout the litigation that it did not even

*attempt* to meet this deadline, because it did not have the funds to retain an expert to

prepare a report. *See, e.g.,* MDG App. at 30 ("Plaintiff was waiting for the approval

of a litigation funding agreement that would give it the monetary resources to hire

experts"); *id.* at 52 (stating that Appellant's position that it did not want to "incur[]

the great expense" of hiring an expert when Defendants' motions to dismiss were

pending).

Nevertheless, the Bankruptcy Court correctly found that Appellant did *not*

expressly move to extend the expert disclosure deadline until April 28 – more than

three weeks after the deadline had expired. As the Bankruptcy Court stated in its

Memorandum Opinion: "Seven Stars never took any action to pre-emptively extend

the April 6, 2021, expert disclosure deadline, even though it knew 'from the

beginning' that it would need expert testimony and knew that it needed litigation

funding to pay for an expert." SS App. at 328.  Appellant was dilatory in complying

with the Scheduling Order *and* in seeking to modify that Order, as the Bankruptcy

Court correctly found.

Ultimately, Appellant's arguments fail to establish an abuse of discretion by

the Bankruptcy Court in denying its motion to extend the expert discovery deadline.

"[A] district court's decision to hold litigants to the clear terms of its scheduling

orders is not an abuse of discretion." *St. Louis Condo. Ass'n*, 5 F.4th at 1243.  After repeatedly extending the fact and discovery deadlines at Appellant's request, *see* MDG App. at 5-15; 26-32; 60-61, the Bankruptcy Court's refusal to extend the deadline yet again was not an abuse of discretion. *St. Louis Condo. Ass'n*, 5 F.4th at 1244.  Finally, even if Appellant had established good cause under Rule 16(b) to extend the expert disclosure deadline, the Bankruptcy Court was "under no obligation" to grant the extension, and its refusal to do so was not an abuse of discretion. *Josendis*, 662 F.3d at 1307.

Appellant's arguments are meritless, and the Bankruptcy Court's Order denying Appellant's motion to extend the expert disclosure deadline (MDG App. at 60-61) should be affirmed.

## II.    The 'Excusable Neglect' Standard Is Not Applicable – and It Was Not Raised Before the Bankruptcy Court.

Appellant next argues that the Bankruptcy Court erred by failing to determine whether Appellant's failure to meet the deadlines in the Scheduling Order was a result of "excusable neglect." SS Brief at 34-38.  This argument fails for multiple reasons: (1) it is legally incorrect, (2) Appellant failed to raise this issue below and thus waived it, and (3) Appellant cannot establish "excusable neglect" in any event.

### A. 'Excusable Neglect' Does Not Apply

Appellant asserts on appeal that its motion to modify the Scheduling Order was governed by Fed. R. Bankr. P. 9006(b) because the expert disclosure deadline had already passed, and the Bankruptcy Court was therefore required to determine if Appellant's failure to meet that deadline was a result of excusable neglect. SS Brief at 34-38. Appellant's argument is misplaced, as the Eleventh Circuit has repeatedly *rejected* the application of the "excusable neglect" standard to a party's failure to comply with a scheduling order.

In *Sosa*, the Eleventh Circuit expressly held that the "excusable neglect" standard for motions to extend expired court deadlines under Fed. R. Civ. P. 6(b) (analogous to Fed. R. Bankr. P. 9006(b))[8] is *not* applicable to a motion to modify a scheduling order, which, as discussed above, is governed instead by Fed. R. Civ. P. 16(b). *Sosa*, 133 F.3d at 1418 n.2 ("when a motion to amend is filed after a scheduling order deadline, Rule 16 is the proper guide for determining whether a party's delay may be excused"). As the Eleventh Circuit further explained in *Perez v. Wells Fargo N.A.*, 774 F.3d 1329 (11th Cir. 2014): "Rule 6(b)(1)(B) applies generally, when a more precise rule does not govern the situation." *Id.* at 1338 n.8.

---

[8] *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993) (Bankruptcy Rule 9006(b) "was patterned after Rule 6(b)" of the Federal Rules of Civil Procedure).

31

*See also Destra v. Demings*, 725 Fed. Appx. 855, 859 (11th Cir. 2018) (noting that "[i]n *Sosa*, we rejected the argument that the excusable-neglect standard in Rule 6(b) governs such extensions").[9]

Thus, as the Eleventh Circuit has unambiguously held, the excusable neglect standard is not applicable to a motion to modify a scheduling order. Such motions are governed solely by Fed. R. Civ. P. 16(b). Appellant's argument fails for this reason alone.

**B. Appellant Failed to Raise This Argument Below**

Appellant's argument fails for the additional reason that it waived this issue by failing to raise it before the Bankruptcy Court.

Nowhere in its motion to extend the expert discovery deadlines or its reply did Appellant argue that the excusable neglect standard applies, or that it could meet this test. *See* MDG App. at 28-31; 51-54. Nor did Appellant raise this argument at the May 12, 2021, hearing on its motion. *See* SS App. at 263-80. As the Bankruptcy

---

[9] In its Brief, Appellant relies on *Payne v. C.R. Bard, Inc.*, 606 Fed. Appx. 940 (11th Cir. 2015), an unpublished opinion in which the Circuit Court appears to apply both Rule 16(b)'s "good cause" standard and Rule 6(b)'s "excusable neglect" standard in reviewing an order on a motion to amend an expired deadline in a scheduling order. *Id.* at 943-44. However, this unpublished opinion is "not controlling authority," *Bonilla v. Baker Concrete Const, Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007), and to the extent that *Payne* conflicts with *Sosa* and *Perez*, this binding precedent obviously controls.

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

Court noted in its Memorandum Opinion: "Seven Stars did not seek in its motion – even belatedly under the 'excusable neglect' standard of Federal Rule of Bankruptcy Procedure 9006(b)(1) – to extend the already-lapsed expert disclosure deadline." SS App. at 309.  Having abandoned this issue, Appellant cannot now raise it for the first time in this appeal.

The Eleven Circuit "repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered" on appeal. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004). *See also Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("the failure to make arguments and cite authorities in support of an issue waives it"). This rule applies with equal force to appeals from bankruptcy court. *In re ATM Fin. Services, LLC*, 517 Fed. Appx. 840, 841 (11th Cir. 2013).

Having failed to raise excusable neglect before the Bankruptcy Court, Appellant has waived this issue, and it cannot raise it now for the first time on appeal. *Access Now*, 385 F.3d at 1331; *Hamilton*, 680 F.3d at 1319.  Obviously, the Bankruptcy Court did not abuse its discretion in failing to address an issue that Appellant failed to raise before that court.

## C. Even If Appellant Had Preserved This Issue, It Cannot Demonstrate Excusable Neglect

Appellant now claims for the first time in this appeal that its conduct satisfied the excusable neglect standard as articulated by the Supreme Court in *Pioneer*. Specifically, Appellant argues (1) that there is no evidence of strategic delay or willful contempt and (2) there is no evidence of prejudice to MDG Powerline.  SS Brief at 36-37.  Appellant is wrong on both counts.

The notion that Appellant did not engage in strategic delay borders on the absurd.  Appellant repeatedly admitted that it did *nothing* to advance its damages theory – and willfully and deliberately ignored both the Bankruptcy Court's Scheduling Order and its discovery obligations under Rule 26 – because it lacked the funds to pursue its claims and was waiting to see if it would obtain litigation funding.  When Appellant filed its motion to extend the expert discovery deadlines, nearly two years after filing this action, it stated that it was still "***in the process of finalizing a decision*** on experts and once retained, the expert will need the sixty days to investigate and prepare a report and for expert depositions to take place." MDG App. at 30 (emphasis added). Thus, after nearly two years, Appellant had not specified any damages or even *identified* an expert or made any attempt to prepare an expert to provide an expert opinion.  This was not inadvertent delay – this was a willful and deliberate strategy to ignore the Scheduling Order until Appellant could secure the funds to prosecute its case.

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

Appellant's argument – indeed, its entire appeal – appears to be based on the erroneous assumption that an expert witness was *required* to prove its lost profits theory of damages (the only category of damages Appellant asserted or disclosed). *See, e.g.,* SS Brief at 55 ("damages could only be proven by expert testimony"). This is flatly incorrect. A business owner or officer may in fact provide lay opinion testimony as to the anticipated future profits of a business without qualifying as an expert. *See* Fed. R. Evid. 701 (commentary). *See also Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., Ltd.*, 320 F.3d 1213, 1223 (11th Cir. 2003) (identifying testimony on lost profits by company officers as "of a type traditionally and properly considered lay witness testimony" (citing *Miss. Chem. Corp. v. Dresser–Rand Co.,* 287 F.3d 359, 362 (5th Cir.2002))); *Pleasant Valley Biofuels, LLC v. Sanchez-Medina, Gonzalez, Quesada, Lage, Crespo, Gomez & Machado LLP*, 2014 WL 11881017, at \*3 (S.D. Fla. June 26, 2014) ("Pleasant Valley's fact witnesses may testify to Pleasant Valley's projected profits as long as that testimony is based on the witnesses' own perceptions and otherwise satisfies the prerequisites of Rule 701"). In other words, Appellant could have proffered lay witness testimony on lost profits without hiring an expert (assuming it could have identified a corporate

officer with sufficient knowledge of Appellant's business to satisfy Rule 701).[10] As the Bankruptcy Court noted, Appellant "boxed itself into a corner" by "relying exclusively on expert testimony to prove damages" though an expert was not legally required to sustain its claim for lost profits. SS App. at 326.

This is significant because the Eleventh Circuit has held that an "error based on a misunderstanding of the law was an insufficient basis for excusing a failure to comply with a deadline" and does not constitute excusable neglect. *Advanced Estimating Sys., Inc. v. Riney*, 130 F.3d 996, 998 (11th Cir. 1997).[11]  Appellant's flawed litigation strategy and its mistaken assumption that an expert witness was

---

[10] Appellant's president, Eddy Manzo-Berding, testified at deposition that she could not estimate the value of Appellant's "lost ticket sales" MDG App. at 143, and that, while she was responsible for Plaintiff's management and marketing, her husband, Jens Berding, managed "the financials of the park." *Id*. at 125. Thus, Ms. Manzo-Berding, by her own admission, was unqualified to testify as to lost profits under Rule 701. Meanwhile, Jens Berding testified that he was not providing any testimony or opinion as to Appellant's alleged lost profits ("I was told my opinion is irrelevant") and said that Appellant would be relying solely on expert testimony to establish damages – though Appellant ultimately failed to identify an expert. *Id*. at 400.

[11] In *Advanced Estimating*, the Eleventh Circuit distinguished *Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848 (11th Cir. 1996), cited by Appellant (SS Brief at 35, 37), because that case concerned a "mistake of fact" – a miscommunication over whether a message was delivered that caused a party to miss a deadline – as opposed to a "mistake of law." *Advanced Estimating*, 130 F.3d at 999.  Appellant has not argued that a "mistake of fact" caused it to miss the expert disclosure deadline. *Cheney* is plainly not applicable here.

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

required to prove lost profits damages cannot constitute "excusable neglect" as a matter of law. *Id.*

Next, Appellant asserts that its failure to designate a damages expert under the Scheduling Order after two years of litigation did not prejudice MDG Powerline, and incorrectly claims that the "Bankruptcy Court...did not find that [MDG Powerline] would be prejudiced by a short extension of the expert deadline."[12] SS Brief at 37. This misstates the record. In fact, the Bankruptcy Court *did* find that MDG Powerline was prejudiced by Appellant's failure to meet the expert deadline or properly disclose its damages in discovery. SS App. at 329 & n.185 (quoting *Bowe v. Pub. Storage*, 106 F.Supp.3d 1252, 1260 (S.D. Fla. 2015) ("Prejudice generally occurs when late disclosure deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or witnesses in question")). Appellant's failure to timely identify an expert – and its failure to even *disclose* or identify any alleged damages before retaining an expert, ignoring the requirements of Rule 26 – effectively deprived MDG Powerline from taking any discovery on damages for nearly two years of litigation, and clearly prejudiced MDG Powerline. Moreover, Appellant's failure to comply with the Scheduling Order

---

[12] Appellant's assertion that only a "short" extension of the Scheduling Order would be necessary under these circumstances is, frankly, not credible.

(after three prior discovery extensions) obviously had a negative "impact on efficient court administration." *Pioneer*, 507 U.S. at 385. Appellant cannot establish excusable neglect based on these factors.

Ultimately, Appellant's attempt to argue excusable neglect is futile, because it failed to raise this issue before the Bankruptcy Court. *Hamilton*, 680 F.3d 1319 ("the failure to make arguments and cite authorities in support of an issue waives it"). The Bankruptcy Court did not abuse its discretion by failing to address an excusable neglect argument that Appellant did not even raise in the court below.[13] This argument should be rejected.

### III.   The Bankruptcy Court Did Not Err in Finding That Appellant's Discovery Failures Violated Rule 37(c)(1)

In its Memorandum Opinion, the Bankruptcy Court found that Appellant not only failed to meet its burden to present evidence of damages in response to

---

[13] Appellant incorrectly asserts that the Bankruptcy Court's discretion was "limited" because the Court's order "result[ed] in a dismissal," citing *World Thrust Films Inc. v. Int'l Family Entm't, Inc.*, 141 F.3d 1454 (11th Cir. 1995). SS Brief at 36. This, again, is simply wrong. *World Thrust Films* concerns a *dismissal* of a complaint under Fed. R. Civ. P. 41 based on the plaintiff's failure to comply with a local rule. *World Thrust Films*, 141 F.3d at 1456. Here, Appellant's complaint was *not* dismissed; its claims failed on the merits at summary judgment. The Bankruptcy Court's denial of Appellant's motion to extend the expert discovery deadline was plainly within its discretion. *St. Louis Condo. Ass'n*, 5 F.4th at 1243 ("a district court's decision to hold litigants to the clear terms of its scheduling orders is not an abuse of discretion").

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

Defendants' motions for summary judgment, but also that Appellant's failure to identify and calculate its damages in its Rule 26 disclosures and discovery responses, and its failure to timely identify any expert witness, violated Rule 37(c)(1). SS App. at 321-30. Appellant now challenges these findings on appeal, but in the process it mischaracterizes the Bankruptcy Court's Order and confuses unrelated issues (as it did in the court below). No matter: Appellant's arguments on appeal are baseless.

First, Appellant broadly asserts that the Bankruptcy Court "rul[ed] that Appellant could not offer any evidence on the issue of damages because of its inability to provide damage calculations during discovery," and that this "constituted an abuse of discretion." SS Brief at 38. This is **_not_** what the Bankruptcy Court ruled. Rather, the Bankruptcy Court found – correctly – that Appellant *failed* to offer competent evidence of damages. In fact, Appellant *did* attempt to offer damages evidence in opposition to MDG Powerline's summary judgment motion – namely, its profit and loss statements for the years 2017 to 2019. *See* MDG App. at 646-47, 655-56; *see also id.* at 599-637. However, the Bankruptcy Court correctly found that this evidence by itself "does not show any evidence of damages." SS App. at 324; *id.* at 305. This is because "Florida law requires proof of lost profits (income minus

expenses), not just lost revenue."[14] *Id.* at 319 & n.138 (citing *Del Monte Fresh Produce Co. v. Net Results, Inc.*, 77 So. 3d 667, 673 n.11 (Fla. 3d DCA 2011)). The Bankruptcy Court did not preclude Appellant from offering damages evidence; it simply found that the evidence Appellant offered failed to establish a genuine issue of material fact on damages, and correctly granted summary judgment on this basis. SS App. at 322.

Appellant also appears to argue that the Bankruptcy Court "excluded" its unidentified and undisclosed expert as a sanction under Rule 37(c)(1). SS Brief at 38-46. But, once again, Appellant misconstrues the Bankruptcy Court's Order. The Bankruptcy Court did ***not*** strike or exclude any expert witness of Appellant as a sanction because ***there was no expert witness to exclude***. As the Bankruptcy Court noted in its Memorandum Opinion: "Nowhere in its interrogatory answers did Seven Stars identify any expert witness that it would use to support its damages claims." SS App. at 324. Nor did Appellant disclose an expert witness as required under Rule 26(a)(2). *Id.* at 326. Accordingly, the Bankruptcy Court held: "[W]ith the deadline

---

[14] Significantly, Appellant has not challenged on appeal the Bankruptcy Court's ruling that Appellant had to prove lost profits ("income minus expenses"), not just lost revenues, under Florida law, or its ruling that the profit and loss statements failed to prove these elements. *U.S. v. Wright*, 607 F.3d 708, 713 (11th Cir. 2010) (issues not raised on appeal are abandoned).

40

to make expert disclosures having passed without Seven Stars having disclosed any experts or submitted any expert reports, there is no expert testimony as to damages in the record to support any quantum of damages here." *Id.* at 330.

It is important to understand the context of the Bankruptcy Court's discussion of Rule 37(c)(1) in the Memorandum Opinion with respect to expert testimony. In its motion for sanctions, MDG Powerline did ***not*** seek to exclude Appellant's nonexistent expert witness – because there was no witness testimony to exclude. *See* MDG App. at 674-92.  Again, Appellant *never identified* an expert witness or provided an expert report at any time during the discovery period, so there was no undisclosed witness or information to contest under Rule 37. *See* SS App. at 324, 326. Rather, MDG Powerline moved for sanctions ***only*** to exclude the new, untimely, previously undisclosed evidence that Appellant attempted to introduce to support a new, undisclosed damages theory it advanced at the eleventh hour, after Defendants moved for summary judgment – and after recognizing that it could not prove its lost profits damages theory based on the evidence it did present. MDG App. at 674-92.

Nevertheless, Appellant used its response to MDG Powerline's sanctions motion to repeat its argument that the Bankruptcy Court should have extended the expert disclosure deadline, and attempted to reframe MDG Powerline's sanctions motion around its own "failure to make sufficient expert disclosures" (though in fact

41

it made no disclosures at all) instead of its attempt to assert an entirely new damages theory to avoid summary judgment. MDG App. at 919. It was in response to this straw man argument that the Bankruptcy Court discussed in its Memorandum Opinion whether Appellant's failure to identify an expert witness within the court-ordered deadline – and its failure to disclose any damages in discovery – was substantially justified or harmless under Rule 37(c)(1). SS App. at 326-30.

In effect, the Bankruptcy Court found that, even if Rule 37(c)(1) were applicable to the expert issue, Appellant was subject to sanction because its failure to submit a timely expert report (and its failure to identify and calculate its damages in its Rule 26 disclosures and discovery responses) were not substantially justified or harmless. *Id.* at 327-30; *see also id.* at 323 n.156 (noting that "the exclusion of non-disclosed evidence is automatic and mandatory under 37(c)(1) unless nondisclosure was justified or harmless"). This was not error.

On Appeal, Appellant now claims that the Bankruptcy Court failed to specifically reference what Appellant calls the "guiding factors" (gleaned from various non-controlling district court cases) for determining whether a party's discovery violations are substantially justified or harmless. SS Brief at 40-45. The Eleventh Circuit has identified the factors a court should consider when addressing discovery violations under Rule 37(c)(1): "Factors relevant to the determination of whether exclusion of a witness is warranted include the explanation for the failure

to disclose the witness, the importance of the testimony, and the prejudice to the opposing party if the witness had been allowed to testify." *Izquierdo v. Certain Underwriters at Lloyd's London*, 2021 WL 3197008, at *4 (11th Cir. July 29, 2021) (citing *Romero v. Drummond Co. Inc.*, 552 F.3d 1303, 1321 (11th Cir. 2008)).[15] Contrary to Appellant's assertions, the Bankruptcy Court clearly considered these factors.

There can be no dispute that the Bankruptcy Court considered Appellant's explanation for its failure to identify an expert witness – its lack of funds and its efforts to obtain litigation funding – and deemed these to be insufficient to find that Appellant's failure was substantially justified. SS App. at 329. Indeed, the Court found that "this argument actually establishes that its failure to timely make these disclosures was *not* substantially justified. Seven Stars knew about the deadline and knew what it had to do to secure the funding and the timing of those efforts." *Id.* While Appellant may be displeased with the Court's conclusion, SS Brief at 40, this

---

[15] As the Eleventh Circuit has held, the reason for the delay and the consequential prejudice to the other party may outweigh the importance of the evidence in weighing these factors. *Romero*, 552 F.3d at 1321 (citing *Bearint*, 389 F.3d at 1353). But again, the Bankruptcy Court was not required to address these factors at all because it did not "exclude" an expert witness under Rule 37, and its denial of Appellant's motion to extend the discovery deadline was governed solely by Rule 16(b).

was not an abuse of discretion: Appellant cites no authority holding that a plaintiff's lack of funds constitutes a substantial justification for its failure to identify a witness and thus prevent the exclusion of untimely (or nonexistent) evidence under Rule 37(c)(1).

The Bankruptcy Court also recognized the potential significance of this unknown, hypothetical expert testimony – but nevertheless found Appellant's failures were not justified.  As the Bankruptcy Court stated in its Memorandum Opinion:

> "Even if MDG breached its contract with Seven Stars, and even if Xtreme and MDG violated Seven Stars' rights under FDUTPA or tortiously interfered with Seven Stars' contractual rights, the defendants still have rights to require the plaintiff to play by the same rules in litigation…If one party fails to play by these rules, that is fundamentally unfair to the other parties. This is particularly so where Seven Stars could have timely moved to extend the expert disclosure deadline while it was seeking approval for its litigation funding."

SS App. at 329-30.  The Bankruptcy Court clearly considered this factor in finding that Appellant's discovery failures were not substantially justified. This was not an abuse of discretion.

There can be no doubt that the Bankruptcy Court considered the prejudice to MDG Powerline resulting from Seven Stars' discovery failures.  As the Bankruptcy Court expressly stated, "a failure to disclose is harmless where there is no prejudice to the opposing party."  *Id.* at 327.  The Court then expressly found that "Seven

44

Stars' failure to timely disclose any experts…was neither substantially justified nor harmless," and further found that MDG Powerline was prejudiced because it was deprived of "a meaningful opportunity to perform discovery and depositions related to the documents or witnesses in question." *Id*. at 329 & n.185.  This was not error: To the contrary, the failure to disclose evidence until summary judgment is ***not*** harmless and is sanctionable, as multiple courts have held.  *See, e.g., Rigby v. Philip Morris USA, Inc.*, 717 Fed. Appx. 834, 835-36 (11th Cir. 2017) (failure to disclose witnesses until after summary judgment motion was filed was not harmless); *Bowe*, 106 F.Supp.3d at 1260.

As but one example, in *Mars v. Macy's Fla. Stores, LLC*, 2019 WL 9078707 (S.D. Fla. Oct. 2, 2019), the court found that the defendant's late disclosure of the *names* of two experts (without providing reports containing their expert opinions) was prejudicial because the opposing party would be required to pursue additional, untimely discovery on the late-disclosed expert witnesses. *Id*. at *3.  Here, Appellant never even disclosed the *name* of a potential expert witness – it disclosed nothing at all. The prejudice to MDG Powerline from some future disclosure of an unidentified expert after the close of discovery is obvious and palpable, and the Bankruptcy Court did not err in reaching this conclusion. *See also S.O.S. Res. Services, Inc. v. Bowers*, 2015 WL 6735540, at *3 (S.D. Fla. Nov. 4, 2015) (defendant was prejudiced when

plaintiff failed to submit timely expert report and only retained expert on date that expert disclosures were due under scheduling order).

Finally, Appellant argues at length that "striking" an expert witness is a "harsh sanction" that should be employed sparingly.  SS Brief at 45-47.  But this is a red herring.  To repeat: **The Bankruptcy Court did not "strike" Appellant's expert witness testimony because Appellant *never identified an expert witness*, either before or after the discovery deadline.**  The authority cited by Appellant is simply irrelevant, because in those cases the party actually proffered untimely expert evidence, which the court then excluded (which of course is within a court's discretion).  Here, the Bankruptcy Court simply declined to extend the expert discovery deadline – an order well within its discretion – and as a result Appellant did not proffer an expert witness.  This circumstance is not governed by Rule 37(c)(1); indeed, the Bankruptcy Court only addressed Rule 37(c)(1) in response to Appellant's misplaced argument opposing MDG Powerline's attempt to exclude *other* untimely evidence (discussed below).

But even on its own terms, Appellant's misplaced argument fails: Appellant fails to cite any binding precedent holding that the exclusion of an untimely (and

unidentified!) expert witness is an *abuse of discretion* – the applicable standard.[16]
*Crawford v. ITW Food Equip. Grp., LLC*, 977 F.3d 1331, 1341 (11th Cir. 2020). To
the contrary, the Eleventh Circuit has unambiguously held that a trial court does not
abuse its discretion by excluding an untimely expert report (which Appellant did not
even submit here). *See, e.g., Bearint*, 389 F.3d at 1348-49. Indeed, "federal courts
*routinely* strike expert reports or exclude expert testimony which is not timely
disclosed." *Jetport, Inc. v. Landmark Aviation Miami, LLC*, 2017 WL 7732868, at
*5 (S.D. Fla. July 11, 2017) (emphasis added) (citing *Kakawi Yachting, Inc. v.
Marlow Marine Sales, Inc.*, 2014 WL 12639973, at *3 (M.D. Fla. Oct. 28, 2014)).

In sum, the Bankruptcy Court did not "strike" Appellant's expert because
Appellant did not have an expert to strike. But even if it did, it was not an abuse of
discretion. This argument fails.

---

[16] Appellant relies in its brief on *In re Complaint of C.F. Bean, L.L.C.*, 841
F.3d 365 (5th Cir. 2016), a Fifth Circuit opinion that has never been cited by any
Florida court, and is nonetheless distinguishable. In *C.F. Bean*, the Fifth Circuit
found that the trial court abused its discretion in excluding a *supplementary* expert
report of an expert witness who had been timely identified. *Id.* at 373. Here,
Appellant failed to even identify or disclose an expert witness at any time. Like the
Eleventh Circuit, the Fifth Circuit has held that a trial court does not abuse its
discretion by excluding an expert witness disclosed after the deadline contained in
the court's scheduling order. *Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir.
1990).

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

IV.    **The Bankruptcy Court Did Not Abuse Its Discretion in Striking Appellant's Untimely and Inconsistent Sham Declaration**

In response to MDG Powerline's Motion for Summary Judgment, Appellant attempted to advance a new, undisclosed theory of damages that it had not asserted in its Complaint or revealed in any of its disclosures or discovery responses.  SS App. at 311-12. As part of this ploy to avoid summary judgment, Seven Stars' principal, Eddy Manzo-Berding, executed a sham declaration claiming for the first time that Appellant was seeking to recover reliance damages and the "diminution of value" of its business in lieu of the lost profits damages it had previously asserted.[17] *See* MDG App. at 695-99.  MDG Powerline then moved to strike this sham affidavit and sanction Seven Stars for this misconduct.  *Id.* at 674-92.

Specifically, MDG Powerline showed that Ms. Manzo-Berding's declaration identifying new claims directly contradicted her deposition testimony, where she failed to identify any "reliance" or out-of-pocket damages and testified that Appellant was only seeking purported "lost revenues" or "lost ticket sales."  *See* MDG App. at 674-92 & 923-35.  Her post-summary judgment declaration on

---

[17] Significantly, Appellant ***admitted*** before the Bankruptcy Court that it only began investigating these "alternate" theories of damages in response to Defendants' Motions for Summary Judgment.  MDG App. at 913.

COFFEY │ BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

damages also contradicted Appellant's initial disclosures and discovery responses, which also identified only "lost revenues" or "lost ticket sales" as damages.

As the Bankruptcy Court stated in its Memorandum Opinion: "The record is clear that Seven Stars failed to disclose its new damages theories in its Rule 26(a)(1) initial disclosures, its written discovery responses, and its Rule 30(b)(6) deposition testimony." SS App. at 330.   Accordingly, the Bankruptcy Court held that "because the Manzo-Berding Declaration is clearly inconsistent with Seven Stars' initial disclosures, interrogatory answers, and Ms. Manzo-Berding's own deposition testimony, it falls within the 'sham declaration' rule and must be disregarded." *Id.* at 334.

On appeal, Appellant **does not dispute** the Bankruptcy Court's findings that Ms. Manzo-Berding's declaration was "clearly inconsistent" with her deposition testimony and other discovery responses. *See* SS Brief at 47-54.   Rather, Appellant's only argument is that striking the declaration was too "harsh" a sanction and therefore an abuse of discretion.   *Id.*

As a threshold matter, Appellant's argument plainly fails because, as a matter of law, Appellant could not recover the "reliance" or "diminution of value" damages which Ms. Manzo-Berding's sham declaration was intended to support. As the Bankruptcy Court stated in its Memorandum Opinion, because Appellant's business was not completely destroyed and there was not a "total breach" of the Lease

Agreement, Appellant could not recover these new categories of damages under Florida law. SS App. at 319-20 & nn.139-140 (citing *Montage Grp., Ltd. v. Athle-Tech Comput. Sys., Inc.*, 889 So.2d 180, 193 (Fla. 2d DCA 2004) and *Polyglycoat Corp. v. Hirsch Distribs., Inc.*, 442 So.2d 958, 960 (Fla. 4th DCA 1983)). Appellant **has not appealed** the Bankruptcy Court's holding that it was foreclosed from seeking "diminution of value" or reliance damages and has therefore abandoned any challenge to this ruling. *See Wright*, 607 F.3d at 713. Thus, even if the Bankruptcy Court had considered Ms. Manzo-Berding's sham declaration, it was immaterial anyway, because the declaration is only relevant to damages claims that were unavailable to Appellant as a matter of law. As the Eleventh Circuit has held, "discovery rulings will not be overturned unless it is shown that they resulted in substantial harm to the appellant's case." *Josendis*, 662 F.3d at 1307. The exclusion of Ms. Manzo-Berding's did not cause any harm to Appellant's case, because as a matter of law Appellant could not recover reliance or diminution of value damages for its claims – an issue that is undisputed.

In its appeal, Appellant once again mischaracterizes the Bankruptcy Court's ruling on the sham declaration, and relies on misplaced and inapplicable law and mixes up the issues to create the illusion of error.

First, Appellant incorrectly suggests that the Bankruptcy Court "dismissed the entire case" as a sanction under Rule 37, and uses this false premise as a springboard

to argue that the Bankruptcy Court could not employ such a "harsh" sanction absent a showing that Appellant was in "flagrant disregard" of a court order.[18] *See* SS Brief at 48-50. All of this is wrong. **The Bankruptcy Court did not dismiss Appellant's claims as a sanction under Rule 37**. The Court simply excluded an untimely and inconsistent "sham declaration" of Appellant's principal offered in opposition to Defendants' Motions for Summary Judgment. SS App. at 334 ("While *disregarding this declaration* might seem like a harsh or draconian result, it is not") (emphasis added). Appellant's straw man argument is entirely misplaced.

---

[18] Appellant also suggests that the failure to impose a lesser sanction for a party's discovery violation "may" be an abuse of discretion under any circumstances. SS Brief at 50 (quoting *Collins v. United States*, 2010 WL 4643279 (M.D. Fla. Nov. 9, 2010)). However, the Eleventh Circuit has never held that a court *must* impose a lesser sanction under Rule 37(c) for a party's failure to timely disclose information or witnesses. *See Circuitronix, LLC v. Kinwong Elec. (Hong Kong) Co., Ltd.*, 993 F.3d 1299, 1308 (11th Cir. 2021) (discussing split of authority regarding whether exclusion of late evidence under Rule 37(c) is automatic and declining to reach the issue). But in advancing this argument, Appellant insists, incorrectly, that the "sanction" imposed was "dismissal" of its claims, when in fact the Bankruptcy Court only excluded Ms. Manzo-Berding's untimely and inconsistent sham declaration. *See* SS App. at 334. Significantly, Appellant does not identify what "lesser" sanction other than striking the declaration the Bankruptcy Court should have imposed. In any event, the law is clear that a district court is not required to first impose lesser sanctions if the lesser sanction would be ineffective. *Malautea,* 987 F.2d at 1544.

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

The authority cited by Appellant in its Brief illustrates the point. Appellant relies on *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536 (11th Cir. 1993), a case in which the court *entered a default judgment* against a plaintiff as a sanction under Rule 37(b)(2)(C) – which by its terms applies when a party fails to comply with prior court orders. *Id.* at 1542-43. *United States v. Certain Real Prop. Located at Route 1, Bryant, Ala.*, 126 F.3d 1314 (11th Cir. 1997), also cited by Appellant, SS Brief at 49, also concerned a default judgment entered as a discovery sanction – an issue not presented here. *Id.* at 1317.  Here, the Bankruptcy Court did not rely on Rule 37(b) *at all* in excluding Ms. Manzo-Berding's sham declaration, and it did not dismiss Appellant's claims or enter default judgment as a sanction. *See* SS App. at 334. Rather, the Bankruptcy Court relied on the Eleventh Circuit's "sham declaration rule" (allowing a court to disregard an inconsistent declaration submitted in opposition to a summary judgment motion) and Rule 37(c)(1), which provides that a court may employ the "sanction of prohibiting the undisclosed information to be used to supply evidence on a motion, at a hearing, or at a trial." *Id.* at 334-35 & nn.187, 202 & 203. *Malautea* and *Certain Real Prop.* and their discussions of dismissal and default as sanctions for violations of court orders under Rule 37(b) are simply not applicable here.

*OFS Fitel*, also cited by Appellant, SS Brief at 48, is similarly inapposite. In *OFS Fitel*, the Eleventh Circuit found that the trial court abused its discretion by

*dismissing the plaintiff's claims* as a sanction for its untimely expert disclosures.[19]

*OFS Fitel*, 549 F.3d at 1363-64.   Again, the Bankruptcy Court **did not** dismiss

Appellant's claims as a sanction.[20] The Bankruptcy Court simply declined to

consider Ms. Manzo-Berding's sham declaration, a ruling that was well within the

Bankruptcy Court's discretion and completely consistent with the law in this Circuit

– law which Appellant does not substantively address in this appeal.

Indeed, it is undisputed that a "party opposing summary judgment may not

substitute an affidavit alleging helpful facts in place of earlier deposition testimony

in hopes of avoiding summary judgment." *Moore v. Tractor Supply Co.*, 352

---

[19] *OFS Fitel* is also distinguishable on the facts.  In that case (an attorney negligence action), the plaintiff had previously disclosed the identity of its expert, and informed the defendant that the deposition testimony of defendant's witnesses were necessary in order for the plaintiff's expert to form in opinion, before finally submitting an untimely expert report. *OFS Fitel*, 549 F.3d 1363-64. The Eleventh Circuit found that the trial court's conclusion that the plaintiff was "stonewalling" was, under such circumstances, unsupported and an abuse of discretion. *Id.*  In its opinion, the Eleventh Circuit noted that "this is not a case of complete failure to provide information about an expert witness," and "this is not a case where the plaintiff knew all the facts anyway." *Id.*

In contrast, the case presented here on appeal ***is*** "a case of complete failure to provide information about an expert witness," and it ***is*** "a case where the plaintiff knew all the facts" necessary for its anticipated expert to render an opinion on damages.  Thus, even if the Bankruptcy Court had dismissed the Appellant's claims as a sanction for its discovery violations – which it did not – this still would not have been an abuse of discretion under *OFS Fitel*.

[20] None of the cases cited by Appellant in its Brief discusses the sham declaration rule.

F.Supp.2d 1268, 1275-76 (S.D. Fla. 2004) (citing *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 (11th Cir. 2003) and *Van T. Junkins & Assoc., Inc. v. U.S. Indus., Inc.*, 736 F.2d 657, 657 (11th Cir. 1984)). Accordingly, courts in this Circuit "may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when the affidavit is directly contradicted by deposition testimony." *McCormick*, 333 F.3d at 1240 n.7. *See also Liebman v. Metro. Life Ins. Co.*, 708 Fed. Appx. 979, 982-83 (11th Cir. 2017) (no abuse of discretion in disregarding affidavit that contradicted prior deposition testimony). The Bankruptcy Court did not err in doing so here – and Appellant does not argue otherwise.

It is also undisputed that a trial court does not abuse its discretion by excluding evidence relating to a theory of damages that the plaintiff failed to disclose in its Rule 26 disclosures or in discovery. *See, e.g., Mee Indus. v. Dow Chemical Co.*, 608 F.3d 1202, 1221-22 (11th Cir. 2010) (affirming exclusion of evidence of damages that Plaintiff failed to identify and calculate in its Rule 26 initial disclosures); *City of Rome v. Hotels.com, L.P.*, 549 Fed. Appx. 896, 904-05 (11th Cir. 2013) (same). This is consistent with Eleventh Circuit authority holding that a "plaintiff may not amend [its] complaint through argument in a brief opposing summary judgment," as Appellant attempted to do here by asserting new (and legally unavailable) claims for

"reliance" and "diminution of value" damages. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).

Appellant ignores all of this authority in its Brief, and it does not dispute the Bankruptcy Court's finding that Ms. Manzo-Berding's untimely declaration contradicted her prior deposition testimony.   Instead, Appellant attempts in this appeal – as it did in the court below – to make this all about the Bankruptcy Court's refusal to extend the expert discovery deadline, arguing (incorrectly) that in striking the declaration the Bankruptcy Court was "imposing the severest sanction against Appellant for failing to file its expert designation." SS Brief at 49.   The Bankruptcy Court appropriately rejected this as an "excuse," and correctly found that Appellant's failure to disclose an expert within the deadlines contained in the Scheduling Order was an issue governed by Rule 16(b), requiring Appellant to establish good cause to extend the expert deadline – which Appellant failed to do (as discussed at length above).   SS App. at 332-33.

At bottom, Appellant appears to argue that, where a plaintiff fails to make a timely expert disclosure (or even identify an expert witness), that party may proffer a declaration and other evidence of a *new* theory of recovery in response to a summary judgment motion – and that a court's refusal to allow this new and untimely evidence is an abuse of discretion.   Appellant cites no authority for this extraordinary argument.   In fact, its position is in utter contradiction to the Eleventh

COFFEY │ BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

Circuit's decisions in *McCormick*, *Van T. Junkins & Assoc.*, *Mee Indus.*, *City of Rome*, *Gilmour*, *Liebman* and *Rigby*. The Bankruptcy Court's ruling striking Ms. Manzo-Berding's sham declaration should be affirmed.

## V. The Bankruptcy Court Correctly Granted Summary Judgment in Favor of MDG Powerline

Ultimately, the Bankruptcy Court granted Defendants' motions for summary judgment because Appellant did not advance any competent evidence to establish the element of damages. SS App. at 322, 336. As the Court correctly stated, Appellant had "the burden to present evidence justifying a specific and definite amount of economic damages," such that the factfinder could determine damages "with a reasonable degree of certainty, rather than by means of speculation and conjecture," and Appellant failed to meet this burden. *Id.* at 320-21.

On appeal, Appellant does not seriously challenge the Bankruptcy Court's ruling that it failed to put forward competent evidence of damages. Instead, Appellant merely repeats its baseless argument that the Bankruptcy Court erred by declining its motion to extend the expired expert disclosure deadline because it was pursuing litigation funding to finance an expert. SS Brief at 55-57. This argument fails for the reasons discussed at length above.

Finally, Appellant offers yet another misplaced argument based on a mischaracterization of the Bankruptcy Court's Order. Appellant asserts that the

Bankruptcy Court "failed to consider" its profit and loss statements as evidence of damages and claims that the Court ruled that "the principals of Appellant were not competent witnesses to testify as to the damages." *Id.* at 57. This is untrue. As previously discussed, the Bankruptcy Court did consider Appellant's profit and loss statements in its Memorandum Opinion, and correctly found that this evidence by itself "does not show any evidence of damages." SS App. at 305, 324. This is because "Florida law requires proof of lost profits (income minus expenses), not just lost revenue." *Id.* at 319 & n.138. Appellant does not challenge this legal conclusion on appeal.

Moreover, nowhere in its Order did the Bankruptcy Court find that Appellant's principals were "not competent witnesses to testify as to the damages," as Appellant contends. Rather, the Bankruptcy Court simply found that its profit and loss statements, by themselves, were insufficient to prove lost profits (because they are silent as to expenses). Significantly, Appellant did not even *offer* any lay testimony of its principals regarding lost profits; the only evidence that Appellant offered from its principals regarding damages was the untimely sham declaration of Ms. Manzo-Berding, which discussed only Appellant's purported "diminution of value," not lost profits (and in fact was proffered as part Appellant's attempt to pivot to a new damages theory to avoid summary judgment). *See* MDG App. 695-99; *see also id.* at 905-22. This is yet another straw man argument, and like the others, it

fails.   The Bankruptcy Court's Order granting summary judgment should be affirmed.

**CONCLUSION**

WHEREFORE, for the reasons stated above, the Final Judgment entered in favor of MDG Powerline should be affirmed.

Respectfully submitted,

By:   */s/ Scott A. Hiaasen*
       Scott A. Hiaasen

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

## CERTIFICATE OF COMPLIANCE

I certify that this Brief complies with the type-volume limitation set forth in Fed. R. Bankr. P. 8015(a)(7)(B)(i). This brief contains 11,818 words.

By: _/s/ Scott A. Hiaasen_____
Scott A. Hiaasen

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

By: _/s/ Scott A. Hiaasen_____
Scott A. Hiaasen

COFFEY │ BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261