No. 22-60299

_____

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

_____

IN RE:  SEVEN STARS ON THE HUDSON CORPORATION

**SEVEN STARS ON THE HUDSON
CORPORATION, d/b/a ROCKIN' JUMP,**

*Appellant,*

v.

**MDG POWERLINE HOLDINGS, LLC
AND XBK MANAGEMENT LLC,
d/b/a APPELLEE-XTREME ACTION PARK,**

*Appellees.*

_____

Appeal from the Final Judgment Entered on January 31,
2022 in the United States Bankruptcy Court for the
Southern District of Florida (Bankruptcy Court Docket
No. Adv. Pro. 19-01230 and an Interlocutory Order dated
May 13, 2021

_____

**INITIAL BRIEF OF APPELLANT
SEVEN STARS ON THE HUDSON CORPORATION'S BRIEF**

On appeal from the United States Bankruptcy Court
For the Southern District of Florida, Broward Division

_____

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................1

STATEMENT REGARDING ORAL ARGUMENT ...........................................2

STATEMENT OF BASIS FOR JURISDICTION ............................................2

STATEMENT OF ISSUES ...............................................................................3

STANDARD OF REVIEW ..............................................................................4

STATEMENT OF FACTS ...............................................................................6

    Appellant's Business And The Complaint ..............................................6

    Relationship Between Appellees ...........................................................7

    Appellees' Wrongful Acts.....................................................................8

    The Bankruptcy....................................................................................11

    The Adversary Proceeding...................................................................11

    Appellee-Landlord's Motions To Dismiss ..........................................11

    Impact Of Covid ..................................................................................12

    Dismissal Of Seven Stars I ..................................................................13

    Discovery In The Adversary Proceeding..............................................14

    Litigation Funding ...............................................................................16

    Appellees' Summary Judgment Motions.............................................21

    Appellant's Responses.........................................................................23

    The Bankruptcy Court's Ruling...........................................................24

SUMMARY OF THE ARGUMENT ................................................................27

LEGAL ARGUMENT .....................................................................................30

POINT I...........................................................................................................30

THE BANKRUPTCY COURT ERRED IN FINDING LACK OF GOOD CAUSE
TO EXTEND THE EXPERT DISCOVERY DEADLINE ....................................30

i

POINT II ............................................................................................................34

THE BANKRUPTCY COURT ERRED IN FAILING TO ANALYZE THE
EXCUSABLE NEGLECT FACTORS WITH RESPECT TO THE MISSED
DEADLINE .......................................................................................................34

No Evidence Of Strategic Delay Or Willful Contempt.....................................36

No Evidence Of Prejudice To The Appellees ...................................................37

POINT III ...........................................................................................................38

THE BANKRUPTCY COURT ERRED IN OF FINDING THAT APPELLANT'S
FAILURE TO DISCLOSE EVIDENCE OF DAMAGES THROUGH AN
EXPERT WAS NEITHER SUBSTANTIALLY JUSTIFIED OR HARMLESS ...38

Factor 1 – No Surprise .....................................................................................42

Factor 2 - Cure .................................................................................................43

Factor 3 – No Disruption Of Judicial Proceedings...........................................43

Factor 4 – Critical Nature Of The Evidence ....................................................43

Factor 5 – Explanation For The Delay .............................................................44

POINT IV ...........................................................................................................47

STRIKING THE DECLARATION OF APPELLANT'S PRINCIPAL WAS NOT
WARRANTED ....................................................................................................47

POINT V ............................................................................................................54

SUMMARY JUDGMENT WAS NOT WARRANTED AS IT WAS BASED ON
THE EXCLUSION OF EXPERT TESTIMONY................................................54

CONCLUSION ...................................................................................................57

# TABLE OF AUTHORITIES

**Cases**

*Allen Russell Pub., Inc. v. Levy*,
  109 F.R.D. 315 (N.D. Ill. 1985)...........................................................................33

*Anderson v. Liberty Lobby, Inc*.,
  477 U.S. 242, 248 (1986)....................................................................................54

*Architects Collective v. Pucciano & English, Inc.,*
  2016 WL 9454428 (N.D. Ga. Nov. 14, 2016) ........................................ 46, 48, 49

*Aurich v. Sanchez*,
  2011 WL 5838233 (S.D. Fla. Nov. 21, 2011) ......................................................55

*Baker by Thomas v. Gen. Motors Corp*.,
  522 U.S. 222 (1988).............................................................................................49

*Campbell v. Keystone Aerial Surveys, Inc*.,
  138 F.3d 996 (5th Cir. 1998) .............................................................................38

*Carlin Commc'n, Inc. v. Southern Bell Tel. & Tel. Co.*,
  802 F.2d 1352 (11th Cir. 1986) ...........................................................................55

*Catalina Rental Apts., Inc. v. Pacific Ins. Co*.,
  2007 WL 1050634 (S.D. Fla. April 3, 2007)......................................... 39, 44, 50

*Cheney v. Anchor Glass Container Corp.*,
  71 F.3d 848 (11th Cir. 1996) ........................................................... 35, 37

*Clemons v. Dougherty County*,
  684 F.2d 1365 (11th Cir. 1982) .........................................................................54

*Collins v. United States*,
  2010 WL 4643279 (M.D. Fla. Nov. 9, 2010) ................................................ 46, 49

*Cordoba v. DIRECTV, LLC*,
  942 F.3d 1259 (11th Cir. 2019) ...................................................................4

*Cruz v. Publix Super Markets, Inc*.,
  428 F. 3d 1379 (11th Cir. 2005) ...............................................................54

*Deghand v. Wal-Mart Stores, Inc*.,
  904 F. Supp. 2d, 1218 (D. Kan. 1995)........................................................34

*Devaney v. Cont'l Am. Ins. Co.*,
  989 F.2d 1154 (11th Cir. 1993) .................................................................39

*Durden v. Citicorp Trust Bank, FSB*,
  2008 WL 11318338 (M.D. Fla. Nov. 25, 2008)...........................................47

*ELCA Enterprises, Inc. v. Sisco Equip. Rental & Sales, Inc*.,
  53 F.3d 186 (8th Cir. 1995) ......................................................................45

*Fucron v. Mail  Ctrs. Plus, LLC*,
  843 F.3d 1295 (11th Cir. 2016) .................................................................47

*Gaines v. County of Wayne*,
  2021 WL 5997980 (E.D. Mich. Dec. 20, 2021) ..........................................39

*Grigorian v. FCA US, LLC*,
  2019 WL 2754154 (S.D. Fla. July 3, 2019) ...............................................50

*Harris Corp. v. Ruckus Wireless*,
  *Inc*., 2015 WL 3883948 at (M.D. Fla. June 24, 2015) ...............................35

*Heartland Rehabilitation Services, Inc. v. Mekjian*,
    2007 WL 1266352 (E.D. Mich. May 1, 2007) ......................................................42

*Henry v. Bradshaw*,
    2008 WL 11409966 (S.D. Fla. May 19, 2008) ....................................................39

*In re Complaint of C.F. Bean, L.L.C.*,
    841 F.3d 365 (5th Cir. 2016) ................................................................ 47, 51, 56

*In re Complaint of Kreta Shipping, S.A.*,
    181 F.R.D. 273 (S.D.N.Y 1998) .........................................................................43

*In re Paoli R.R. Yard PCB Litig.*,
    35 F.3d 717 (3d Cir. 1994).................................................................................46

*In re Seven Stars on the Hudson Corp.*,
    618 B.R. 333 (Bankr. S.D. Fla. 2020) ..............................................................13

*In re Treco*,
    2001 WL 1566701 (Dec. 10, 2001 S.D.N.Y.) ........................................ 20, 31, 32

*Josendis v. Wall to Wall Residence Repairs, Inc.*,
    662 F.3d 1292 (11th Cir. 2011) .........................................................................30

*Knight v. Miami-Dade Cnty.*,
    856 F.3d 795 (11th Cir. 2017) ...........................................................................33

*Lacy v. Sistel Corp.*,
    227 F.3d 290 (5th Cir. 2000) .............................................................................37

*Malautea v. Suzuki Motor Co., Ltd.*,
    987 F.2d 1536 (11th Cir. 1993) .........................................................................50

*Miami Yacht Charters, LLC v. National Union Fire Ins. Co. of Pittsburgh Pennsylvania*,
2012 WL 12862811 (S.D. Fla. Nov. 2, 2012) ........................................................50

*Mobile Shelter Sys. USA Inc. v. Grate Pallet Sols, LLC*,
845 F. Supp. 2d 1241 (M.D. Fla. 2012)................................................................40

*Nephron Pharmaceuticals Corporation v. Hulsey*,
2020 WL 7684863 (M.D. Fla. Oct. 7, 2020) ........................................................53

Nobles v. Rural Community Ins. Services,
303 F. Supp. 2d 1279 (M.D. Ala. 2004)................................................................30

*OFS Fitel, LLC v. Epstein*,
549 F.3d 1344 (11th Cir. 2008) ............................................................................48

*Oravec v. Sunny Isles Luxury Ventures, L.C.*,
527 F.3d 1218 (11th Cir. 2008) ............................................................................30

*Payne v. C.R. Bard, Inc.*,
606 Fed. Appx. 940 (11th Cir. 2015).....................................................................34

*Pecarsky v. Galaxiworld.com Ltd.*,
249 F.3d 167 (2d Cir. 2001) .................................................................................33

*Pierce v. Underwood*,
487 U.S. 552 (1988)..............................................................................................39

*Pioneer Investment Services, Inc. v. Brunswick*,
507 U.S. 380 (1993)....................................................................................... passim

*Plante v. USF & G Specialty Insurance Co.*,
2004 WL 1429932 (S.D. Fla. June 2, 2004)...........................................................4

*Poole v. Gee*,
    2008 WL 2397603 (M.D. Fla. June 10, 2008) ............................................. 40, 51

*Prieto v. Total Renal Care, Inc.*,
    2019 WL 2510003 (S.D. Fla. June 18, 2019) ......................................................45

*Quintero v. Lopez*,
    2016 WL 2059910 (S.D. Fla. July 9, 2009) ........................................................54

*Ratcliff v. Red City Lodge*,
    2013 WL 5817210 (D. Mont. Oct. 29, 2013) ................................................. 41, 42

*Rinieri v. News Syndicate*,
    385 F.2d 818 (2d Cir. 1967) ............................................................ 20, 31, 32, 33

*Romero v. Drummond Co.*,
    552 F.3d 1303 (11th Cir. 2008) ...........................................................................30

*Safari Programs, Inc. v. Collecta International Ltd.*,
    686 Fed. Appx. 737 (11th Cir. 2017) ...................................................................35

*SuVicMon Development, Inc. v. Morrison*,
    991 F.3d 1213 (11th Cir. 2021) .............................................................................5

*Toomey v. Wachovia Ins. Servs., Inc.*,
    450 F.3d 1225 (11th Cir. 2006) .............................................................................2

*Two Men and a Truck Int'l, Inc. v. Res. & Commercial Trans. Co.*,
    2008 WL 5235115 (N.D. Fla. Oct. 20, 2008) ......................................................40

*Varnes v. Local 91 (ilass and Bottle Blowers Ass'n of the United States and*
    *Canada*, 674 F.2d 1365 (11th Cir. 1982) .............................................................34

*Vega v. T-Mobile USA, Inc.,*
  564 F.3d 1256 (11th Cir. 2009) ...................................................................5

*Westgate Vacation Villas, Ltd. V.. Tabas (In re International Pharmacy &*
  *Discount II, Inc.*),
  443 F.3d 767 (11th Cir. 2005) ...................................................................4

*Wilchombe v. TeeVee Toons, Inc.,*
  555 F.3d 949 (11th Cir. 2009) .................................................................47

*Wisconsin Carpenters Pension Fund, v. Jokipii Demolition LLC,*
  2007 WL 1308847 (E.D. Wis. May 2, 2007) ........................................33

*World Thrust Films, Inc. v. Int'l Family Entm't, Inc.,*
  141 F.3d 1454 (11th Cir. 1995) ...............................................................36

**Statutes**

28 U.S.C. § 1334 ............................................................................................2
28 U.S.C. § 157 ..............................................................................................2
28 U.S.C. § 158 ..............................................................................................2

**Rules**

Fed. R. Bankr. P. 8012 ...................................................................................1
Fed. R. Bankr. P. 9006(b)………………………………………… 29, 30, 31, 34

Fed. R. Civ. P. 16(b) ......................................................................... 28, 30, 34
Fed. R. Civ. P. 37(c)......................................................................... passim

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 8012 of the Federal Rules of Bankruptcy Procedure, Appellant Seven Stars on the Hudson Corporation through its undersigned counsel, makes the following certifications and disclosures:

Appellant Seven Stars on the Hudson Corporation is a non-governmental party. Further, Jens Berding is the beneficial owner of 51 % of the Appellant and Eddy Manzo-Berding is the beneficial owner of 49 % of the Appellant.  As such, there is no publicly held corporation that owns 10% or more of its stock.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant, Seven Stars on the Hudson Corporation requests oral argument. The Court's decisional process would be significantly aided by the opportunity to hear oral argument.  The factual record in this case is expansive covering two filed bankruptcies and a contentious adversary proceeding. Appellant submits that the Court would benefit from hearing counsel explain certain details in these proceedings.

## STATEMENT OF BASIS FOR JURISDICTION

The Bankruptcy Court had subject matter jurisdiction over this action under 28 U.S.C. § 157 and 28 U.S.C. § 1334.  The Bankruptcy Court's final judgment dismissing all claims contained in the Second Amended Complaint is a final order under 28 U.S.C. § 158(a)(1).

This Court has jurisdiction over the Appellant's appeal under 28 U.S.C. § 158 and 28 U.S.C. § 1334. This Court also has jurisdiction to hear an appeal from an interlocutory order of the Bankruptcy Court, including the Order entered on May 13, 2021. *See Toomey v. Wachovia Ins. Servs., Inc*., 450 F.3d 1225, 1228 n. 2 (11th Cir. 2006).  The Bankruptcy Court's denial of Plaintiff-Debtor's (Appellant) motion to extend the expert discovery deadline is appealable now.

The appeal is from a final judgment entered on January 31, 2022 and is timely under Bankruptcy Rule of Procedure 8002(a) as it was filed on February 7, 2022.

2

## STATEMENT OF ISSUES

1)      Did the bankruptcy court err in finding that Appellant failed to establish good cause by not designating an expert by April 6, 2021?

2)      Did the bankruptcy court err in finding that Appellant failed to establish excusable neglect by not designating an expert by April 6, 2021?

3)      Did the bankruptcy court err in denying Appellant's motion to extend the expert discovery deadline and to designate an expert witness under Fed. R. Civ. P. 37(c)(1) on the ground that Appellant's alleged failure to designate an expert by April 6, 2021, was neither substantially justified nor harmless?

4)      Did the bankruptcy court err in granting Appellees' respective motions for summary judgment?

## STANDARD OF REVIEW

Because the Bankruptcy Court entered a final judgment, this Court reviews determinations of law made by the Bankruptcy Court *de novo* and reviews the Bankruptcy Court's findings of fact for clear error. *Westgate Vacation Villas, Ltd. V.. Tabas (In re International Pharmacy & Discount II, Inc*.), 443 F.3d 767, 770 (11th Cir. 2005). A finding of clear error exists if, in light of all the evidence, the Court is "left with the definite and firm conviction that a mistake has been made." Id.

A Bankruptcy Court's rulings on discovery issues are reviewed under an abuse of discretion standard. A court abuses its discretion when "a relevant faction deserving significant weight is overlooked, when an improper factor is given significant weight, or when all proper and no improper factors are considered, or when the court considers the appropriate mix of factors but commits a palpable error of judgment in calibrating the decisional scales." *Plante v. USF & G Specialty Insurance Co*., 2004 WL 1429932 (S.D. Fla. June 2, 2004)(internal quotations marks and internal citations omitted); *see also Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1267 (11th Cir. 2019) (a court "abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous.") A court can also abuse its discretion "by applying the law in an unreasonable or incorrect manner." *Vega v. T-Mobile*

*USA, Inc*., 564 F.3d 1256, 1265 (11th Cir. 2009) (internal quotation and citation omitted).

Moreover, a determination as to whether the Bankruptcy Court properly exercised its discretion in the assessments it made, is an issue of law to be decided by this Court under a *de novo* standard. *SuVicMon Development, Inc. v. Morrison*, 991 F.3d 1213, 1225 (11th Cir. 2021)(citation omitted).

## STATEMENT OF FACTS

Appellant's Business And The Complaint

The Appellant owns and operates a trampoline park and family fun center in Fort Lauderdale.  Appendix ("A_") 6, ¶ 20.  The park occupies approximately 23,000 sq. feet of space in a much larger commercial space (approximately 200,000 sq. feet) located at 5300 N. Powerline Road, Ft. Lauderdale, FL (the "Premises").  Id., ¶ 21. The larger commercial space was known as Xtreme Action Park ("Xtreme") which was operated by Appellee, XBK Management, LLC d/b/a Xtreme Action Park ("Appellee-XBK").  The Appellee-Landlord and Appellant entered into 10 year written commercial lease agreement on November 23, 2015 (the "Lease") with two five-year renewals.  A. 3, ¶ 9.

The Appellant initially operated the trampoline park as a franchise under the terms of a franchise agreement, dated December 5, 2014 (the "Franchise Agreement"), with a national trampoline franchise company known as Rockin' Jump, LLC (the "Franchisor"). A. 4-5, ¶ 14.   Under the terms of the Franchise Agreement, the Appellant was obligated to pay six percent (6%) of gross revenues as royalty fees.  A. 3, fn. 1.

The Appellant obtained financing totaling $1.4 million from Wells Fargo and used $553,532 from Appellant's principals, Jens Berding and Eddy-Manzo Berding (collectively, "Berdings") for the build-out of the Premises as a franchised trampoline

facility.  Construction began in or about mid of 2016. Id., ¶ 22.   To date, $1.270 million of the financing remains outstanding.  In addition to the construction of the Premises, the Appellant also used working capital of approximately $140,000 to contribute ~45% to the buildout costs of bathrooms within the common areas of Xtreme and to reimburse the Appellee--Landlord for the cost of HVAC equipment. A. 6, ¶ 23.  Appellant's trampoline park which sits at the back of the Xtreme Park is surrounded by the Xtreme's  attractions.  Xtreme bills itself as the largest indoor entertainment facility in Florida.  MDG Appendix ("MDG App."), 644.

Under the Lease, Appellant and Appellee- Landlord agreed that Appellant would be permitted to have interior signage.  Specifically, Appellant is permitted to have interior signage "near the front of the building" and also to have "rights to the pro-rata portion of or dedicated panel on any existing or future pylon or monument".  Although the signage required the Appellee- Landlord's approval, such approval could not be unreasonably withheld.  A. 102, ¶ 3g.

Relationship Between Appellees

It became clear to the Appellant shortly after the 2015 Lease signing that Appellee-XBK functioned as the managing agent for the Appellee-Landlord.  A. 8, ¶ 30. Appellee-XBK was involved in virtually all aspects of managing the entertainment facility and functioned as the agent for the Appellant-Landlord by handling HVAC project management activities related to planning, purchasing,

installation, and cost reimbursement from Appellant, project management related to egress and fire safety planning and installation, project management related to bathroom planning, purchasing, installation, and cost reimbursement, project management related to the renovation and design of the marquee located on Powerline Rd. as well as the general day-to-day management issues such as hours of operation, repairs and advertising. A. 9, ¶ 31.

Nevertheless, for nearly the entire length of the adversary proceeding, the Appellee- Landlord denied that there was any agency relationship and constantly referred to Appellee-XBK as just another tenant.   Appellant's Supplemental Appendix ("SA") 404; 831.

Appellees' Wrongful Acts

The Appellant opened for business on November 22, 2016.  A. 13, ¶ 47. In keeping with the Lease requirements, Appellant operated its business "during all business hours established by Appellee- Landlord as the hours of operation for the Property" except for times when the Lease allowed a later opening time or later or earlier close time and when the Appellee-Landlord authorized the Appellant to confer with Appellee-XBK about adjusting hours of operation.  Id., ¶ 48.

Appellant's busy season begins in earnest on or about June 1st just as schools are ending their academic year.  Id., ¶ 49.  Because the Premises would be in a mall setting, the Appellant anticipated that customers visiting the mall, particularly ones

withyoung children, would utilize the Premises.  Appellant also targeted summer camps and other family-friendly groups.  A. 13, ¶¶ 20-21.

For a brief period beginning in mid-2016 prior to Appellant's opening and through early Fall 2017, Appellee-XBK and the Appellant engaged in cross-promotion advertising which benefitted both parties. A. 13-14, ¶ 50.  For example, Appellee-Xtreme included Appellant on its weekly email blasts, on its website, in brochures and rack cards.  Id.  Appellant reciprocated and referenced Appellee-Xtreme on its website and in its print advertising.  During the summer of 2017, the Appellant operated at a profit  and was able to meet all its financial obligations.  A. 14, ¶ 51.  Appellant saw its business grow steadily through its first full season.  Beginning in late Fall 2017, the relationship between Appellee-XBK and Appellant tooka downward turn. Id., ¶ 52.  Since that time and as described below, Appellee-XBK, acting in concert with the Appellee-Landlord, deliberately sabotaged Appellant's business activities in the following manner:

- Ripping down Appellant's signage and information at the entertainment complex relating to Appellant's business;

- Dismantling the Appellant's satellite front desk;

- Misappropriating Appellant's interior signage (an 8 foot arrow);

- Intentionally blocking the view of Appellant's logo and limiting customer access;

- Depriving Appellant of marquee space on the outside pylon

9

monument.

- Targeting Appellant's customers by delaying food orders.[1]

- Holding Lock-out events without Appellant and then prohibiting Appellant's customers from accessing the Premises.

- Causing customer confusion by encouraging customers to purchase an Xtreme ticket under terms that cause a reasonable customer to believe that the trampoline park was part of the Appellee-Xtreme's attractions when the trampoline park is a separate business.[2]

A. 14-23, ¶¶ 53-83.

The Appellant alleged in its Second Amended Complaint that these actions resulted in a 40 % drop in revenue from early 2017 to the end of 2019. A. 28, ¶ 107.

---

[1]    The significance of this is that the Appellant's customers cannot bring in food or drink into the entertainment facility.  Only food and drink purchased through Appellee-XBK is permitted under the Lease.  A. 23-24, ¶¶ 84-87.

[2]    As recently as September 20, 2021, when Appellee-Xtreme held another lock-out event at which Plaintiff did not participate,  it had one of its employees tell customers that the entire Park was closed, including Appellant's Park, when in fact, that Park was open for business.  This was a violation of an order entered December 31, 2019.  *See* SA 851, ¶ 4g.  Notably, in the December 2019 Order, the Bankruptcy Court stated that Appellee-XBK's actions during one such lock-out event as "pretty egregious, pretty misleading and in [the court's view] arguably a violation of the automatic stay as an act to exercise control over the property of the Estate to basically shut down access to the business of a Chapter 11 debtor."  SA 436 (lines 21-25).

The Bankruptcy

On June 5, 2019, Appellant filed for relief under Chapter 11 of the Bankruptcy Code, Case No. 19-17544 ("Seven Stars I").  Because of the actions of the Appellees, Appellant was no longer able to meets its financial obligations to its lender, Wells Fargo, or the Franchisor.

The Adversary Proceeding

On July 19, 2019, Appellant commenced an adversary proceeding against the Appellees. XBK Appendix ("XBK App.") XBK 0001-0143.   In its complaint, Appellant alleged that Appellee-Appellee-Landlord, through the actions of its agent, Appellee-XBK, had breached the covenant of quiet enjoyment, breached the duty of good faith and fair dealing, and had engaged in violations under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").  In addition, Appellant asserted a claim of tortious interference with contract against Appellee-XBK.

Appellee-Landlord's Motions To Dismiss

On August 30, 2019, Appellee-Appellee-Landlord moved to dismiss the claims against it arguing, *inter alia*, that the assertions of wrongful conduct attributable to Appellee-XBK flow from a "false premise" that Appellee-XBK was its agent, rather than merely another tenant, and that Appellant advanced these "baseless claims" because it "could not identify any breaches of the Lease

11

Agreement by" Appellee-Landlord.   SA 404. By order dated November 15, 2019, the Bankruptcy Court dismissed the breach of contract counts and the FDUTPA counts with leave to replead.   SA 428.

On December 5, 2019, Appellant filed an amended complaint alleging breach of contract and FDUTPA claims.  SA 452-660.  The Appellee- Landlord filed a motion to dismiss on December 19, 2019, and once again argued that Appellant's claims of agency were based on the "false premise" that Appellee-XBK was the agent of Appellee- Landlord.  SA 831.

By order dated April 28, 2020, nearly ten months after the commencement of the adversary proceeding, the Bankruptcy Court denied the motion to dismiss and directed the Appellees to answer the Amended Complaint.  A. 206.  In the answer to the Amended Complaint, Appellee-Landlord continued to disclaim the existence of any agency relationship between itself and Appellee-XBK.  A. 224 [First Aff. Defense]

Impact Of Covid

By letter dated March 17, 2020, the Appellee-Landlord informed the Appellant that "due to the current SARS-CoV-2/Covid-19 events and the directions and recommendations of the Governor of the State of Florida and the President of the United States, Xtreme Action Park will be closing today, March 17, 2020, indefinitely."  The Appellee-Landlord further advised the Appellant that it would

"not require Tenant's compliance with the continuous operation and minimum hours requirements set forth in Article 6 of the Lease." Id.  The Appellant shut its business down on March 18, 2020.  *See In re Seven Stars on the Hudson Corp.*, 618 B.R. 333, 337-38 (Bankr. S.D. Fla. 2020).

While the Trampoline Park re-opened in June 2020 at limited capacity, full capacity was not restored until the Fall of 2020.

Dismissal Of Seven Stars I

Bankruptcy counsel for Appellant filed an Amended Petition in which it elected to proceed under new Subchapter V of Chapter 11 of the Bankruptcy Code.  Id., 628 B.R. at 338.  On June 24, 2020, the Bankruptcy Court *sua sponte* issued an order to show cause as to why Seven Stars I should not be dismissed. Id., 628 B.R. at 339.   By order dated August 7, 2020, the Bankruptcy Court dismissed Seven Stars I. Id., 628 B.R. at 348.

On August 24, 2020, Appellant filed a second Chapter 11 Subchapter V Voluntary Petition.  A. 298. The Bankruptcy Court scheduled an evidentiary hearing on August 27, 2020 to consider whether the automatic stay should continue.  SA 666 (lines 24-25) - 667 (line 1).  By order entered on the record on August 27, 2020, the Bankruptcy Court imposed the automatic stay.  SA 759, (lines 8-14).  During this time period, discovery in the Adversary Proceeding was placed on hold.

Discovery In The Adversary Proceeding

On June 3, 2020, after responding to the counterclaim, the Appellant served its First Request for Production on both Appellees.  SA 764, ¶ 8.  The Appellees did not file their responses and sought an order extending their time to do so.  The Appellant consented and the time for responding was set for July 28, 2020.  In fact, no documents were produced at that time.  Appellee-Landlord made documents available to Appellant for the first time on September 25, 2020.  Appellee-Xtreme delayed its production to October 26, 2020.[3]

The initial scheduling order was entered on November 2, 2020.  MDG Appendix ("MDG App.") 001-004.  The dates set forth in the initial scheduling order reflected the parties' agreement to complete fact discovery before expert discovery.  The scheduling order provided in relevant part:

| | |
|---|---|
| Fact discovery shall be completed by | January 15, 2021 |
| Parties shall exchange expert witness Summaries and reports | February 5, 2021 |
| Expert discovery shall be completed by | March 15, 2021 |

Following the entry of an order of the Bankruptcy Court permitted Appellant to file a Second Amended Complaint.  A. 1-191.  An agreed motion

---

[3] Because the discovery responses were delayed by months, the Appellant was compelled to file a Motion to Compel which was granted in part by Order dated November 30, 2020 and denied as moot in light of Appellee-Xtreme's production. SA 824-25.

to amend the scheduling order was filed on January 15, 2021 to extend all dates by sixty (60) days. MDG App. 015-012.  As with the initial scheduling order, the first amended scheduling order set forth dates that called for the completion of fact discovery before commencing expert discovery.  *See* MDG App. 013-015.  This amended scheduling order provided in relevant part:

| | |
|---|---|
| Fact discovery shall be completed by | March 16, 2021 |
| Parties shall exchange expert witness Summaries and reports | April 6, 2021 |
| Expert discovery shall be completed by | May 14, 2021 |

On March 15, 2021, Appellant filed a motion seeking a further amended scheduling order. A. 232-235.  In that motion, which was not on consent, Appellant advised the Bankruptcy Court that the reason for seeking the extension related to: (1) litigation funding, and (2) emergency health issues with the Berdings' minor child..  The Appellant sought an additional 30 days to complete discovery.

The Bankruptcy Court scheduled a hearing for April 7, 2021.  MDG App. 016-025.

At the hearing, counsel for the Appellee-Landlord consented to an extension of the fact discovery deadline but would not consent to an extension of the expert discovery deadline.  MDG App. 020 (lines 21-25) – 021 (lines 1-

7).  The Appellant agreed that it would submit a separate application for an extension of the expert discovery deadlines.  The deposition of the parties began on April 19, 2021 and the last deposition was conducted on May 14, 2021.

Litigation Funding

In May 2020 following the Bankruptcy Court's denial of Appellee-Landlord's motion to dismiss, counsel for Appellant was contacted by a litigation funder, Legalist which offered to cover the litigation expenses in return for a portion of any recovery.  SA 343 (lines 21-25) – 344 (lines 1-3; 9-`4).  This was something that the Appellant believed it would need given the sharp decrease in revenue from the Covid-19-related closure of the trampoline park.  SA 348 (lines 5-18).  Although a deal could not be reached with Legalist in May 2020, Legalist reached out to Appellant's counsel again in November 2020 and this time, the Appellant and Legalist agreed on terms for funding totaling $105,000 which would used for, *inter alia*, expert fees and trial counsel fees to assist Appellant's counsel.  SA 354 (lines 1-24); 382.  Appellant's bankruptcy counsel filed a motion seeking approval of a term sheet  for funding of $105,000.

On February 24, 2021, a hearing was held on the Appellant's motion to enter into a term sheet with Legalist.  At the hearing (which was attended by Appellee-Landlord), Appellant's bankruptcy counsel explained the need for the funding:

16

> MR. MCMAHON:This litigation has been costly, it's going to result in expert, potential expert fees, court reporters and other expenses. The debtor is no position to fund litigation, and has sought this third-party funding. Legalist is one of the few companies that will fund … a relatively small lawsuit. There is no risk in the creditors of the estate other than it would cut into the amount that the creditors would receive if the debtor is successful in its litigation. . . . It is in the best interest of the creditors, and the debtor and the creditors wish this to be approved by the Court.[4]

SA 342 (lines 8-17) – 343 (lines 1-3).

By order dated February 26, 2021, the Bankruptcy Court entered an order granting the motion which permitted Appellant to enter into a term sheet for litigation funding. SA 826-27. With this approval, Legalist began its due diligence period. On or about April 2, 2021, Legalist and Appellant entered into a funding agreement subject only to the Bankruptcy Court's approval. SA 360-68.

On April 6, 2020, Bankruptcy counsel for Appellant filed a motion seeking approval of the litigation funding agreement, later amended on April 9, 2020. SA 358-71; 372-85. Bankruptcy counsel noted that the Debtor was about to "incur substantial costs for the trial, including the cost of experts" and that the Appellant did not "have any extra funds in its budget to fund the litigation."

---

[4]     The Estate's largest creditor, Wells Fargo, supported the funding.

Bankruptcy counsel further explained that it was "just able to meet its operating expenses and debt obligation to the secured creditor." SA 372, ¶ 8.

Appellee-Landlord filed an objection to the motion to approve the litigation funding agreement on April 12, 2020. SA 386-390. Among other things, the Appellee-Landlord urged the Bankruptcy Court to deny the motion because: "[Appellant] failed to identify any experts timely in accordance with the Scheduling Order. . . Thus, it appears that the "expert" portion of the [funding] will not be advanced by the litigation funding company, but nevertheless,… Debtor will still owe a repayment on account of such amounts at a significant multiple." SA 386, 388-389, ¶ 6.

Significantly, the United States Trustee responded to the Appellee-Landlord's objection, stating in part:

> It is undisputed that the [Appellant] failed to exchange expert witness summaries and reports in compliance with this Court's Scheduling Order. But what the [Appellee-Landlord] fails to disclose to the bankruptcy main case parties is that no litigant, including itself, complied with that Adversary Proceeding deadline.
> . . .
>
> As the [Appellee] had insufficient funds to retain experts prior to the Legalist agreement, it is conceivable [Appellant] could not retain an expert without Mr. Green's appearance in the Adversary Proceeding. So were this Court to authorize the estate fiduciary to enter into the Legalist® agreement, it is likewise conceivable that the [Appellant] then will be able to retain a

18

professional and supplement the expert disclosures required under Bankruptcy Rule 7026(a)(2).

A. 395-397.

During the course of the hearing on April 14, 2021, the Subchapter V also indicated support for the funding:

> MS. LEALI:      The debtor cannot pursue this litigation with any real effort without additional funding, and I do believe that, you know, if these are resolved, that this Court should approve the funding.

A. 253 (lines 24-25) – 254 (lines 1-4).

The Bankruptcy Court overruled the Appellee-Landlord's objection and specifically agreed with the U.S. Trustee's position.  The Bankruptcy Court stated:

> I agree with [the U.S. Trustee] that really the legal basis for the relief sought by the debtor, and upon which I am granting that relief today, is really under 363 and the debtor's business judgment, and I do think it is an appropriate exercise of the debtor's business judgment, given its cash position, its financial circumstance, and the history of this case, to enter into this litigation funding agreement with Legalist and, therefore I will grant the motion and overrule the objection.

A. 259 (lines 19-25) – 260 (lines 1-2).

With the funding in place, the Appellant filed a motion on April 28, 2021 seeking a sixty (60) day extension to complete both the fact and expert discovery deadlines.  MDG App. 028-032.

Once again, the Appellee-Landlord objected, stating that the lack of funding was an insufficient excuse and that the Appellant had not exercised due diligence as required by Rule 16 to extend the expert deadline.  Further, Appellee- Landlord

19

argued that the expert should have been identified in November 2020 when the Appellant first started negotiating with the funder.  Finally, the Appellee-Landlord argued that the fact that the prior scheduling orders had been established in such a way as to call for the completion of fact discovery before expert discovery was irrelevant because "there is nothing about fact discovery that requires a delay of the lost profit damages expert".  MDG App. 033-038.

At the hearing held on May 12, 2021, the Bankruptcy Court agreed with the Appellees

> MS. Daly: Your Honor, . . . in terms of the lost damages here, I don't see how we could have proceeded without the funding. Okay. I don't want to belabor that point, but that's a practical reality for us.
>
> . . .
>
> THE COURT: That may be a practical reality, but that's not a legal reality. That's not the defendant's problem from a legal standpoint

A.     276 (lines 3-10).

The Bankruptcy Court specifically relied on *Rinieri v. News Syndicate*, 385 F.2d 818 (2d Cir. 1967) and *In re Treco*, 2001 WL 1566701 (Dec. 10, 2001 S.D.N.Y.)  cited by Appellee- Landlord for the proposition that lack of funding does not support a finding of good cause.  In denying the requested extension, the Bankruptcy Court held as follows:

> It is simply untimely and too late, and scheduling orders matter, deadlines matter . . .{Appellant's counsel] knew about the

damages issue, [Appellant's counsel] knew about the various discovery deadlines, and you haven't established good cause, required under Rule 16 of the Federal Rules of Civil Procedure . . . and the defendants cited case law, that inability to fund litigation is not a sufficient cause to extend such a deadline, and you've offered me nothing in return other than argument that I've heard before over and over.

A. 0278 (lines 15-25) – 0279 (lines 1-6).

An order denying the extension was entered by the Bankruptcy Court on May 13, 2021 (the "May 13th Order").  Discovery was deemed completed the following day, May 14, 2021.  MDG App. 060-061; XBK App. 363, ¶ 31.

Appellant reached out to Legalist to seek funds to retain an expert that could assist, but Legalist would not release any funds in light of the May 13th Order denying the Appellant's motion to extend discovery.

Appellees' Summary Judgment Motions

On June 14, 2021, each of the Appellees filed motions for summary judgment seeking dismissal of the claims set forth in the Second Amended Complaint on the ground that Appellant failed to establish its damages.  MDG App. 062-641.  Notably, for the first time in nearly two years of litigation, the Appellee- Landlord conceded that Appellee-Xtreme was at all relevant times the Landlord's "manager" and not merely another tenant.  MDG App. 063.

In its Motion, Appellee-Landlord claimed that "after more than two years of litigation, and two bankruptcy cases, the record contains no evidence as to what

cognizable damages Plaintiff allegedly suffered, or how these illusory damages were caused by [Appellee-Landlord's] alleged conduct". MDG App. 063.   Appellee-Landlord argued that while the Appellant claimed that losses were based on "lost revenues" from "lost ticket sales", Appellant "never retained an expert." MDG App. 064.

In its Motion, Appellee-XBK, similar to Appellee-Landlord, urged the Bankruptcy Court to grant its Motion on the ground that Appellant has "no viable means to prove any of its purported damages at trial" because its interrogatory responses and testimony provide no means to quantify its losses as it "failed to retain or disclose any expert witnesses or make any information available that would adequately identify, categorize or quantify its losses."   Similar to Appellee-Landlord, Appellee-XBK pointed to the deficiencies in the Interrogatory Responses and noted the absence of any expert testimony that would support Appellant's claims.  XBK App. 366, ¶ 41.

Appellant's Responses

Appellant pointed out that the evidence of causation was overwhelming particularly where the evidence established that the Appellee- Landlord permitted its (undisputed) agent, Appellant-XBK to inflict untold economic injury on Appellant by not permitting it to have any meaningful presence outside the Premises but within the large (200,000 sq. ft.) entertainment complex.  MDG App. 643-47.

Appellant argued that there was a great deal of difficulty with regard to the damages calculations.  Without an expert, it was unable to calculate its damages other than to show a significant decline in revenue between 2017 -its first good opening year – and 2018-2019 when Appellees began disrupting Appellant's business.  MDG App. 646. Appellant's financials showed that there was a significant decrease in net earnings between 2017 to 2019—a drop of 63.2 %.  Id.

Appellant also submitted a Declaration by Appellant's President, Eddy Manzo-Berding which offered another basis for damages – the cost of its investment, which had essentially been destroyed by Appellees.  SA 882-883, ¶¶ 13-15.  It pointed out that as a result of the wrongdoing, Appellant lost its franchise, and demonstrated that it went from being a going concern in 2017 to a Ch. 11 debtor in less than two years—actions that coincided with the wrongful acts of Appellees. Appellant relied in part on the testimony of Jens Berding who stated that Appellee-XBK's owner was aware of the cost of the investment and told Mr. Berding that the

owners would wait as they anticipated that Appellant would file for bankruptcy at which point they would seize the Appellant's Park for "pennies on the dollar". MDG App. 917-18.

The Bankruptcy Court's Ruling

In a memorandum opinion dated January 28, 2022, the Bankruptcy Court granted each of the Appellees' motion for summary judgment opining that "[w]hen . . . the plaintiff fails to timely disclose any expert witness or expert report, the consequences can be devasting.  Such is the case here."  A. 293-294.

The court discussed the failure of Appellant to respond to the various interrogatories and initial disclosures seeking information regarding the calculation of damages.  The court dismissed the financials that were produced, noting that without an expert "that will not be forthcoming" the financials were useless in proving damages.  It took issue with the deposition testimony of Appellant's witness in relying on an expert that was never timely designated.  A. 324.

When referencing Appellant's motion seeking to extend the expert discovery, the court stated that it agreed with the Appellees, stating:

> While Seven Stars argued that it was "waiting for the approval of a litigation funding agreement that would give it the monetary resources to hire experts", the Court agreed with the defendants that this was not a valid excuse for the delay in making expert disclosures, and without any expert disclosures there was no expert discovery to be had and therefore no need to extend the deadline.

A. 310.

The Bankruptcy Court dismissed the diminution of value figures that Ms. Manzo-Berding referenced in her supporting Declaration, opining that she was not qualified to provide that type of analysis.  A. 312, n. 101.  In fact, it granted the Appellee-Landlord's motion to treat the Declaration as a "sham" because it found that it contradicted her earlier deposition testimony.  In granting summary judgment, the Bankruptcy Court held that there were no damages calculations in the initial disclosures, the interrogatory responses or in the deposition testimony.  Under Rule 37(c)(1), the court determined that because of the failure to provide the damages calculations during discovery, exclusion was warranted under 37(c)(1).

Although the court noted the exceptions to exclusion, "substantial justification" and "harmlessness", it did not discuss the factors as to each, stating:

> Seven Stars has not made any attempt to satisfy this burden of showing its failure was substantially justified or harmless.  Rather, Seven Stars simply failed to identify any expert witnesses or provide any expert reports by April 6, 2021.. .  After it let this deadline come and pass without taking any action, the Court then denied Seven Stars' later motion to extend the expert discover deadline because it had not made any timely expert disclosures.

A. 327-28.

In finding that the Appellant was not "substantially justified" in missing the deadline (despite the funding issue), the court stated:

> Seven Stars knew about the deadline and knew what it had to do to secure the funding and the timing of those efforts.  All Seven Stars had to do was file a timely motion seeking to extend the expert disclosure

deadline.  It never did.  Instead, about three weeks later, it just filed a motion to extend the fact discovery and expert discovery deadlines.  But because the expert disclosure deadline had already come and passed without any disclosures, the defendants opposed the extension of the expert discovery deadline as pointless.  What was there to extend if the plaintiff never timely designated any experts?  The Court agreed and denied the motion to extend the expert discovery deadline.

A. 329.

Finding that the issue of lack of damages was "dispositive", the court saw no need to address Appellees' other summary judgment arguments.  A. 336, n. 206.

## SUMMARY OF THE ARGUMENT

The central issue on this appeal is whether the Bankruptcy Court properly excluded expert testimony based solely on the inability of Seven Stars on the Hudson Corporation ("Seven Stars" or "Appellant") to designate an expert and furnish an expert report by the date set forth in the last scheduling order entered (April 6, 2021). In other words, was the lateness in and of itself sufficient to deny relief with no consideration of any other factor, including 1) prejudice, if any, to the Appellees if the Bankruptcy Court were to permit an extension; (2) the length of the delay in seeking additional time and its potential impact, if any, on judicial proceedings; (3) the reason for the delay in designating an expert, and (4) whether Appellant acted in good faith.   Appellant submits that the answer to this question must be no.

The Bankruptcy Court knew that an expert's analysis of Appellant's claims was critical to Appellant's case.  The Bankruptcy Court also knew that Appellant was actively seeking approval of a litigation funding agreement which would have allowed Appellant to retain an expert.  Indeed, eight days ***after***  the missed expert deadline, the Bankruptcy Court approved the litigation funding and specifically held that the agreement was an appropriate exercise of the Appellant's business judgment in light of Appellant's "cash position, its financial circumstances and the history of the case".  Notably, in approving the funding agreement, the Bankruptcy Court overruled an objection by the Appellee, MDG Powerlines Holding, LLC ("Appellee-

27

Landlord") based in part, on the Appellant missing the deadline to designate an expert.

Appellant does not deny that there were no calculations contained in its initial disclosures, its responses to multiple sets of interrogatories and in Appellant's 30(b)(6) depositions. But those responses and the testimony anticipated the ability to hire an expert. That Appellant was unable to retain one at an earlier point in the litigation was based on circumstances beyond its control. Specifically, the forced closure of Appellant's business during COVID had a devastating effect on Appellant's finances, given that during the COVID shutdown, it still was obligated to pay rent to the Appellee-Landlord which was by far its greatest expense.

In granting summary judgment, the Bankruptcy Court acknowledged that there was evidence to support Appellant's claims that the Appellees "colluded to squeeze out Seven Stars, by taking actions designed to deprive it of revenue and customers, while interfering with Seven Stars' rights under its Lease." A. 295. However, the entry of summary judgment in favor of the Appellees was based solely on Appellant's failure to prove. And the failure to prove damages was based on the Bankruptcy Court's order precluding expert testimony.

Whether analyzed under the good cause standard of Fed. R. Civ. P. 16(b) (made applicable herein under Bankruptcy Rule 7016), the excusable neglect standard of Fed. R. Civ. P. 6(b) (made applicable herein under Bankruptcy Rule

9006 or a show of substantial justification or harmlessness under Fed. R. Civ. P. 37(c)(1), the Appellant's lateness should not have been a bar to permitting a short extension of the expert discovery deadline.   The Bankruptcy Court's failure to analyze the Appellant's claim under the appropriate factors for 16(b), 6(b) or 37(c)(1) was an abuse of discretion.

Finally, the Bankruptcy Court declined to impose the lesser penalty of attorney fees in favor of imposing the harshest sanction of dismissal notwithstanding that there was no finding of bad faith or gamesmanship on the part of the Appellant and there was no history of the Appellant having violated other discovery orders.  In this regard, the Bankruptcy Court also abused its discretion.

## LEGAL ARGUMENT

## POINT I

## THE BANKRUPTCY COURT ERRED IN FINDING LACK OF GOOD CAUSE TO EXTEND THE EXPERT DISCOVERY DEADLINE

Federal Rule of Bankruptcy Procedure 9006(b) provides in pertinent part:

*(1) In General.* Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

The standard of review of an order denying an extension of a discovery deadline is abuse of discretion. *See Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011).

The "good cause" showing under Fed. R. Civ. P. 16(b), "precludes modification [of a scheduling order] unless the schedule cannot be met despite the diligence of the party seeking the extension." *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1232 (11th Cir. 2008)(internal citations omitted); *Romero v. Drummond Co.*, 552 F.3d 1303, 1319 (11th Cir. 2008) (to establish good cause "the party seeking the extension must have been diligent"); *Nobles v. Rural Community Ins. Services*, 303 F. Supp. 2d 1279, 1284 (M.D. Ala. 2004) ("[t]he

30

court's focus in evaluating a motion to amend under Rule 16 is on [the movant]'s diligence; that is, the court may grant the late-filed motion if the pretrial schedule could not reasonably have been met despite [the movant]'s diligence");.

Appellant acted diligently.  First, Appellant moved for an extension of time under Rule 9006(b) by motion filed on March 15, 2021 which was the last day to complete fact discovery under the terms of the amended scheduling order and approximately three weeks prior to the expiration of the expert designation deadline. A. 232-235.  The motion stated several grounds for the requested relief.  First, there were the emergency health issues with the Berdings' child.  Id., ¶ 10.  Second, the Appellant was still waiting for a decision on litigation funding.  Id., ¶ 9.  Both issues were raised because both had an impact on the fact and expert discovery deadlines.[5] Appellee-Landlord did not file any response. It raised the issue again on April 7th and in the April 28th motion.

Nevertheless, the court denied the motion to extend the expert discovery deadline, holding that lack of financial resources to hire an expert did not support a finding of good cause to modify the scheduling order.  The court specifically relied on *Rinieri v. News Syndicate*, 385 F.2d 818 (2d Cir. 1967) and *In re Treco*, 2001 WL 1566701 (Dec. 10, 2001 S.D.N.Y.) which were cited by Appellee-Landlord.

---

[5]     In the February 24th hearing, Appellant's counsel explained that money was needed to "prosecute this case and experts cost money . . . we need to hire an expert" A. 348 (lines 7-8).

Both these cases are factually distinguishable.  In *Rinieri*, the movant sought to vacate his default judgment more than two years after its entry.  In denying the motion, the Court stated that because the movant made the motion more than a year after entry, relief under 60(b)(1) (i.e. mistake, inadvertence or excusable neglect) was unavailable and that as a consequence, he was required to show "exceptional circumstances."[6]  Given the fact that the movant in *Rinieri,* was represented by counsel when he claimed lack of funds to hire an attorney, the Court found no "exceptional circumstances". *Rinieri*, 385, F.2d at 823 ("[t]his is clearly not a case, therefore, where a party suffered a dismissal or lost important rights because he did not have a lawyer or lacked legal advice").  In *Treco*, the court found that the movant had "willfully failed to answer BNY's Second Amended Complaint, and has not demonstrated that the claims asserted in its late pleading have merit."  Id., 2001 WL 1566701 at * 1.

By contrast here there was no finding by the Bankruptcy Court that Appellant willfully defaulted, or that the requested funding was not necessary.  Significantly, the court recognized that it had just approved litigation funding for Appellant—after the expert designation deadline—finding that it was appropriate given the

---

[6]     The Supreme Court in *Pioneer Investment Services, Inc. v. Brunswick*, 507 U.S. 380, 393 (1993) stated that "[t]o justify relief under [Fed. R. Civ. P. 60(b)(6)], a party must show "extraordinary circumstances" suggesting that the party is faultless in the delay."

Appellant's "cash position, its financial circumstances and the history of the case". A. 259 (lines 24-25). Equally significant, in approving the funding agreement, the court overruled the Appellee-Landlord's objection based (in part) on the missed expert designation deadline. *See* id., (lines 16-19). Lack of funding has been found to be "good cause" in a number of different circumstances. In *Allen Russell Pub., Inc. v. Levy*, 109 F.R.D. 315 (N.D. Ill. 1985), the court found that the dire financial circumstances of Defendant justified a finding of good cause to vacate the default. Of paramount importance to the court in *Allen*, was the fact that the defendant kept the court informed of the situation (unlike *Rinieri*) and specifically set forth how it acted diligently. In *Allen,* the Court also found that a nine-week delay was justifiable given the circumstances. *See also Wisconsin Carpenters Pension Fund, v. Jokipii Demolition LLC*, 2007 WL 1308847 (E.D. Wis. May 2, 2007)(Because lack of funds to retain an attorney resulted in a default, the court, in weighing the *Pioneer* factors, found that there was good cause to set aside the default); *Pecarsky v. Galaxiworld.com Ltd*., 249 F.3d 167 (2d Cir. 2001)(lack of funds to retain counsel justified vacatur of default).[7]

---

[7]     Appellant is aware of one case within the 11th Circuit that addresses the issue of insufficient funds to hire experts--*Knight v. Miami-Dade Cnty*., 856 F.3d 795 (11th Cir. 2017). However, that case is distinguishable from the instant case. Unlike the plaintiff in *Knight* who did not alert the court to its situation, the Appellant did alert the court. In addition, the Plaintiff in *Knight* had other experts available to it, unlike here.

In denying the extension, the Bankruptcy Court stated that "[i]t is simply untimely and too late, and scheduling orders matter, deadlines matter". A. 278 (lines 15-16). The Appellant recognizes the important policy considerations regarding the integrity of scheduling orders. But, at the same time, Rule 16(b) should not be enforced so rigidly and inflexibly that critical factors, such as the importance of extension (following the approval of the litigation funding) and whether the modification of the scheduling order would prejudice the Appellees, were all but ignored. *See Deghand v. Wal-Mart Stores, Inc*., 904 F. Supp. 2d, 1218, 1229 (D. Kan. 1995)(explaining that "rigid adherence" to a scheduling ordering is "not advisable" where the parties show good faith).

### Point II

### THE BANKRUPTCY COURT ERRED IN FAILING TO ANALYZE THE EXCUSABLE NEGLECT FACTORS WITH RESPECT TO THE MISSED DEADLINE

Appellant moved to extend the expert and fact deadline under Bankruptcy Rule 9006(b) by motion filed on April 28, 2021. *See* MDG App. 028-032. Because the motion was filed after the expiration of the deadline, the movant must demonstrate both good cause and excusable neglect. *See Payne v. C.R. Bard, Inc*., 606 Fed. Appx. 940, 943-44 (11th Cir. 2015).[8]

---

[8]   As a general rule, courts prefer adjudication on the merits rather than on technicalities. *See Varnes v. Local 91 (ilass and Bottle Blowers Ass'n of the United States and Canada*, 674 F.2d 1365 (11th Cir. 1982)(*citing Seven Elves, Inc. v.*

When determining whether excusable neglect exists, courts are obligated to consider "all pertinent circumstances, including the danger of prejudice to the non-movant, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant and whether the movant acted in good faith." *Harris Corp. v. Ruckus Wireless, Inc*., 2015 WL 3883948 at *6 (M.D. Fla. June 24, 2015); *see also Safari Programs, Inc. v. Collecta International Ltd*., 686 Fed. Appx. 737 (11th Cir. 2017) ("the determination of excusable neglect is an equitable one that should take into account the totality of the circumstances surrounding the party's omission." 686 Fed. Appx. at 744 (*citing Pioneer Investment Servs. Co. v. Brunswick*, 507 U.S. 380, 395 (1993)).

A court's determination of whether excusable neglect can be found is reviewed for abuse of discretion. By failing to consider all the pertinent excusable neglect factors, a court abuses its discretion. *See Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848 (11th Cir. 1996)(in reversing the district court's denial of plaintiff's motion to set aside a judgment on the ground of excusable neglect, the Court held that the court's "failure to so find and to apply the correct legal standard and factors as announced in *Pioneer* constitute an abuse of discretion").

---

*Eskenazi*, 635 F.3d 396 (5th Cir. 1981).

And while a decision by the Bankruptcy Court's to preclude critical expert testimony because of a failure to adhere to a scheduling order is reviewed under an abuse of discretion standard, that discretion is limited when the court's order results in a dismissal. "Because dismissal is considered a drastic sanction, a district court may only implement it, as a last resort, when (1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and (2) . . . the court specifically finds that lesser sanctions would not suffice." *World Thrust Films, Inc. v. Int'l Family Entm't, Inc*., 141 F.3d 1454 (11th Cir. 1995)(*citing Kilgo v. Ricks*, 983 F.3d 189, 192 (11th Cir. 1993)(collecting cases).

## NO EVIDENCE OF STRATEGIC DELAY OR WILLFUL CONTEMPT

There is nothing in the May 13th Order or the SJ Order evidencing that Appellant was employing delay tactics or engaged in contumacious conduct in requesting an extension of the expert witness deadline. To the contrary, the record bears out that Appellant was doing everything within its power to move the case along and had no choice but to seek litigation funding in order to prosecute the Adversary Proceeding—a fact known to all parties and the Bankruptcy Court.

The funding was of critical importance. Appellant's bankruptcy counsel explained, "the Debtor has no ability to fund this litigation without the [Legalist] funding." SA 358, ¶ 7. Appellant's counsel advised the court at the February 24, 2021 hearing that "[t]his litigation has been costly, it's going to result in expert,

36

potential expert fees, court reporters and other expenses.  The debtor is in no position to fund litigation and has sought this third-party funding." SA 342 (lines 8-12).

**NO EVIDENCE OF PREJUDICE TO THE APPELLEES**

The Bankruptcy Court did not find, nor did the Appellees claim that they would be prejudiced by a short extension of the expert deadline.  As noted by the Court in *Pioneer*, the factor most important in evaluating whether there is excusable neglect is prejudice to the non-moving party—in this case, the Appellees.  *See Cheney v. Anchor Glass Container Corp*., 71 F.3d 848 (11th Cir. 1996)("the Supreme Court accorded primary importance to the absence of prejudice to the nonmoving party and to the interest of efficient judicial administration in determining whether the district court had abused its discretion.") Id., 71 F.3d at 850 (*citing Pioneer*, 507 U.S. at 850).

The fact of a delay in proceedings in and of itself does not show prejudice. As held by the Court in *Lacy v. Sistel Corp*., 227 F.3d 290, 293 (5th Cir. 2000), "[t]here is no prejudice to the plaintiff where the setting aside of the [defendant's] default has done no harm to plaintiff except to require it to prove its case" (internal quotation marks omitted.

**NO EVIDENCE OF DELAY TO THE PROCEEDINGS**

At the time of the May 12th hearing, the date for the filing of the dispositive motions, was more than 30 days away; with the pre-trial conference scheduled

approximately two months down the road—July 6, 2021. Most important, no trial date had been set.

In the motion for extension filed by Appellant, sixty (60) days were requested, which would have required, at most, a minimum continuance of the above referenced dates.   When dealing with critical expert testimony, a continuance is the preferred course of action.  *See Campbell v. Keystone Aerial Surveys, Inc*., 138 F.3d 996, 1001 (5th Cir. 1998)("a continuance is the 'preferred means of dealing with a party's attempt to designate a witness out of time").

The failure of the Bankruptcy Court to consider and apply the *Pioneer* factors constituted an abuse of discretion.

## Point III

### THE BANKRUPTCY COURT ERRED IN OF FINDING THAT APPELLANT'S FAILURE TO DISCLOSE EVIDENCE OF DAMAGES THROUGH AN EXPERT WAS NEITHER SUBSTANTIALLY JUSTIFIED OR HARMLESS

The court's further ruling that Appellant could not offer any evidence on the issue of damages because of its inability to provide damage calculations during discovery constituted an abuse of discretion.  Additionally, the court's imposition of the harshest sanction over a lesser sanction in the absence of any prior violation of court orders is also an abuse of discretion on this record.

Fed. R. Civ. P. 37(c) provides  in pertinent part that: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not

allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, ***unless the failure was substantially justified or is harmless*** (emphasis added).[9]  "The main purpose of Rule 37(c)(1) is to 'prevent[] surprise and prejudice to the opposing party.'"  *Henry v. Bradshaw*, 2008 WL 11409966 at *3 (S.D. Fla. May 19, 2008)(*quoting Whetstone Candy Co., Inc. v. Nestle USA, Inc.,* 2003 WL 2568630 * 3 (M.D. Fla. 2003)).

The court's determination as to whether a violation under 37(c)(1) is substantially justified or harmless is reviewed for abuse of discretion.  *See Catalina Rental Apts., Inc. v. Pacific Ins. Co.*, 2007 WL 1050634 at *2 (S.D. Fla. April 3, 2007).

In analyzing whether there has been a violation under 37(c)(1), the courts are "guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the

---

[9]      The Supreme Court has defined "substantially justified" as 'not justified to a high degree' but "justified to a degree that could satisfy a reasonable person**."** *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). *See also Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1163 (11th Cir. 1993) ("an individual's discovery conduct should be found 'substantially justified' under Rule 37 if it is a response to a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action"); *Gaines v. County of Wayne*, 2021 WL 5997980 (E.D. Mich. Dec. 20, 2021)("[t]he guiding question in the Rule 37(c) analysis is whether the moving party has offered a "reasonable explanation" for why it did not comply with the disclosure requirements or has established that the mistake was harmless.")

extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Two Men and a Truck Int'l, Inc. v. Res. & Commercial Trans. Co*., 2008 WL 5235115 at * 2(N.D. Fla. Oct. 20, 2008)(*quoting S. States Rack & Fixture, Inc. v. Sherwin-Williams Co*., 318 F.3d 592, 597 (4th Cir. 2003). *See also Mobile Shelter Sys. USA Inc. v. Grate Pallet Sols, LLC*, 845 F. Supp. 2d 1241, 1250-51 (M.D. Fla. 2012). Ultimately, "[f]ailure to disclose is 'harmless' where there is no substantial prejudice to the party entitled to receive the disclosure." *Poole v. Gee*, 2008 WL 2397603 at * 2 (M.D. Fla. June 10, 2008).

The court did not reference any of these factors in its ruling. It merely noted that Appellant "has not made any attempt to satisfy this burden of showing its failure was substantially justified or harmless." A. 327. It treated Appellant's explanation that it needed the funding in order to retain the expert as proof that Appellant "was *not* substantially justified" because all it had to do was "file a timely motion.". A. 329 (emphasis in original). The Bankruptcy Court also held that "because the expert disclosure deadline had already come and passed without any disclosures, the defendants opposed extension of expert discovery deadline as pointless. What was there to extend if the plaintiff never timely designated any experts?" Id.

This ruling does not reflect what was actually happening at that time as set forth in the record. The Bankruptcy Court misstates Appellant's arguments that the

expert witness designation was nothing more than an amateurish afterthought intended to cover up Appellant's alleged deficiencies in fact discovery. A. 326 (i.e., "[h]aving boxed itself into a corner of relying solely on expert testimony to prove damages, [Appellant] then failed to timely identify any expert witnesses.")

In addition, the court's position is inconsistent with its earlier ruling whereby it approved the Legalist funding *over the objection of the Appellee-Landlord*. A. 259 (lines 16-25) – 260 (lines 1-2). In overruling the Appellee-Landlord's objection, it found that entering into the funding agreement was an appropriate exercise of the Appellant's business judgment.

The court's finding that there was no "substantial justification" comes down to the inability of Appellant to meet the April 6, 2021 deadline. In explaining the basis for the ruling, the court stated: "Litigation has rules by which all parties must abide." A. 329. The Appellant does not dispute this, but as the court in *Ratcliff v. Red City Lodge*, 2013 WL 5817210 (D. Mont. Oct. 29, 2013) , stated "'[d]eadlines must not be enforced mindlessly' because a good reason may exist to permit an identification of additional witnesses after the established deadline." (citations omitted). A good reason existed in this case. As noted throughout this brief, Appellant was not in position to retain an expert without the assurance of funding.

The Appellant's inability to designate a witness and furnish reports by April 6, 2021 was also harmless. Appellees had not disclosed their expert.[10] There was no trial date set and the deadline for dispositive motions was still 30 days away. The scheduling order provided time for rebuttal witnesses and depositions. *See Ratcliff*, 2013 WL 5817210 *3 (noting that the one month delay would not disrupt the court's schedule and the movant would not be gaining "an unfair advantage"); *Heartland Rehabilitation Services, Inc. v. Mekjian*, 2007 WL 1266352 (E.D. Mich. May 1, 2007)(finding no harm because no trial date set and limited extension of expert discovery would afford non-defaulting party an opportunity to respond to the expert disclosures).

Nowhere in the court's ruling is there any analysis of the guiding factors. Appellant submits that had each factor been applied, they would have favored Appellant.

FACTOR 1 – NO SURPRISE

As to the first factor, the loss of investment value of $1.9 million that Appellees claim is a new untested theory should hardly surprise them as there is evidence that Mr. Goldfarb, an owner of both defendants, was aware of this as early

---

[10]     Under the scheduling orders in this case, all parties intended to have experts and all parties were entitled to have rebuttal experts. No party furnished expert reports on the April 6, 2021 deadline.

as 2018.  *See* MDG App. 405 (pg. 253, lines 8-25) – 406 (pg. 254, lines 1 – 6).

Moreover, Appellee-Landlord cross-examined Mr. Berding at length about the

valuation of the business.  *See* SA 687-725.   This factor favors Appellant.

## FACTOR 2 – CURE

As to the second factor, the ability of non-disclosing party to cure the surprise,

Appellees have known for some time that Appellant wanted to pursue expert

discovery because of the difficulty in determining damages.

The court could have re-opened discovery for the limited purpose of

exchanging reports and if necessary, conducting depositions.  This would cure any

claimed surprise.  *See In re Complaint of Kreta Shipping, S.A*., 181 F.R.D. 273, 278

(S.D.N.Y 1998) (court afforded party an opportunity to "cure their disclosure

failures" by permitting opposing party to depose experts "on new matters contained

in their new expert reports").

## FACTOR 3 – NO DISRUPTION OF JUDICIAL PROCEEDINGS

As to the third factor, this Court has not yet set a trial date so there would be

no disruption.  This factor favors Appellant.

## FACTOR 4 – CRITICAL NATURE OF THE EVIDENCE

As to the fourth factor, as Appellees have made clear, damages are a

significant part of any claim.  Appellant shares this view.  Appellant did not delay

and acted expeditiously in securing litigation funding.  Because Courts favor

decisions on the merits, this factor should have weighed in favor of permitting Appellant to supplement evidence of its damages.

**FACTOR 5 – EXPLANATION FOR THE DELAY**

The record in this case reflects the efforts made by Appellant to secure funding for litigation costs, principally experts and trial counsel. It started this process in the Fall of 2020 when Legalist it with a second proposal.[11] There were a number of motions as well as two hearings on the funding prior to the April 6, 2021 deadline: (i) January 28, 2021 Motion, [SA 337]; (2) February 24, 2021 Hearing, [SA 342]; March 15, 2021 Motion, [A. 233-34, ¶¶ 9, 12].

In addition to these guiding factors, courts generally do not preclude expert testimony or other critical evidence if the preclusion will result in the dismissal of the case unless there has been a determination of willfulness or other deliberate misconduct. *See Catalina*, 2007 WL 1050634 ("striking Defendant's expert witnesses would be a harsh sanction, especially considering that there is no evidence of bad faith on the part of the Defendant and that the expert testimony is fundamental

---

[11] Appellant's counsel explained the timeline to the court and the other parties. Legalist and Appellant tried to reach a deal in the summer of 2020, but nothing could be worked out. In November 2020, Legalist and Appellant tried again and were successful in agreeing to terms. SA 348 (lines 5-12); 354 (lines 1-24). While the court and Appellees contend that Appellant should have had an expert from the beginning of the case, this reasoning does not take into account the devastating financial consequences Appellant faced when its was forced to close due to COVID. Id.

to Defendant's case. Excluding this "critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence"); *see also Prieto v. Total Renal Care, Inc.,* 2019 WL 2510003 (S.D. Fla. June 18, 2019)("striking expert testimony is a harsh sanction that should not normally be imposed absent a showing of willful deception of 'flagrant disregard' of a court order by the proponent of the evidence." )(internal citations and quotation marks omitted).

There has been no finding that Appellant acted in a flagrant disregard of the court's rules.  To the contrary, Appellant has acted in good faith throughout its Bankruptcy Case.  There is, however, substantial evidence before the court as to Appellees' wrongdoing, including threats to put Appellant into default if it did not accede to their demands.  *See* A. 295 (noting that there was evidence of collusion in the record).  Leveling the harshest sanction of exclusion on Appellant not warranted on this record.  And while Appellant acknowledges that trial courts enjoy broad discretion with respect to discovery issues and management thereof, that "discretion narrows as the severity of the sanction or remedy it elects increases." *See ELCA Enterprises, Inc. v. Sisco Equip. Rental & Sales, Inc*., 53 F.3d 186, 190 (8th Cir. 1995)("[e]xclusion of evidence is a harsh penalty, and should be used sparingly.").

While Rule 37(c)(1) has been described as self-executing and the court is vested with broad discretion in fashioning an appropriate remedy, the discretion is

not "unbounded". *See Architects Collective v. Pucciano & English, Inc.,* 2016 WL 9454428 (N.D. Ga. Nov. 14, 2016)(*citing Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982)).

A court "must impose a sanction that is just and tailored to the severity of the discovery violation at issue." Id. Indeed, employing the harshest sanction is something that courts are loathe to do particularly in the "absence of a finding of bad faith or gamesmanship on the eve of trial." Id., *See also Collins v. United States*, 2010 WL 4643279 (M.D. Fla. Nov. 9, 2010)("the Court vastly prefers to decide cases on their merits. . . [p]unishing Plaintiff for the sins of his counsel by effectively closing the door on Plaintiff's claim is something the Court is neither inclined nor required to do")(internal citation and quotation). *In re Paoli R.R. Yard PCB Litig*., 35 F.3d 717, 791-92 (3d Cir. 1994)(**"**the exclusion of critical evidence is an extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence" )(quotation marks and citation omitted).

This reluctance to impose the harshest remedy is amplified further when exclusion would be tantamount to dismissal. *See, e.g*., *Collins*, 2010 WL 4643279 *5 (while finding neither substantial justification or harmlessness, the court nevertheless did not exclude the late-filed expert report"); *see also Durden v. Citicorp Trust Bank, FSB*, 2008 WL 11318338, at *6 (M.D. Fla. Nov. 25,

2008)(refusing to exclude testimony of plaintiff's only expert despite plaintiff's failure to produce an expert witness report before the close of discovery); *In re Complaint of C.F. Bean, L.L.C.*, 841 F.3d 365, 373 (5th Cir. 2016)("[w]e have reversed the district court in several other cases where the excluded testimony is similarly essential")(citations omitted).

**Point IV**

**STRIKING THE DECLARATION OF APPELLANT'S PRINCIPAL WAS NOT WARRANTED**

The Bankruptcy Court's striking of Ms. Manzo-Berding's Declaration as a sham affidavit constituted an abuse of discretion. *See Fucron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295 (11th Cir. 2016); *see also Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949 (11th Cir. 2009).

In striking the Declaration of one of Appellant's principals, Eddy Manzo-Berding, the Bankruptcy Court rejected the explanations offered by Appellant and stated that new theories could not be interjected at this late date.  In rejecting the Declaration, the Bankruptcy Court held that "a scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril."  A. 333.

Significantly, the Bankruptcy Court acknowledged that this was a "harsh or draconian" result but that it was "only fair to the defendants".  A. 334.   The court noted that the Appellees had been "defending against these claims ("which otherwise

47

very well may have merit") for over two years and had been engaged in discovery for about a year."  Id.  Finally, and as a further reason for striking the Declaration,, the Bankruptcy Court stated that Appellant ignored multiple questions regarding damages by relying on an expert that was never designated, and because it failed to retain an expert, summary judgment in favor of the Appellees was warranted.  A. 334-35.

Imposition of the harshest sanction because Appellant did not file an expert designation runs counter to the spirit of the federal rules.  *See OFS Fitel, LLC v. Epstein*, 549 F.3d 1344 (11th Cir. 2008)("[i]n cases where there has been a prior order compelling discovery, the Eleventh Circuit has stated that the ultimate sanction of dismissal with prejudice should be imposed only in cases of bad faith, willful delay, or flagrant disregard for the district court's discovery orders".  This is not such a case.

Harsh sanctions are generally for those litigants who flagrantly disregard court orders.  There has been no showing that the Appellant deliberately violated discovery orders or acted in bad faith.  *See Architects Collective*, 2016 WL 9454428 *5 ("the Eleventh Circuit has 'consistently have found Rule 37 sanctions such as dismissal of entry of default judgment to be appropriate, however, only 'where the party's conduct amounts to flagrant disregard and willful disobedience of *discovery orders*'")(*quoting U.S. v, Certain Real Property Located at Route 1, Bryant, Ala*.,

126 F3d 1314, 1317 (11ᵗʰ Cir. 1997))(emphasis in original).   Indeed, the only discovery violation entered by the Bankruptcy Court related to Appellee-Xtreme's failure to produce documents for over four months on November 30, 2020.  *See* SA 824-25.

As the Opinion reflects, the Bankruptcy Court was well aware that it was imposing the severest sanction against Appellant for failing to file its expert designation by April 6, 2021.  A. 335.  Ironically, it contends that because of the harshness of this sanction, it "declined to award any further sanctions."  Id. (citing Fed. R. Civ. P. 37(c)(1).  As a general rule, the language cited by the court is used to impose a ***lesser*** sanction, not a more onerous one.  It is well-settled within this Circuit and in other Circuits throughout the Country that depending on the nature of the discovery violation, courts should impose a sanction that is "tailored to the severity of the discovery violation at issue."  *Architects Collective*, 2016 WL 9454428 at * 4.  And when a lesser sanction is more appropriate, that sanction should be imposed. *See, e.g*., *Baker by Thomas v. Gen. Motors Corp*., 522 U.S. 222 (1988) (reversing the district court's imposition of a certain discovery sanction because less severe sanctions were both available and appropriate); *Collins v. United States*, 2010 WL 4643279 (M.D. Fla. Nov. 9, 2010)("'the refusal to impose a lesser penalty can amount to an abuse of discretion, especially where . . . the sanction of exclusion would likely leave Plaintiff without an avenue to assert his . . . claims'")(*quoting*

*Whetstone Candy Co., Inc., v. Nestle USA, Inc.*, 2003 WL 25686830 *3 (M.D. Fla. June 2, 2003).

The Eleventh Circuit has held that "[t]he severe sanction of a dismissal . . . is appropriate only as a last resort, when less drastic sanctions would not ensure compliance wit the court's orders." *Malautea v. Suzuki Motor Co., Ltd*., 987 F.2d 1536 (11th Cir. 1993).

Because excluding evidence, "especially 'critical evidence', is an 'extreme sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence'" courts should balance several factors and consider whether a lesser sanction is more appropriate for the particular discovery violation. *Miami Yacht Charters, LLC v. National Union Fire Ins. Co. of Pittsburgh Pennsylvania*, 2012 WL 12862811 (S.D. Fla. Nov. 2, 2012); *see also Catalina Rental Apartments, Inc. v. Pac Ins. Co., Ltd*., 2007 WL 1050634 *3 (S.D. Fla. Apr. 3, 2007)("[e]xcluding evidence, especially "critical evidence," is an "extreme sanction, not normally to be imposed absent a showing of willful deception o[r] 'flagrant disregard' of a court order by the proponent of the evidence"); *Grigorian v. FCA US, LLC*, 2019 WL 2754154 (S.D. Fla. July 3, 2019)("[s]triking witnesses or evidence in response to a discovery violation is a drastic remedy that should only be considered after other alternatives are exhausted or unavailable, and clearly only when the moving party has suffered irreparable harm

or undue prejudice.")(citations omitted).

The Bankruptcy Court did not do this. In "fair[ness] to the [Appellees]" it imposed a sanction that dismissed the entire case, notwithstanding that there was evidence in this case that Appellees "colluded to squeeze out Seven Stars, by taking actions designed to deprive it of revenue and customers, while interfering with Seven Stars' rights under its Lease." A. 295. *See In re Complaint of C.F. Bean, L.L.C.*, 841 F.3d 365 (5th Cir. 2016)(holding that "excluding critical expert testimony was disproportionately harsh for what amounts to failure to request an extension of the expert disclosure deadline").

The Declaration contained evidence of three things:

1) Damages based on lost investment value.

2) Photographs of Xtreme that showed how Defendants were "squeez[ing] out Seven Stars.

3) Financials.

The damages based on lost investment value were based on information of which Appellees were already aware. In fact, Jens Berding disclosed during his deposition and Appellees' counsel questioned him about these numbers. *See Poole v. Gee*, 2008 WL 2397603 (M.D. Fla. 2008)("Failure to disclose is 'harmless' where there is no substantial prejudice to the party entitled to receive the disclosure")(*citing Chapple v. Alabama*, 174 F.R.D. 689, 701 (M.D. Ala. 1997)).

51

Q.    . . .  do you have an understanding as to what would be their motive to interfere in your relationship with them MDG?

A.    Yes, personal gain.  The benefit of us not succeeding was to make more money themselves and to at the end being able to buy the park from us as David Goldfarb in a meeting in the fall of 2000 put it, well, I guess all the other markers are too expensive for us and we'll buy you out of bankruptcy for pennies on the dollar.  So there was a clear vision of what would happen if we were not to succeed and that the investment would fall to them and they would pick it up for pennies on the dollars.

Q.    When did Mr. Goldfarb make that remark?

A.    When we had, you know, we had worked through the summer of 2018. We had sort of stopped making payment to the –to the bank.  I approached him and I said your actions are showing effects and can we try to find a solution.  Because it was never our intention to come to Florida and to fight and have to sort of being in a contentious relationship with out co-tenant.  But we saw that they chose to take that stand and so we try to resolve the issue in a meeting.  And basically in the meeting he asked me how much it cost to build the park and he indicated that that was too expensive for them to pay over $2 million.  And he asked me, well, if we pay off your loan and you get out of here, how much is the SBA loan and I said at that point it was probably 1.2, 1.4 million.  He said that was too expensive.  He still couldn't envision paying that amount of money, and then basically he said we will buy you out of bankruptcy for pennies on the dollars That's how it's going to go down because he didn't see any other alternative for us.

Q.    Right.  When was that meeting?

A.    That's in the fall of 2018.

Q.    Had Seven Stars already filed bankruptcy at that point?

A.    No.  . . . we couldn't even get things that were spelled out in the lease. Like the pylon signage, after we couldn't get these things from them, it was clear that, you know, we had very little alternative than to look for another solution and that was the attempt to negotiate and see whether there was any interest in resolving this amicable and it left us with a clear understanding of what they know the power and the position that the landlord had and that they could wait it out. . .

52

MDG App. 405 (pg. 252 [lines -25]) – 406 (pg. 254 [lines 1-6]).  *See also* SA 877 (Mary Bertoni, MDG's CFO stating in July 2018 that if Plaintiff stopped paying rent, MDG would be "in a very good position with bank to take over his assets at a discount").

The photos that were attached to the Declaration are also harmless.  Surely, the Appellees know and recognize the Park where thousands of people flow through.

Finally, the Appellant should not be deprived of the ability to establish some element of damages based on the financials produced.  But notwithstanding the lack of an expert as to the meaning of the financials, as Appellant's principals assembled the financials, there was no reason to exclude consideration of same.  In fact, Appellant produced its financials during discovery and Appellee-Landlord has always had access to Appellant's financials as it was a creditor in Appellant's bankruptcy and even cross-examined Appellant's principals at length during multiple hearings held in the Bankruptcy case. *See* SA 687-725.   In any event, the EBITDA values are a mathematical computation based on financials already in Appellees' possession.  As the Court held in *Nephron Pharmaceuticals Corporation v. Hulsey*, 2020 WL 7684863 (M.D. Fla. Oct. 7, 2020)"it has been no secret what damages Plaintiff seeks, and the damages do not require complex calculations"(internal citation and quotation omitted).

**Point V**

**SUMMARY JUDGMENT WAS NOT WARRANTED AS IT WAS BASED
ON THE EXCLUSION OF EXPERT TESTIMONY**

Fed. R. Civ. P. 56(c) prohibits "the entry of summary judgment where the pleadings and supporting materials show that there [is a] genuine issue as to any material fact . . . [and therefore] the moving party is [not] entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). To this end, "all reasonable doubts about the facts should be resolved in favor of the non-movant". *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 (11th Cir. 1982).

The Bankruptcy Court's rulings are subject to a *de novo* review. *See Cruz v. Publix Super Markets, Inc*., 428 F. 3d 1379, 1382 (11th Cir. 2005) (the appellate court reviews the trial court's "grant of summary judgment *de novo*, applying the same legal standards that bound the district court, and viewing all facts and reasonable inferences in the light most favorable to the nonmoving party".)

Moreover, if the record sets forth factual issues, the Court is foreclosed from deciding them and must proceed to trial." Even if the parties agree on the basic facts but disagree about the inferences that should be drawn from these facts, summary judgment must be denied. Indeed, "[a]n action is void of a material issue for trial only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Quintero v. Lopez*, 2016 WL 2059910 at *2 (S.D. Fla. July 9, 2009)("[T]he court may not weigh conflicting evidence to resolve

disputed factual issues; if a genuine dispute is found, summary judgment must be denied"). *Carlin Commc'n, Inc. v. Southern Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986); *see also Aurich v. Sanchez*, 2011 WL 5838233, at *1 (S.D. Fla. Nov. 21, 2011) ("[i]f a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then the court must not grant summary judgment" (*citing Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913 (11th Cir. 1993)).

The Bankruptcy Court erred in this case by granting summary judgment to Appellees based on its determination that there was no competent evidence of damages, when the damages could only be proven by expert testimony.  A. 336. Contrary to the Bankruptcy Court's conclusion that Appellant had "boxed itself" in by relying on an expert, as discussed above, Appellant worked diligently to obtain an expert.  In fact, the Bankruptcy Court's ruling that Appellant was entitled to funding for the litigation because of its "cash position, its financial circumstances and the history of the case" is at odds with its ruling only days later that Appellant was not entitled to an extension to designate an expert because its lack of funds did not constitute good cause for missing a deadline.  It also abused its discretion in not considering other, less drastic measures if it had determined that there was no substantial justification for not designating an expert by April 6, 2021 or a finding that it was not harmless.

At the point that the Bankruptcy Court denied Appellant's motion permitting it to conduct expert discovery, the discovery period was hours away from closing. Appellant was then in the unenviable position of trying to respond as best it could on a damages issue without expert testimony which it could not have obtained absent funding, and thereafter could not utilize because of the Bankruptcy Court's order striking any further expert discovery.

It was the absence of an expert that has led directly to a final judgment in this case dismissing Appellant's claim. *See* A. 294. For this reason alone, the judgment should be reversed. *See In re Complaint of C.F. Bean L.L.C*, 841 F.3d at 370 ("[b]ecause the district court ruled that Bean could not defeat summary judgment without expert testimony, the district court's grant of summary judgment is also reversed").

The Bankruptcy Court also erred in dismissing Appellant's financials as some evidence of damages. Again, the failure to consider the financials was based solely on the Bankruptcy Court's conclusion that the principals of Appellant were not competent witnesses to testify as to the damages. *See* A. 324 ("Seven Stars' profit and loss statement for the years 2017 to 2019" cannot be used to evidence damages because there is no expert.)

For the reasons set forth herein, this Court should reverse the order of the Bankruptcy Court and direct that Appellant be permitted to conduct expert discovery.

## CONCLUSION

For the foregoing reasons, the Court should:  (a) reverse the Final Judgment entered in favor of each of the Appellees, and (b) reverse the order entered on May 13, 2021 which denied Appellant's motion to extend the expert discovery deadline and grant such other and further relief as deemed just and equitable in the circumstances.

Dated:  May 6, 2022 (Revised August 10, 2022)

Respectfully submitted,


_____/s/ Kathleen A. Daly_____
Kathleen A. Daly
Fla. Bar. No. 112438
LAW OFFICE OF KATHLEEN A. DALY, P.A.
515 N. Flagler Dr., Ste. P300
West Palm Beach, FL 33401
Tel: (561) 293-8514/(917) 301-2437
Fax No.     (800) 395-8692
Email: kdaly@kadalylaw.com

*Attorneys for the Appellant*
*Seven Stars on the Hudson*
*Corporation*

57

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. Bankr. P. 8015(a)(7)(B), as incorporated by this Court's Local Rule 87.4(f), because it contains 12,801 words.

2.      This brief complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5)(A), as incorporated by this Court's Local Rule 87.4(f), because it has been prepared wit a minimum font size of 14 point Times New Roman, a proportionally spaced typeface.


*/s/ Kathleen A. Daly*
Kathleen A. Daly
Law Office of Kathleen A. Daly, P.A.

58

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by

Notice of Electronic Filing generated by CM/ECF and/or via email on August 10,

2022, on all counsel or parties of record on the below/attached Service List.

*/s/ Kathleen A. Daly*
Kathleen A. Daly

## **Service List**

Jeffrey Snyder, Esq.
BILZIN SUMBERG BAENA PRICE & AXELROD LLP
1450 Brickell Avenue, 23rd Floor
Miami, FL 33131
Tel: (305) 374-7580
Email:  jsnyder@bilzin.com

Scott A. Hiaasen, Esq.
COFFEY BURLINGTON, P.L.
2601 South Bayshore Drive, Penthouse One
Miami, FL 33133
Tel: (305) 858-2900
Email: shiaasen@coffeyburlington.com

Attorneys for Appellee, MDG Powerline Holdings, LLC

Kai Jacobs, Esq.
KAI JACOBS, PA
2222 Ponce de Leon Blvd
Coral Gables, FL 33134
Tel: (305) 768-9846
Email:  kj@sflblg.com

Attorneys for Appellee, XBK Management LLC